IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| RICHARD E. SHREVES, | CV 18-00097-H-DLC-JTJ |
| Plaintiff, | |
| vs. | ORDER AND FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE |
| DAVID WILLIAM HARRIS, et al., | |
| Defendants. | |

Pending are Defendants' Motion to Dismiss (Doc. 11) and Plaintiff Richard Shreves's Motion for Temporary Restraining Order/Preliminary Injunction and Request for Hearing (Doc. 22), Motion to File an Oversize Response to Defendants' Motion to Dismiss (Doc. 25), Motion for Contempt against Defendant Michael and his Agents for Violating Standing Order DLC-46 (Doc. 32), and Motion for Sanctions (Doc. 36).

## I.  MOTION TO DISMISS

### A.  Standard

To survive a motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim has facial plausibility when the plaintiff leads

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.  *Id.*

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed.R.Civ.P. 8(a)(2).  "Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Erickson v. Pardus, et al.*, 551 U.S. 89, 93 (2007) (internal citations omitted).  However, the pleading must be more than an "unadorned, the-defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678.

While the Court must accept all the allegations contained in the complaint as true, the Court does not have to accept a "legal conclusion couched as a factual allegation."  *Iqbal*, 556 U.S. at 678.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*; *Jones v. Community Development Agency*, 733 F.2d 646, 649 (9th Cir. 1984) (vague and mere conclusory allegations unsupported by facts are not sufficient to state section 1983 claims); *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992). While the Court is to construe a complaint liberally, such construction "may not supply essential elements of the claim that were not initially pled."  *Id.*

2

### B. First Amendment Retaliation

Mr. Shreves brings retaliation claims in Counts 1, 6 and 7 of the Complaint. "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005).

Mr. Shreves must demonstrate that his exercise of his First Amendment right was a substantial or motivating factor behind a defendant's conduct. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Sorrano's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989). He must plead facts which suggest an absence of legitimate correctional goals for the challenged conduct. *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995). Mere allegations of retaliatory motive or conduct will not suffice. A prisoner must "allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights." *Frazier v. Dubois*, 922 F.2d 560, 562, n.1 (10th Cir. 1990).

### 1. Count 1: Retaliation regarding Library

In his first claim, Mr. Shreves alleges Defendants Wendy Zuber and Marisa Bostwick implemented a copy policy on February 8, 2016. Thereafter, Mr.

Shreves filed a grievance regarding the policy and sought a preliminary injunction to enjoin the enforcement of the policy.  Subsequently, Defendants allegedly began denying and reducing time in the library, removing legal book, and forms. (Response Brief, Doc. 19.)  Mr. Shreves claims Defendants removed and destroyed hundreds of legal books from the library in retaliation for his filing grievances contesting their choice to discontinue legal callouts, adding them as a defendant in the Second Amended Complaint (DV 15-50 Powell County), filing for a TRO/Preliminary injunction, and complaining to the Access to Justice Commission.  (Complaint, Doc. 2 at ¶ 79.)  These allegations are sufficient to state a First Amendment retaliation claim.

Defendants seek to dismiss Mr. Shreves's retaliation claims regarding the copy policy which was implemented on February 8, 2016 (Complaint, Doc. 2 at ¶ 7) on the grounds that the copy policy was instituted prior to Mr. Shreves filing his state court complaint naming Ms. Zuber and Ms. Bostwick in June 2016 (Complaint, Doc. 2 at ¶ 21.)  In his response, however, Mr. Shreves also lists a number of grievances he filed regarding library staff including Ms. Zuber and Ms. Bostwick in late 2015 prior to the implementation of the copy policy.

The parties can work out the details of specifics of Mr. Shreves's retaliation claim in discovery, but he has set forth sufficient facts to plausibly state a retaliation claim against Defendants Zuber and Bostwick.

Mr. Shreves also alleges that Captain Michael Zuber (who is married to Defendant Wendy Zuber) began standing outside of Mr. Shreves's work for prolonged periods of time and refused to process a grievance against the Captain's subordinate after Mr. Shreves began filing grievances regarding Mrs. Zuber. Mr. Shreves claims these actions increased his anxiety and chilled his rights to file grievances and complaints free of retaliation. These allegations are sufficient to state a First Amendment retaliation claim.

## 2. Count 6: Retaliation and Due Process January 2015

In Count 6, Mr. Shreves alleges that on July 15, 2015, Officer Matter "forgot" to call him for legal library callout even though Mr. Shreves was standing in front of Officer Matter with his stuff waiting for the call. Mr. Shreves filed a grievance addressing repeated issues of this type (#6942) and while this grievance was pending, Officer Matter again "forgot" to call Mr. Shreves for legal callout on August 20, 2015. While another grievance (#7185) was pending, Officer Matter again "forgot" to call Mr. Shreves for legal callout. (Complaint, Doc. 2 at ¶ 179, 180.) Mr. Shreves also contends that on August 25, 2015, Mrs. Murphy told him that she emailed Sgt. Graham about Officer Matter and his repeated failures to call Mr. Shreves. (Complaint, Doc. 2 at ¶ 181.) He claims Officer Michael Bury refused to process his legal mail and failed to call him out when his father came to visit. (Complaint, Doc. 2 at ¶¶ 183, 184, 190.) He also alleges Officer Francom

Mr. Shreves about bringing his GUIDE program homework with him to the RAC for work even though AW Wilson and other supervisors had approved it.  Sgt. Francom told Shreves he is there (RAC) for work after acting as if he did not know what the books were part of it.  (Complaint, Doc. 2 at ¶ 188.)  Mr. Shreves these actions were taken in retaliation for grievances filed and/or requests for investigations.

Defendants construe these as "petty slights."  But it is only necessary for Mr. Shreves to,

> allege that the official's acts would chill or silence a person of ordinary firmness from future First Amendment activities.  A plaintiff who fails to allege a chilling effect may still state a claim if he alleges he suffered some other harm, that is more than minimal.  That the retaliatory conduct did not chill the plaintiff from suing the alleged retaliator does not defeat the retaliation claim at the motion to dismiss stage.

*Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012)(internal citations and quotations omitted).  The Court finds that Mr. Shreves's allegations against Officers Matter, Bury, and Francom are sufficient to state a retaliation claim. Accordingly, the motion to dismiss Count 6 should be denied.

### 3.   Count 7:  Retaliation Conspiracy to violate First, Eighth & Fourteenth Amendments

The Court agrees with Defendants that threats, verbal harassment, and a slight push or shove are not enough to state an independent constitutional violation. *See Gaut v. Sunn*, 810 F.2d 923, 925 (9th Cir. 1987)("A mere threat may not state a

cause of action … and it trivializes the eighth amendment to believe a threat constitutes a constitutional wrong."); *Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1996)("Verbal harassment generally does not violate the Eighth Amendment."); *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987)("vulgar language" cannot show a civil rights violation.); *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)( not "every malevolent touch by a prison guard gives rise to a federal cause of action.").[1]

But the "adverse action" element of a retaliation claim need not be an independent constitutional violation.  *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995).   Moreover, as set forth above, Mr. Shreves need only allege that would chill or silence a person of ordinary firmness from future First Amendment activities.  *Watison*, 668 F.3d at 1114.  In Count 7, Mr. Shreves alleged in detail a series of verbal assaults, threats, harassment, and beratement by Defendants Ramirez, Pomeroy, and Harris meant to deter the exercise of that First Amendment right.  Mr. Shreves's allegations are sufficient to state a First Amendment retaliation claim.

---

[1] To the extent Mr. Shreves seeks to raise an assault tort claim or an Eighth Amendment claim regarding Officer Harris throwing his identification card, his allegations fail.  *See Hudson*, 503 U.S. at 9.

#### 4. Defendants Lishman and Ambrose

Mr. Shreves also names Defendants Robert Lishman and Colleen Ambrose in Counts 1, 2, and 10 claiming they approved the removal of legal books from the library and other issues regarding the library.  Defendants Lishman and Ambrose do not work at the prison.  They serve as legal counsel for the Montana Department of Corrections.  While "legal" may have been consulted regarding the removal of books from the library, there is no factual allegation to plausibly suggest that Defendants Lishman or Ambrose were acting in retaliation for Mr. Shreves's protected activity or denying his access to courts.  His claims are speculative and do not "permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679.  Mr. Shreves has failed to show that he is entitled to relief from Defendants Lishman or Ambrose and as such the Motion to Dismiss these Defendants in Counts 1, 2, and 10 should be granted.

### C.  Count 2:  First Amendment Access to the Courts

Under the First and Fourteenth Amendments to the United States Constitution, inmates have a "fundamental constitutional right of access to the courts." *Bounds v. Smith*, 430 U.S. 817, 828 (1977).  That access must be "adequate, effective, and meaningful." *Id*. at 822.  This includes "both a right to meaningful access to the courts and a broader right to petition the government for a redress of his grievances." *Silva v. Di Vittorio*, 658 F.3d 1090, 1102 (9th Cir.

2011), *invalidated on other grounds by Coleman v. Tollefson*, 575 U.S. 532 (2015). There are two types of access to the courts claims: "those involving prisoners' right to affirmative assistance and those involving prisoners' rights to litigate without active interference." *Silva*, 658 F .3d at 1102.

To show a violation of either type of right to access to the courts, an inmate must demonstrate they experienced an "actual injury," in that there was a specific instance in which they were denied access. *Lewis v. Casey*, 518 U.S. 343, 349-352 (1996). An inmate must show that alleged deficiencies in active assistance, or incidents of interference actually prevented the inmate from pursuing and filing a non-frivolous legal claim or caused the dismissal of a viable action. *Id*. at 351. Also, the injury requirement is "not satisfied by just any type of frustrated legal claim." *Id*. at 354-55. It only applies if an inmate is denied access with regard to a direct appeal from their conviction, habeas petitions, or civil rights actions challenging the conditions of their confinement. *Id*.

Here, Mr. Shreves alleges the February 2016 copy policy, delays in calling him out for library time, canceling library, changing library schedule, removal of library books, inadequate library, the high price on inner library loans, limiting typewriters and other materials, lack of computers, irregular library periods, and ban on personal typewriters (Complaint, Doc. 2 at ¶¶ 79-81, 97-105) denied him access to the courts. In his response brief he also contends Defendants removed

9

forms, the reporters, drastically reduced access to the library, all while changing the schedule so often it became impossible for him to prepare meaningful legal papers in order to prosecute or present claims.  (Doc. 19 at 26.)

In his response brief, Mr. Shreves also lists a number of lost/impeded claims which he contends establishes "actual injury" for purposes of this claim.  (Doc. 19 at 28-31.)  These allegations along with those set forth in his Complaint are sufficient to state a denial of access to the courts claim.  The motion to dismiss should be denied as to this claim.

### D.  Count 3:  First Amendment Access to Published Information

In Count 3, Mr. Shreves alleges Defendants W. Zuber, Bostwick, Wodnik, and Wood removed thousands of books from the library.  He contends Defendants made no individual, particular determination on each book but rather selected books for removal based on copyright dates (they were old), subjective content assessments, and Christian religious affiliation.  He complains Defendants violated the First Amendment because they used no objective standards, created an environment where some inmates physically fought over books at intake, and provided a severely limited selection of materials and content.  He argues Defendants made all these decisions with the improper objective of reducing Christian religious material available and discarding properly donated materials from both inmates and outside organizations.  (Complaint, Doc. 2 at 110.)

10

Defendants are correct that Mr. Shreves has no First Amendment right to general library access. *May v. Baldwin*, 109 F.3d 557, 565 (9th Cir. 1997). But the government violates the First Amendment when it regulates speech "based on its substantive content or the message it conveys." *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 828 (1995). Mr. Shreves alleges the destruction of books was done to reduce Christian religious material. If Defendants destroyed Christian books to deny inmates access to Christian ideas, then Mr. Shreves's claims could potentially state a claim. *See Board of Education v. Pico*, 457 U.S. 853 (1982). But Mr. Shreves alleges Ms. Zuber destroyed books to even out the number of books for all religions. Further, Mr. Shreves submitted an affidavit with his Complaint indicating Ms. Zuber threw out books (both religious and non-religious) using no standard to determine which books to remove and which books to keep. (Taylor Declaration, Doc. 2-3 at 27, ¶ 3.)

As such, the "facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'" that Mr. Shreves is entitled to relief. *Iqbal*, 556 U.S. at 679 quoting Fed. Rule Civ. Proc. 8(a)(2). Defendants' motion to dismiss this claim should be granted.

### E. RLUIPA/ Free Exercise—Counts 4 & 9

#### 1. RLUIPA

The Religious Land Use and Institutionalized Persons Act (RLUIPA), 42

U.S.C. § 2000, et seq. provides that "no government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution" unless the government shows that the burden furthers "a compelling government interest" by "the least intrusive means" available. 42 U.S.C. § 2000cc-1(a).

RLUIPA does not authorize money damages against state officials, regardless of whether they are sued in their official or individual capacities. *See Jones v. Williams*, 791 F.3d 1023, 1031 (9th Cir. 2015). As such, Mr. Shreves may only obtain injunctive relief under RLUIPA. He does not request injunctive relief, therefore, Mr. Shreves's RLUIPA claims should be dismissed.

### 2.  First Amendment

#### a.  Count 4:  Removal of Books

The Free Exercise Clause of the First Amendment provides, "Congress shall make no law . . . prohibiting the free exercise" of religion. U.S. CONST., amend I. To violate the Constitution, the interference with religious practice must be more than an inconvenience; it must substantially burden the exercise of religion. *Freeman v. Arpaio*, 125 F.3d 732, 737 (9th Cir. 1997), *abrogated on other grounds as recognized in Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008); *see also Eckstrom v. Beard*, 705 F. App'x 588, 588-89 (9th Cir. 2017).

In Count 4, Mr. Shreves makes the conclusory allegation that the removal of

12

Christian books substantially burden his free exercise of his religion.  He does not specifically explain what books were removed or how their removal substantially burdened his exercise of religion or why he cannot use other books to practice his faith.  Where an inmate has "numerous other means of practicing his religion," a free exercise claim fails.  *Shakur v. Schriro*, 514 F.3d 878, 886 (9th Cir. 2008).  Mr. Shreves's First Amendment claim regarding the removal of Christian books from the library should be dismissed.

In his response, Mr. Shreves argues he also raised an Establishment Clause claim on the grounds that removing Christian books to numerically equate the books in the library to even numbers constituted the establishment of religion.  (Doc. 19 at 42 citing Complaint, Doc. 2 at ¶ 115.)  The Establishment Clause forbids government policies "respecting an establishment of religion." U.S. Const., Amdt. 1.  The "clearest command" of the Establishment Clause is that the Government cannot favor or disfavor one religion over another.  *Larson v. Valente*, 456 U.S. 228, 244 (1982).  Mr. Shreves's allegations do not plausibly suggest that Defendants were favoring one religion over another even if they were attempting to even out the number of religious books.  This claim should be dismissed.

### b.  Count 9:  Missed Service

In Count 9, Mr. Shreves alleges Officer Harris "attacked him" and he had to endure verbal and physical assault when he attempted to attend a Christian service

on February 2, 2018.  (Compliant, Doc. 2 at ¶¶ 248-257.)  Mr. Shreves argues it is a central tenet of his faith to be involved in corporate worship and to encourage one another in times of trouble.  He claims Officer Harris called all men who accessed the RAC a "pack of hypocrites" and Officer Harris "unleashed a vicious attack" on Mr. Shreves's faith and convictions.  (Complaint, Doc. 2 at ¶ 302.)

These allegations are insufficient to state a First Amendment claim because Mr. Shreves failed to allege facts showing that the denial of access to a single religious gathering placed a substantial burden on his exercise of religion.  Courts in the Ninth Circuit (and elsewhere) have routinely held that the denial of a religious practice on a single, isolated occasion does not constitute a "substantial burden" and thus does not violate the First Amendment.  *E.g., Howard v. Skolnik*, 372 F. App'x 781, 782 (9th Cir. 2010) (summary judgment on free exercise claim was appropriate where inmate's allegation of two incidents where prison staff interfered with his fasting did not amount to a substantial burden); *Canell v. Lightner*, 143 F.3d 1210, 1215 (9th Cir. 1998) ("relatively short-term and sporadic" interference with religious exercise was not a substantial burden).

Mr. Shreves only alleged that Officer Harris inhibited his ability to attend a religious service on a single occasion.  In his response brief he contends that Officer Harris caused him to fear for his personal safety such that he requested protective custody which would have caused the loss of numerous privileges.  But

he does not allege that this actually happened.

This de minims interference with his religious practice is insufficient to establish a violation of the Free Exercise Clause of the First Amendment and Defendants' motion to dismiss on this claim should be granted.  Mr. Shreves may file an amended complaint to attempt to set forth facts sufficient to state a First Amendment claim but he must explain how the one-time incident imposed a substantial burden his religious practice.

### F.  Count 8:  False Incident Reports

In Count 8, Mr. Shreves alleges Defendants Harris, Pomeroy, Connell, McNabb, Ramirez, Granvold, and Wood deliberately omitted key details about the extent of retaliation on Mr. Shreves and refused to discipline the officers involved. To the extent, Mr. Shreves is seeking to hold Defendants Harris, Pomeroy, Ramirez, or Granvold liable for submitting false incident reports, those allegations fail to state a claim.  False incident reports alone are not actionable under § 1983, because filing a false report does not violate a right secured by the Constitution or laws of the United States.  *See Sandin v. Conner*, 515 U.S. 472, 484 (1995) (holding that inmate's liberty interest is generally infringed only by an "atypical and significant hardship in relation to the ordinary incidents of prison life").

Defendants' Motion on Count 8 should be granted as to Defendants Harris, Pomeroy, Ramirez, and Granvold.  To the extent, however, that Mr. Shreves raises

claims of supervisory liability in Count 8 against Defendants Connell, McNabb, and Wood, those allegations are addressed below.

### G. **Supervisory Liability Claims**

Mr. Shreves raises supervisory liability claims throughout his Complaint culminating in Count 10. "A defendant may be held liable as a supervisor under § 1983 if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011). Section 1983 will not impose liability on supervising officers under a respondeat superior theory of liability. *Monell*, 436 U.S. at 691-94. That is, a defendant cannot be held liable just because they supervise other employees. Instead, supervising officers are liable under § 1983 "only if they play an affirmative part in the alleged deprivation of constitutional rights." *King v. Atiyeh*, 814 F.2d 565, 568 (9th Cir. 1987).

A supervisor may be liable: (1) for setting in motion a series of acts by others, or knowingly refusing to terminate a series of acts by others, which they knew or reasonably should have known would cause others to inflict constitutional injury; (2) for culpable action or inaction in training, supervision, or control of subordinates; (3) for acquiescence in the constitutional deprivation by subordinates; or (4) for conduct that shows a reckless or callous indifference to the

rights of others.  *Larez*, 946 F.2d at 646.

In Count One,[2] Mr. Shreves claims Defendants Wood, Cobban, and Wodnik denied Mr. Shreves's grievances regarding the removal of the library books.  In Count 5, he alleges Defendant Cobban met with Warden Fletcher and then refused to process the grievance Mr. Shreves filed after Warden Fletcher threatened him for the previous complaint about the STEPS class actions.  (Complaint, Doc. 2 at 172.)  He also alleges Defendant Wodnik was informed about Warden Fletcher's threats to inmates and retaliation, along with other physical encounters he had with inmates, yet she took no action because she was close to retirement and did not want the headache.  (Complaint, Doc. 2 at 173.)

A prison official's participation in the grievance process generally does not constitute significant participation in an alleged constitutional violation sufficient to give rise to personal liability under Section 1983.  *See, e.g., Wilson v. Woodford*, No. 1:05–cv–00560–OWW–SMS, 2009 WL 839921, at *6 (E.D. Cal. Mar. 30, 2009) (ruling against prisoner on administrative complaint does not cause or contribute to constitutional violation).  A prisoner has no constitutional right to an effective grievance or appeal procedure.  *See Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (holding that prisoner has no constitutional right to effective

---

[2] Mr. Shreves lists former Warden Kirkegard in Count One, but he has not named Mr. Kirkegard as a Defendant and Warden Kirkegard has not been served in this matter.

grievance or appeal procedure); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) ("There is no legitimate claim of entitlement to a grievance procedure.").

However, given the number of grievances and complaints filed by Mr. Shreves regarding his claims, the Court cannot say that these Defendants should not be held liable under a supervisory liability theory. Should Mr. Shreves establish that named Defendants retaliated against him and/or denied him access to the Court on the numerous occasions set forth in the Complaint and yet the supervising officials failed to take action, he has at least plead a claim of acquiescence in the constitutional deprivations of their subordinates.

Mr. Shreves has not, however, stated a claim against Defendants Harris, Pomeroy, Ramirez, M. Zuber, Robert Lishman, and Colleen Ambrose in Count 10. The motion to dismiss Count 10 should be granted as to those Defendants.

## II. MOTION FOR TEMPORARY RESTRAINING ORDER

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter* v. *Natural Resources Defense Council, Inc.,* 555 U.S. 7, 24 (2008) (citations omitted). It serves not as a preliminary adjudication on the merits, but as a tool to preserve the status quo and prevent irreparable loss of rights before judgment. *Textile Unlimited, Inc.* v. *A.. BMH & Co., Inc.,* 240 F.3d 781, 786 (9th Cir. 2001). In reviewing a motion for preliminary injunction, "courts must balance the competing claims of injury and must consider the effect on each party of the

granting or withholding of the requested relief." *Winter*, 555 U.S. at 24 (citations and internal quotation marks omitted). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20 (citations omitted).

*Winter* does not expressly prohibit use of a "sliding scale approach to preliminary injunctions" whereby "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Alliance/or the Wild Rockies* v. *Cottrell,* 632 F.3d 1127, 1131 (9th Cir. 2011). The Ninth Circuit recognizes one such "approach under which a preliminary injunction could issue where the likelihood of success is such that serious questions going to the merits were raised and the balance of hardships tips sharply in plaintiff's favor." *Id.* (citations and internal quotation marks omitted).

A preliminary injunction "should not be granted unless the movant, *by a clear showing,* carries the burden of persuasion." *Lopez* v. *Brewer,* 680 F.3d 1068, 1072 (9th Cir. 2012) (citations omitted, emphasis in original). A request for a mandatory injunction seeking relief well beyond the status quo is disfavored and shall not be granted unless the facts and law clearly favor the moving party.

*Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1319–20 (9th Cir. 1994).

Mr. Shreves is seeking a temporary restraining order and preliminary injunction against Defendants to: (1) stop the removal of his legal work and (2) to stop continued retaliation for litigation and grievances. (Doc. 22.) Specifically, he seeks an injunction to: (1) prohibit the removal of legal materials from Mr. Shreves's cell without documenting the items removed; (2) require Defendants to allow Mr. Shreves access to materials removed from his cell; (3) prohibit Defendants from removing Mr. Shreves from the GUIDE program or transfer him to another location; (4) prohibit Defendants from issuing infractions against Mr. Shreves for policy violations relating to alleged "excess" property related to active litigations; (5) require Defendants to allow Mr. Shreves to store legal work in his cell; (6) require Defendants to provide "religious and recreational activities as scheduled if staffing is available…"; (7) prohibit Defendants from violating sick leave policies; and (8) "[a]ny other relief required to maintain the status quo." (TRO Brief, Doc. 23 at 6-8.)

The Court is concerned about the potential removal of Mr. Shreves's legal materials. But Defendants presented prison policies which allow Mr. Shreves to have two containers for property and presented evidence that MSP has previously accommodated inmates with pending litigations to have excess storage containers. (Docs. 30, 38.) Mr. Shreves has not shown that his property has been confiscated

or is being confiscated or that he is in excess of the storage requirements or that he requested accommodation for excess materials. As such, he has not established that he will suffer irreparable harm without the issuance of an injunction against the prison

Further, the Court will not interfere with future issues regarding Mr. Shreves at this juncture. The function of a preliminary injunction is to preserve the status quo pending a determination on the merits. *Chalk v. U.S. Dist. Court*, 840 F.2d 701, 704 (9th Cir. 1988). As such, there is heightened scrutiny where the movant seeks to alter rather than maintain the status quo. *Dahl v. HEM Pharm. Corp.*, 7 F.3d 1399, 1403 (9th Cir. 1993) (holding that mandatory, as opposed to prohibitory, injunctions are "subject to a heightened scrutiny and should not be issued unless the facts and law clearly favor the moving party"). In addition, the Prison Litigation Reform Act (PLRA) mandates that prisoner litigants must satisfy additional requirements when seeking preliminary injunctive relief against prison officials:

> Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity set out in paragraph (1)(B) in tailoring any preliminary relief.

18 U.S.C. § 3626(a)(2).

Here, Mr. Shreves seeks injunctive relief in the form of an order prohibiting prison officials from disciplining, transferring, or removing him from the GUIDE program. The Court finds that the relief Mr. Shreves seeks would potentially interfere with the operation of the prison and therefore have an adverse impact on public safety and/or the operation of the criminal justice system. The Court should not issue an all-encompassing order such as the one requested by Mr. Shreves. The motion for temporary restraining order/preliminary injunction and request for hearing should be denied.

## III. OVERSIZE BRIEF

Nearly a month after filing his oversize brief in response to Defendants' motion to dismiss, Mr. Shreves filed a motion to file an oversize brief. (Doc. 25.) Defendants represent that Mr. Shreves's brief exceeds 13,000 words twice the 6,500 word limit set forth in Local Rule 7.1(d)(2). The Court has considered Mr. Shreves's oversized response on this occasion and will grant his motion to file an oversize brief. But Mr. Shreves filed a complaint consisting of 186 pages including exhibits and a motion for temporary restraining order with brief and declaration consisting of 50 pages (over 20,000 words). His filings are excessive and will no longer be tolerated. The Court will not accept any future filings that violate the Court's word limit.

## IV. MOTION FOR CONTEMPT

On August 27, 2019, Chief Judge Christensen issued Standing Order No. DLC-46 implementing the Montana Prison Electronic Filing Pilot Project commencing September 16, 2019.  Pursuant to that Standing Order, all MSP prisoner filings must be electronically submitted to the Montana Federal District Court.  The Order provides that filings should be placed in a designated lock box to be sent to the prison library for scanning.

Mr. Shreves complains that a designated lock box was not available in his housing unit for several days.  According to Defendants the lock box was damaged by inmates on or about December 2, 2019.  A maintenance request was made, and the box was repaired and remounted on or about December 11, 2019.  Mr. Shreves signed his certificate of service on his Motion for Contempt on December 10, 2019 and the motion was filed on December 11, 2019.

The Prison E-Filing Project was implemented to increase efficiencies in pro se prisoner filings and save costs to prisoner litigants.  It has been successful in expediting the processing of prisoner filings enabling prisoners to have their documents filed with the Court in a matter of days as opposed to having documents sent through the United States Mail.

Mr. Shreves is the only inmate who has challenged or complained about the E-Filing Project and the Project benefits the prisoner litigants at Montana State

23

Prison.  The Court will not hold Defendants in contempt because inmates damaged the lock box utilized for E-filing and it was not available for nine days.

## V.  MOTION FOR SANCTIONS

Mr. Shreves also filed a motion for Rule 11 sanctions against Defendants complaining that the response to his Motion for Temporary Restraining Order was unsupported by affidavits and misrepresents or omits key facts and procedures. (Doc. 36.)

Rule 11 imposes upon attorneys a duty to certify by signature that they have read any pleadings or motions they file with the court and that such pleadings and motions are well-grounded in fact, have a colorable basis in law, and are not filed for an improper purpose.  *See* Fed. R. Civ. P. 11(b).  "One of the fundamental purposes of Rule 11 is to reduce frivolous claims, defenses or motions and to deter costly meritless maneuvers thereby avoiding delay and unnecessary expense in litigation."  *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002) (internal quotation marks and citations omitted).  The Ninth Circuit has made clear that "Rule 11 is an extraordinary remedy, one to be exercised with extreme caution."  *Operating Engineers Pension Trust v. A-C Co.*, 859 F.2d 1336, 1345 (9th Cir. 1985).  Thus, sanctions under Rule 11 are "reserve[d] for the rare and exceptional case where the action is clearly frivolous, legally unreasonable or without legal foundation, or brought for an improper purpose."  *Id*. at 1344.

24

Mr. Shreves has not set forth sufficient basis to impose Rule 11 sanctions. There is no showing that Defendants' response to Mr. Shreves's motion for injunctive relief was groundless or filed for an improper purpose. As set forth above, the Court recommends that the motion for injunctive relief be denied. The Court will not issue sanctions based upon Defendants' response.

Based on the foregoing, the Court issues the following:

## ORDER

1. Mr. Shreves's Motion to File an Oversize Response to Defendants' Motion to Dismiss (Doc. 25) is GRANTED but no further oversize briefs will be allowed.

2. Mr. Shreves's Motion for Contempt against Defendant Michael and his Agents for Violating Standing Order DLC-46 (Doc. 32) is DENIED.

3. Mr. Shreves's Motion for Sanctions (Doc. 36) is DENIED.

4. Mr. Shreves must immediately advise the Court of any change in his mailing address. Failure to do so may result in dismissal of this action without notice to him.

Further, the Court issues the following:

## RECOMMENDATIONS

1. Defendants' Motion to Dismiss (Doc. 11) should be GRANTED as follows:

(a)  Defendants Ambrose and Lishman should be DISMISSED from Count 1.

(b)  Defendants Ambrose, Lishman, and Michael Zuber should be DISMISSED from Count 2.

(c)  Mr. Shreves' First Amendment claim regarding access to published materials as alleged in Count 3 should be DISMISSED.

(d)  All RLUIPA, Establishment Clause, and Free Exercise claims raised in Counts 4 and 9 should be DISMISSED.

(e)  Defendants Harris, Pomeroy, Ramirez, and Granvold should be DISMISSED from Count 8.

(f)  Defendants Harris, Pomeroy, Ramirez, M. Zuber, Lishman, Ambrose, and W. Zuber should be DISMISSED from Count 10.

(g)  Defendants Ambrose, Lishman, and Granvold should be DISMISSED entirely from this action.

2.  Defendants Motion to Dismiss (Doc. 11) should be DENIED as follows:

(1)  Defendants W. Zuber, Bostwick, Wodnik, Ambrose, Wood, M. Zuber, and Cobban should be required to file an answer to Mr. Shreves's retaliation claims raised in Count 1.

26

(2)  Defendants W. Zuber, Bostwick, Wodnik, Wood, and Cobban should be required to file an answer to Mr. Shreves's allegations of denial of access to the courts as alleged in Count 2.

(3) Defendants Fletcher, Cobban, and Wodnik should be required to file an answer to Count 5.

(4)  Defendants Matter, Bury, and Francom should be required to file an answer to Paragraph 190 in Count 6.

(5)  Defendants Harris, Pomeroy, Connell, McNabb, and Ramirez should be required to file an answer to Count 7.

(6)  Defendants Connell, McNabb, and Wood should be required to file an answer to Count 8.

(7)  Defendants McNabb, Wood, Cobban, Fletcher, Wodnik, Michael, Connell, and Bostwick should be required to file an answer to Mr. Shreves's supervisory liability claims alleged in all remaining claims.

3.  Mr. Shreves's Motion for Temporary Restraining Order/Preliminary Injunction and Request for Hearing (Doc. 22) should be DENIED.

## NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT

The parties may file objections to these Findings and Recommendations

within fourteen (14) days after service (mailing) hereof.[3]  28 U.S.C. § 636.  Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

This order is not immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Fed.R.App.P. 4(a), should not be filed until entry of the District Court's final judgment.

DATED this 27th day of February, 2020.


    */s/ John Johnston*
John Johnston
United States Magistrate Judge

---

[3]Mr. Shreves is entitled an additional three (3) days after the period would otherwise expire.

28