IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| RICHARD E. SHREVES, | CV 18–97–H–DLC–TJC |
|---|---|
| Plaintiff, | |
| vs. | ORDER |
| DAVID WILLIAM HARRIS, et al., | |
| Defendants. | |

On February 27, 2020, United States Magistrate Judge John Johnston entered his Order and Findings and Recommendations recommending that the Court largely deny Defendants' Motion to Dismiss and allow the majority of Montana State Prisoner Richard E. Shreves' claims under 42 U.S.C. § 1983 to advance. (*See* Doc. 42.) In addition to denying Shreves' motions for contempt and sanctions, he recommended the Court deny Shreves' motion for a temporary restraining order, preliminary injunction, and hearing. (*Id.*)

Shreves timely objects and so is entitled to de novo review of those findings to which he specifically objects. 28 U.S.C. § 636(b)(1)(C). This Court reviews for clear error those findings to which no party objects. *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003); *Thomas v. Arn*, 474 U.S. 140, 149 (1985). Clear error exists if the Court is left with a "definite and firm conviction that a

1

mistake has been committed." *United States v. Syrax*, 235 F.3d 422, 427 (9th Cir. 2000) (citations omitted).

**Background**

At the heart of his Complaint, Shreves alleges that, after complaining about the lack of legal resources at the prison library by filing grievances and pursuing litigation, prison officials retaliated against him by further restricting his library access and interfering with his right to practice his religion. Numerous officials engaged in a campaign of harassment against him. Shreves alleges, inter alia, that he was called a snitch, threatened, harassed, singled out for disciplinary treatment where others were not, denied clean laundry, denied library time, and hassled for leading a religious meeting. At least one of these altercations escalated into physical violence when Officer Harris threw an identification card at Shreves' chest out of frustration.

Shreves also claims that library officials threw away hundreds, if not thousands, of books. Some of these books were legal materials, the destruction of which harmed his state court litigation. Many of these books were Christian materials. Shreves claims that he was told that Christian books were removed in order to equalize the texts across all religions because the library had "too many Christian books." Shreves claims the loss of these books impeded his ability to learn more about his faith.

In gist, Shreves alleges:

Count 1: First Amendment Retaliation claim involving library access and materials. (Doc. 2 at 12–30.)
Count 2: First Amendment Access to Courts claim. (*Id.* at 31–34.)
Count 3: First Amendment Access to Published Materials claim. (*Id.* at 35–37.)
Count 4: RLUIPA/First Amendment Free Exercise and Establishment claim involving destruction of Christian books. (*Id.* at 38–39.)
Count 5: First Amendment Retaliation claim concerning religious gathering. (*Id.* at 40–51.)
Count 6: First Amendment Retaliation claim involving library access and legal mail raised against non-library defendants. (*Id.* at 52–56.)
Count 7: First Amendment Retaliation Conspiracy and Eighth Amendment claim involving laundry, rec room activities, and harassment. (*Id.* at 57–74.)
Count 8: First Amendment Retaliation and Eighth Amendment claim involving false reports and supervisory liability. (*Id.* at 75–76.)
Count 9: First Amendment Free Exercise claim. (*Id.* at 77–78.)
Count 10: Supervisory liability for all claims. (*Id.* at 79–80.)

## Discussion

In his Order and Findings and Recommendation, Judge Johnston recommended dismissing Counts 3, 4, and 9 entirely, dismissing Defendants Lishman, Ambrose, and Granvold entirely, and dismissing various other Defendants from a few of Shreves' remaining claims. (Doc. 42 at 26–27.) Judge Johnston also recommended denying Shreves' motion for a temporary restraining order. (*Id.* at 18–22.) Shreves filed objections. (Doc. 43.) The State filed a response to Shreves' objections. (Doc. 45.) The Court will address each of Shreves' objections in the order he raises them. The Court will then review for clear error those findings to which no party objects.

## I. Objection #1: Dismissal of Lishman & Ambrose

Judge Johnston recommended that Shreves' library retaliation claim and access to courts claims (Counts 1 and 2) go forward against all Defendants except Colleen Ambrose and Robert Lishman. (Doc. 42 at 8.) Ambrose and Lishman serve as legal counsel for the Montana Department of Corrections. (*Id.*) In his Complaint, Shreves alleges that Ambrose and Lishman are implicated in the retaliation scheme because they approved of the new restrictive copy policy, removal of books, and other policies that resulted in limiting his access to the library and the removal of important legal resources. He also alleges that Ambrose interfered with service on Kirkegard and provided misleading information about it. (Doc. 2 at 28). Judge Johnston recommended dismissing these Defendants entirely[1] because Shreves did not allege facts to plausibly indicate that Ambrose and Lishman rendered their legal advice to retaliate against Shreves for filing grievances. (Doc. 42 at 8.)

Shreves insists that Judge Johnston applied "too high a pleading standard." First, he finds it contrary that Judge Johnston would allow his claim to go forward against Defendants W. Zuber, Bostwick, Wodnik, Wood, M. Zuber, and Cobban when he claims that the same facts that implicate these Defendants also implicate Ambrose and Lishman. He then argues that courts have held attorneys liable for

---

[1] Lishman and Ambrose are only named in Counts 1, 2, and 10.

the results of their decisions and that the outcome should be no different here. (Doc. 43 at 6–8 (citing *Donovan v. Reinbold*, 433 F.3d 738, 743–44 (9th Cir. 1970), *Gillespie v. Civiletti*, 629 F.2d 637, 642–43 (9th Cir. 1980), *U.S. Sec. and Exchange v. Fehn*, 97 F.3d 1276, 1249–95 (9th Cir. 1996)).) Additionally, he provides supplementary documents to demonstrate that Ambrose and Lishman were critical players in the scheme to retaliate against him. (Docs. 43 at 6–8; 43-1 at 9–10.)

Shreves' argument that Ambrose and Lishman are critical players in the retaliation scheme because they authorized and directed all activities pertaining to the library—in other words, that the other Defendants were merely acting on advice of counsel—seems to undermine his entire retaliation theory. Nevertheless, at this juncture, the pertinent inquiry is not what Shreves claims is the import of the facts but whether Shreves has pled facts to support a viable legal theory.

As for his assertion that Ambrose and Lishman should be held responsible for the retaliatory impact of their legal advice—even if they had no intent to retaliate themselves—stretches his theory too far. A First Amendment retaliation claim in the prison context requires (as pertinent): "(1) [a]n assertion that a state actor took some adverse action against an inmate (2) *because of* (3) that prisoner's protected contact . . ." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005) (emphasis added). None of the cases cited by Shreves stand for the proposition

5

that the Court can overlook the requirement that the adverse action be taken *because of* a protected right. The Court will not retain Defendants Ambrose and Lishman when Shreves failed to allege that their legal advice was caused by, motivated by, or intended to cause him harm in response to filing grievances. Shreves' argument that Ambrose failed to serve Kirkegard does nothing to connect the missing dots.

Finally, far from lending support to his assertion that Ambrose and Lishman approved of policies in order to retaliate against him, the Declaration attached in support of his objections demonstrate that these Defendants were responsive to his concerns. Shreves submits an email from the prison's grievance coordinator that explains that the legal department instructed Defendant Bostwick to partially grant one of Shreves' grievances and to explain to him that the librarians could assist him in obtaining out-of-circuit authorities. (Doc. 43-1 at 9.) Having reviewed all of the material submitted by Shreves, the Court will adopt Judge Johnston's recommendation that Ambrose and Lishman be dismissed in full.[2]

---

[2] Shreves indicates that he objects to the dismissal of M. Zuber from Count 2, but he does not support this claim with any specificity. (*See* Doc. 43 at 5.) Reviewing for clear error and finding none, the Court will also adopt Judge Johnston's recommendation to dismiss M. Zuber from Count 2.

## II. Objection #2: Dismissal of Access to Published Materials (Count 3)

In Count 3, Shreves alleges that Defendants W. Zuber, Bostwick, Wodnick and Wood removed thousands of books from the library in violation of his First Amendment right to access published information. While there is no right to general library access, *May v. Baldwin*, 109 F.3d 557, 565 (9th Cir. 1997), the First Amendment prohibits the government from regulating speech on the basis of its content, *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 828 (1995). Shreves asserts that Christian books were removed from the library in order to even out the number of books across all religions. (Doc. 2 at 36.) He also asserts that other books were arbitrarily destroyed based on the Defendants' subjective criteria. (*Id.*)

Judge Johnston recommended that this claim be dismissed because Shreves' allegations that Christian books were destroyed to equalize Christian content (as well as the removal of books that were nonreligious) tended to negate the impression that Defendants destroyed books based on their content. (*See* Doc. 42 at 11.) While the Court agrees that Shreves' claim raises conflicting theories, the Court takes a more cautious view. Shreves' Complaint alleges that Zuber told him that she was getting rid of books because "she felt the library had too many 'Christian' books compared to other faiths." (Doc. 2 at 36.) Even if her motive is to equalize religious representation, removing books *because* they are Christian

7

constitutes content—if not viewpoint—regulation. The Court will allow this claim to advance to discovery.

### III. Objection #3: Dismissal of RLUIPA/Free Exercise/Establishment Claims (Counts 4 & 9)

#### A. RLUIPA

The Religious Land Use and Institutionalized Persons Act ("RLUIPA") provides that "no government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution" unless the government shows that the burden furthers "a compelling government interest" by "the least intrusive means" available. 42 U.S.C. § 2000cc-1(a). The only form of relief available under RLUIPA is injunctive relief. *Jones v. Williams*, 791 F.3d 1023, 1031 (9th Cir. 2015).

Judge Johnston recommended dismissing Shreves' RLUIPA claim after determining that Shreves had alleged only money damages and not injunctive relief. (Doc. 42 at 12.) In his objections, Shreves insists that he also requested injunctive relief (Doc. 42 at 10 (citing Doc. 2 at 85).) Accordingly, Shreves' RLUIPA claim will advance.

#### B. Free Exercise

Judge Johnston recommended that Shreves' free exercise claims be dismissed because Shreves did not explain why the removal of some Christian materials substantially burdened his exercise of religion. (Doc. 42 at 12–13 (citing

8

*Freeman v. Arpaio*, 125 F.3d 732, 737 (9th Cir. 1997) *abrogated on other grounds as recognized by Shakur v. Schriro*, 514 F.3d 878 (9th Cir. 2008) for the proposition that "[t]o violate the Constitution, the interference with religious practice must be more than an inconvenience; it must substantial burden the exercise of religion.").) In his objections, Shreves emphasizes the impact that the destruction of hundreds or thousands of Christian books had on his ability to "research and understand the difference between dogma, denominations, and other particulars of each [Christian] faith." He asserts that removing so many books "impedes the growth and cognitive development of [his] faith." (Doc. 43 at 11.) Although the Court is sympathetic to the missed opportunity for learning, the lost opportunity to learn more does not "substantial burden" his ability to practice his faith with the knowledge he currently has. The Court will adopt Judge Johnston's recommendation.

In Count 9, Shreves raises a free exercise challenge in response to Officer Harris' "verbal and physical assault" which interrupted a Christian gathering in February of 2018. (Doc. 2 at 77.) Judge Johnston recommended that this claim be dismissed because the "denial of access to a single religious gathering" did not place a "substantial burden" on his ability to practice his religion. (Doc. 42 at 14.) Shreves insists that Officer Harris' harassment made a tremendous impact on him such that he was willing to "forfeit[] his participation" in important religious

9

practices and go into protective custody to avoid further harassment. (Doc. 43 at 12–13.) Ultimately, however, Shreves did not go into protective custody and was able to continue his religious studies. Shreves asserts that denying his claim "ignores the coercion and detrimental effect Harris and company had on Shreves[.]" (*Id.* at 13.) But this is not the case. Although the harassment alleged by Shreves does not state a First Amendment free exercise claim, it is still relevant to his retaliation theory in Count 7.

Finally, Shreves argues that the limited access to legal materials burdened his religious practice because pursuing his legal claims was inefficient and took time away from his religious studies. (Doc. 43 at 13.) The First Amendment does not protect against the reality of having only so much time to spread across various pursuits. The Court will adopt Judge Johnston's recommendation to dismiss Count 9.

## IV. Objection #4: Dismissing Assault Theory

In Count 7 of his Complaint, Shreves raises an Eighth Amendment challenge alongside his First Amendment Retaliation theory against Defendants Harris, Pomeroy, Connell, McNabb, and Ramirez for their alleged harassment. Although this conduct is all relevant to Shreves' retaliation theories which are going forward, Judge Johnston determined that Shreves had failed to raise an assault tort claim or

an Eighth Amendment claim against Officer Harris for throwing an identification card at Shreves. (Doc. 42 at 7 n.1.)

In his objections, Shreves insists that the Court should permit a claim of assault and battery to advance against Officer Harris. (Doc. 43 at 14–15.) In Defendants' response to Shreves' objections, they acknowledge that Shreves pled facts which could give rise to a claim of assault and battery but assert that because Shreves failed to specifically allege assault, his claim should be dismissed. (*See* Doc. 8 at 11.)

What matters at this juncture is whether Shreves has alleged facts sufficient to plausibly state a claim—not whether he pins those facts to a precise legal theory. *See Skinner v. Switzer*, 562 U.S. 521, 530 (2011). Shreves' assault/battery claim against Officer Harris will go forward. However, the Court rejects Shreves' argument that the other Defendants are implicated in Officer Harris' alleged tort by virtue of their silence. Only Officer Harris is implicated in this claim.

### V. Objection #5: Dismissing Defendants Harris, Pomeroy, Ramirez, and Granvold (Count 8)

Judge Johnston determined that Shreves' allegation in Count 8 against Defendants Harris, Pomeroy, Ramirez and Granvold for submitting false incident reports fails to state a claim because a false report does not give rise to a constitutional violation. (Doc. 42 at 15.) Shreves argues that the false report was only one part of the broader campaign of bad conduct which included the incident

where he was denied laundry, his expulsion from the rec room, and the various other verbal altercations. (Doc. 43 at 16.) However, the conduct Shreves complains of is contained in Count 7 not Count 8. Judge Johnston is correct that the only allegation against Harris, Pomeroy, Ramirez, and Granvold in Count 8 is that these Defendants submitted false reports. Judge Johnston's recommendation will be adopted.

## VI. Objection #6: Dismissal of Eighth Amendment Claims

Shreves objects to (what he claims) is the Findings and Recommendations' neglect of his concern that prison officials created a hostile environment to deter other inmates from filing grievances that amounted to a violation of his right to be free from cruel and unusual punishment. (Doc. 43 at 17.) In his Complaint, Shreves attaches an Eighth Amendment challenge to his First Amendment claims in Counts 7 and 8. Shreves is incorrect that Judge Johnston did not respond to these claims. Judge Johnston determined that the conduct alleged in Count 7 did not give rise to an Eighth Amendment claim (Doc. 42 at 7) and recommended that Count 8 only advance to the extent it raised claims of supervisory liability for retaliation (*Id*. at 15). Although the Court has allowed a state law claim for assault/battery to advance against Officer Harris in Count 7, the facts alleged (Doc. 2 at 66–67) are a far cry from cruel and unusual punishment. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (not "every malevolent touch by a prison guard

gives rise to a federal cause of action."). Shreves' Eighth Amendment claims will be dismissed.

### VII. Objection #7: Supervisory Liability

Judge Johnston did not foreclose the possibility that supervisory liability could imposed upon Defendants McNabb, Wood, Cobban, Fletcher, Wodnik, Michael, Connell, and Bostwick if Shreves prevailed in his retaliation claims. However, the Magistrate Judge determined that any allegation of supervisory liability against Defendants Harris, Pomeroy, Ramirez, and M. Zuber should be dismissed presumably because any claim of supervisory liability would have to follow direct liability imposed first on those Defendants. (Doc. 42 at 18.) Shreves objects, premised largely on his misunderstanding. If these Defendants are found personally liable, it is inconsistent to find them liable as supervisors for their own conduct. Judge Johnston's recommendation will be adopted.

### VIII. Other Recommendations

Shreves did not object to Judge Johnston's recommendation to dismiss Granvold from Count 7 and to dismiss his establishment clause claim in Count 4. Finding no clear error, the Court will adopt these recommendations. Nor does any party object to Judge Johnston's recommendation that Shreves' retaliation claims in Counts 1, 6 and 7 and his access to courts claim in Count 2 advance. The Court

finds no clear error in the determination that Shreves' has alleged meritorious claims.

IX. **Injunction**

After filing his Complaint, Shreves filed a motion for a temporary restraining order and preliminary injunction anticipating that prison officials would remove legal work from his cell finding it in excess of his allotment of personal belongings, among other concerns. (Doc. 23.) Judge Johnston determined that Shreves had not demonstrated that a preliminary injunction was necessary to preserve the status quo because Shreves had not shown that the prison's two container policy was ineffective to safeguard his legal materials. Judge Johnston also determined that Shreves had not demonstrated that he satisfied the heightened scrutiny given to requests to alter the current situation (as opposed to maintaining the status quo). (Doc. 42 at 20–22.)

Shreves asserts that the policy to allow inmates to have two storage containers is not a written policy and he is concerned that the practice will not be recognized in his case. (Doc. 43 at 20–25.) However, counsel for Defendants have assured the Court that additional storage space "can be provided [to Shreves] is this matter, should the need for excess storage beyond policy permission be required." (Doc. 30 at 5.) In light of this representation, coupled with the fact that Shreves does not allege a single instance in which his legal documents were

actually confiscated, the Court is not convinced that the current policies are inadequate to safeguard Shreves' ability to protect his work product. Shreves has not met the demanding standard necessary for a preliminary injunction.

### X.     Contempt & Sanctions

Judge Johnston denied Shreves' motion for contempt and sanctions. (Doc. 42 at 23–24.) The Court will review for clear error. 28 U.S.C. § 636(b)(1)(A). Judge Johnston did not clearly err in denying Shreves' motion for contempt upon finding that it was not unreasonable that it took prison officials a few days to fix the e-filing lock box after inmates destroyed it, causing a temporary delay in Shreves' ability to file court documents. Judge Johnston also did not clearly err in denying the imposition of sanctions upon concluding that Defendants' response to Shreves' motion for injunctive relief was not groundless or filed for an improper purpose. Accordingly,

IT IS ORDERED that the Findings and Recommendations (Doc. 42.) is ADOPTED in part and REJECTED in part.

1. Defendants' Motion to Dismiss (Doc. 11) is GRANTED as follows:

    A. Defendants Ambrose and Lishman are DISMISSED from Count I.
    B. Defendants Ambrose, Lishman and M. Zuber are DISMISSED from Count II.
    C. The Establishment Clause and Free Exercise Claims raised in Counts 4 and 9 are DISMISSED.
    D. Shreves' Eighth Amendment claims in Counts 7 and 8 are DISMISSED.
    E. Defendants Harris, Pomeroy, Ramirez, and Granvold are DISMISSED from Count 8.

F. Defendants Harris, Pomeroy, Ramirez, M. Zuber, Ambrose, and Lishman are DISMISSED from Count 10.
   G. Defendants Ambrose, Lishman, and Granvold are DISMISSED entirely from this action.

2. Defendants' Motion to Dismiss (Doc. 11) is DENIED as follows:

   A. Defendants W. Zuber, Bostwick, Wodnik, Wood, M. Zuber, and Cobban are required to file an answer to Shreves' retaliation claims raised in Count 1.
   B. Defendants W. Zuber, Bostwick, Wodnik, Wood, and Cobban are required to file an answer to Shreves' allegations of denial of access to the courts alleged in Count 2.
   C. Defendants W. Zuber, Bostwick, Wodnik, and Wood are required to file an answer to Shreves' allegation of denial of access to published materials in Count 3.
   D. Defendants W. Zuber and Bostwick are required to file an answer to Shreves' RLUIPA claim in Count 4.
   E. Defendants Fletcher, Cobban, and Wodnik are required to file an answer to Shreves' retaliation claim in Count 5.
   F. Defendants Matter, Bury, and Francom are required to file an answer to Shreves' retaliation claim in Count 6.
   G. Defendants Harris, Pomeroy, Connell, McNabb, and Ramirez are required to file an answer to Shreves' retaliation claim in Count 7 and Harris is required to answer Shreves' assault/battery claim.
   H. Defendants Connell, McNabb, and Wood are required to file an answer to Shreves' retaliation claim in Count 8.
   I. Defendants McNabb, Wood, Cobban, Fletcher, Wodnik, Michael, Connell, and Bostwick are required to file an answer to Shreves' supervisory liability claims alleged in all remaining claims.

3. Shreves's Motion for Temporary Restraining Order/Preliminary Injunction and Request for Hearing (Doc. 22) is DENIED.

DATED this 3rd day of April, 2020.

/s/ Dana L. Christensen
Dana L. Christensen, District Judge
United States District Court