IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| RICHARD E. SHREVES, | Cause No. CV 18-97-H-DLC-JTJ |
| Plaintiff, | |
| vs. | ORDER and FINDINGS AND RECOMMENDATION |
| DAVID WILLIAM HARRIS, et al., | OF U.S. MAGISTRATE JUDGE |
| Defendants. | |

Plaintiff Richard Shreves, a state prisoner proceeding pro se, filed this case on October 9, 2018, alleging retaliation by many prison officers or employees and other violations of his civil rights at Montana State Prison.

On October 5, 2020, Shreves moved to amend his complaint.  The deadline for amending the pleadings expired on July 31, 2020.  *See* Order (Doc. 48) at 7 ¶ 1; Order (Doc. 89) at 5; Order and Findings and Recommendation (Doc. 72) at 1–2, 3–4, 6–7.

As discussed below, Shreves' motion to amend is better viewed as a motion to supplement his complaint.  He proposes to add the following:

| | |
|---|---|
| Count 1 | "Further Adverse Actions Since Filing This Complaint," Prop. Am. Compl. (Doc. 82-1) at 26; |
| Count 2 | "Lost/Impeded Claims Amounting to Actual Injury," *id*. at 38–42; *see also* Pl. Resp. to Mot. to Dismiss (Doc. 19) at 28–30; |

1

Count 3        additional adverse actions by Defendant Zuber, *see id*. at 45–46
               ¶ 106(a)–(d);

Count 7        "Events Following Filing of This Suit," *id*. at 83–86;

Count 8        "Supervisory Liability" as to Defendant Cobban, *see id*. at 90,
               and additional allegations, *see id*. at 91–93 ¶¶ 301–307;

Count 10       two new defendants, Godfrey and Wolken, *see id*. at 10, 94; and

Count 11       new claim alleging First Amendment retaliation, Eighth
               Amendment cruel and unusual punishment, Fourteenth
               Amendment due process, and harassment, *see id*. at 96–105 ¶¶
               310–350.

Shreves does not seek to amend Counts 4, 5, or 6.  The proposed amended

complaint omits Count 9 and prior allegations against Defendant Kirkegard.

*Compare* Compl. (Doc. 2) at 28 ¶¶ 84, 86; *id*. at 32 ¶ (4), *with* Prop. Am. Compl.

(Doc. 82-1) at 5–10, 35 ¶¶ 89–90; *id*. at 42 ¶ (4).  Count 9 and Defendant

Kirkegard should be dismissed.

## I.  Applicable Law

Because Shreves is a prisoner and is proceeding in forma pauperis, the Court

must screen the pleading to determine whether it fails to state a claim on which

relief may be granted.  *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(a), (b)(1).

The Court will continue to refer to Shreves' pleading as an amended

complaint because it is complete—that is, it includes nearly all the allegations of

his original complaint, not just new ones.  But the allegations he proposes to add

are better characterized as "supplemental" under Federal Rule of Civil Procedure

15(d).  "The purpose of Rule 15(d) is to promote as complete an adjudication of the dispute between the parties as possible by allowing the addition of claims which arise after the initial pleadings are filed."  *William Inglis & Sons Baking Co. v. ITT Cont'l Baking Co.*, 668 F.2d 1014, 1057 (9th Cir. 1982), *quoted in Rhodes v. Robinson*, 621 F.3d 1002, 1007 (9th Cir. 2010); *see also, e.g.*, *Eid v. Alaska Airlines, Inc.*, 621 F.3d 858, 874 (9th Cir. 2010) (Rule 15(d) allows plaintiff to allege "additional causes of action based on facts that didn't exist when the original complaint was filed.").

Consistent with the purpose of Rule 15(d), the allegations a plaintiff seeks to add by supplementation must state a claim on which relief may be granted. Because a pleading is intended to be a "short and plain statement of the claim," it must not list every fact the plaintiff intends to prove at trial.  *See* Fed. R. Civ. P. 8(a)(2).  But a complaint, supplemental or otherwise, must allege facts sufficient to support an inference that the plaintiff is entitled to relief.  The United States Supreme Court explains what "stating a claim" requires:

> [A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted); *see also, e.g.*, *Glatt v. Chicago Park Dist.*, 87 F.3d 190, 194 (7th Cir. 1996).

Most of Shreves' claims allege retaliation.  As Shreves has already been advised, *see* Order and Findings and Recommendation (Doc. 42) at 3, a retaliation claim has "five basic elements":

> (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.

*Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005); *see also id*. at 567 n.11 (noting that allegation of "harm that is more than minimal" may serve as an allegation of chilling effect).

Shreves must allege facts supporting an inference that adverse action against him did not serve a legitimate correctional goal.  *See Bruce v. Ylst*, 351 F.3d 1282, 1288 (9th Cir. 2003); *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995); *see also Shepard v. Quillen*, 840 F.3d 686, 688 (9th Cir. 2016) (citing *Turner v. Safley*, 482 U.S. 78, 84–85 (1987)).  In his pleading,[1] he must also allege facts supporting an inference that the defendant's intent to retaliate was at least a substantial or

---

[1] Ultimately, at trial, he must prove retaliation was the but-for cause of a defendant's adverse action.  *See Hartman v. Moore*, 547 U.S. 250, 256 (2006).

4

motivating factor in the decision to take the adverse action. *See Mt. Healthy City Bd. of Ed. v. Doyle*, 429 U.S. 274, 287 (1977); *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989).

A prisoner must also allege specific facts that tend to show intent to retaliate, such as "proximity in time between protected speech and the alleged retaliation," *McCollum. v. Cal. Dep't of Corrs. & Rehab.*, 647 F.3d 870, 882 (9th Cir. 2011), an expression of opposition to the plaintiff's speech, or documentary evidence contradicting a proffered correctional goal, *see, e.g., Shepard*, 840 F.3d at 690.

## II. Proposed Allegations

### A. Count 1

Count 1 of the original complaint alleges that, in February 2016, Shreves grieved a change in the prison library's copy policy and sought an injunction in state court against its enforcement. He named the librarians, Defendants Wendy Zuber and Bostwick, as defendants in that suit. Shreves alleges they retaliated against him for pursuing grievances and lawsuits by reducing or denying library time and removing legal books and forms from the library. He also alleges that Defendant Captain Michael Zuber, who is married to Wendy Zuber, retaliated by needlessly standing outside of Shreves' work site for extended periods of time and by refusing to process a grievance against a subordinate. Reading Count 10 together with Count 1, Shreves alleges that Defendants Cobban, Wood, and

Wodnik contributed to causing additional instances of retaliation against him by inadequately investigating his complaints of retaliation. The connections among these defendants, their jobs, their actions, and their role in Shreves' grievances and litigation, as well as the timing of their actions, adequately support an inference that their actions were retaliatory. *See* Order (Doc. 46) at 13–14; Order and Findings and Recommendation (Doc. 42) at 3–5, 18.

Much of the proposed amended pleading, however, fails to allege facts suggesting retaliation. Shreves claims Defendant Pomeroy (who was not previously named in Count 1) "refused to call library" on two occasions but instead called it "multiple times at different times and days than the schedule stated," causing Shreves to move for and obtain an extension of time to respond to defense motions in state court. *See* Prop. Am. Compl. (Doc. 82-1) at 26–27 ¶ (c), 33 ¶ 85. These allegations fail to support an inference that Pomeroy had Shreves and his grievances and lawsuits in mind when he "refused" to call library. It is not hard to think of reasons a schedule might change in a prison—short staffing, a disturbance, a problem with the physical plant—and Shreves does not say why he believes there was no legitimate reason to change the time. Further, Shreves suffered even less than minimal harm as he obtained an extension of time to respond to pending motions. *See Rhodes*, 408 F.3d at 567 n.1.

Shreves' allegations fail to support an inference that he did not receive

something his father mailed to him because someone retaliated against him, much less that one of the defendants was responsible. *See* Prop. Am. Compl. (Doc. 82-1) at 27 ¶¶ (d)–(e), 33 ¶ 86.

The fact that Defendants Wendy Zuber, Bostwick, and Cobban refused to repair typewriters or purchase ones with word-processing capability for the library does not support an inference either that they arrived at this decision to retaliate against Shreves for filing grievances and lawsuits or that Shreves suffered harm as a result. *See id.* at 27 ¶¶ (f)–(g), 33 ¶ 87.

Shreves says three non-defendant officers told him at one point "he needed to get rid of his legal paperwork due to it taking up too much room" in his cell. He asks the Court to infer it was not, in fact, taking up too much room but instead amounted to a "threat" because the officers' statements were communicated with Defendant Harris, who was working in the cage, and Shreves had received mail related to this case on that same day. This reasoning is not comprehensible. *See id*. at 28 ¶¶ (h)–(i).

Shreves alleges Defendant Harris (not previously named in Count 1) told inmate Howling that he did not like Shreves and stopped Shreves, and later Howling, from doing legal work in the recreation room. These allegations are consistent with Harris not permitting anyone to do legal work in the recreation room and, at best, suggest only minimal harm. *See id*. at 28 ¶ (m).

7

Shreves' allegations that he "discovered changes" to materials available electronically through LexisNexis and grieved the changes do not support an inference that anyone changed the scope of LexisNexis materials available at the prison because Shreves filed grievances or lawsuits. *See id*. at 29–30 ¶ (q).

Shreves' complaint that unspecified "defendants" stopped picking him up for "Orientation"[2] in July 2019 and "never communicated to him why or how" does not support an inference that the reason was retaliation and, assuming retaliation occurred, does not suggest who harbored the retaliatory intent and engaged in the adverse action. *See id*. at 30 ¶ (r).

It is not clear whether it was Defendant Wendy Zuber who, in June 2020, removed the 2011 through 2014 editions of civil rules handbooks. Assuming it was, Shreves provides no support for an inference that she removed them because Shreves filed grievances or lawsuits, or that she removed them because Shreves wrote a letter to seven months earlier, in November 2019, to defense counsel in this case, "about the interest that W. Zuber showed in the [2014 hand book] when Shreves returned it." *See id*. at 30 ¶¶ (s)–(t).

Allowing these allegations to go forward would put the burden on

---

[2] Beginning at least in April 2017, Shreves spoke to new inmates each week "about the prison in general and share[d] some personal experiences and encouragement." Prop. Am. Compl. at 55 ¶ 141. It is not clear whether this was protected First Amendment activity or, instead, essentially a position of trust for which prison officials may select or deselect an inmate at will.

8

defendants to explain their actions while relieving Shreves of his responsibility to show why their actions require an explanation. Shreves should be denied leave to add these allegations.

The remaining proposed amendments to Count 1, *see* Prop. Am. Compl. at 26–31 ¶¶ (a)–(b), (j)–(l), (n), (o)–(p), and (u)–(v), 33–36 ¶¶ 84, 88–93, appear to set outs continuation of the same course of conduct alleged in Count 1 of the original complaint. They may be added pursuant to Federal Rule of Civil Procedure 15(d).

## B. Count 2

To obtain relief on Count 2, Shreves is required to prove the defendants caused him to lose an opportunity to *litigate*, "such as the inability to meet a filing deadline or to present a claim"—not an opportunity to *win*. *See Lewis v. Casey*, 518 U.S. 343, 348 (1996); *see also, e.g.*, *Cornett v. Donovan*, 51 F.3d 894, 898 (9th Cir. 1995).

Shreves' proposed amendments to Count 2 add specifics to his previous allegations and were sketched out in response to a motion to dismiss. *See* Pl. Resp. to Def. Mot. to Dismiss (Doc. 19) at 26, 28–31. They will be allowed. *See Christopher v. Harbury*, 536 U.S. 403, 415, 417 (2002). The new allegations will not support any discovery or in-depth exploration or relitigation of any of the facts, legal issues, or merits of the litigation listed.

### C. Count 3

Shreves adds allegations concerning an inventory of available books and three religious books.  *See* Prop. Am. Compl. at 45–46 ¶ 106(a)–(d).  They are continuations of the same course of conduct alleged in the original complaint and may be added pursuant to Federal Rule of Civil Procedure 15(d).

### D. Count 7

Count 7 of the original complaint alleges a string of verbal abuse, threats, and harassment by Defendants Harris, Pomeroy, Ramirez, Connell, and McNabb in retaliation for Shreves' grievances.  Briefly summarizing, on February 1, 2018, a grievance coordinator discussed with Shreves his grievances about events in his cube involving correctional officers Harris and Pomeroy.  She told him she would discuss things with his unit manager, Connell.  The next day, Harris and Pomeroy again quarreled with Shreves, culminating in Harris allegedly throwing Shreves' identification card at him.  *See* Prop. Am. Compl. at 74–78 ¶¶ 237–259.

Shreves wants to add another alleged instance of retaliation by Conell and Harris predating the original complaint but only recently discovered.[3]  Shreves alleges that Connell attended a Human Rights Bureau hearing with Shreves in mid-

---

[3]  This allegation is still supplemental in nature, *see* Fed. R. Civ. P. 15(d), rather than a true amendment under Rule 15(a).  The adverse action may predate the original complaint, but a chilling effect cannot arise until an inmate learns what adverse action was taken against him and why.

May 2017 and learned Shreves had a back problem.  After that, Connell marked Shreves "ADA" on the count sheet.  On February 23, 2018, a non-defendant corrections officer wrote an incident report to the medical department, stating that he had seen Shreves doing squats in the gym with 300-pound weights and was concerned because he had heard Shreves "has ongoing back problems."  The medical report noted that Conell had also called the medical department about Shreves "squatting weights."[4]  Harris, for his part, told an inmate he wanted to "get" Shreves and asked the inmate whether he had seen Shreves "doing deadlifts."  *See* Prop. Am. Compl. at 84–85 ¶¶ (g)–(j).  Shreves concludes that Conell "tried to sabotage [his] medical care."  *Id*. at 88 ¶ 294.

These allegations fail to account for myriad other ways anyone could have learned that Shreves had back problems.  Nor do they demonstrate any "adverse action" by the correctional officer.  Writing an incident report to the medical department is not punitive or adverse to the inmate.  It advances a legitimate correctional goal, viz., preserving inmates' health and safety, in light of what Shreves necessarily concedes was a reasonable (even if mistaken) medical concern.  The Court fails to see how the alleged statements or reports "sabotage[d]" Shreves' medical care.  Dr. Rees was "influenced" by the fact that Shreves did weightlifting

---

[4]  Apparently quoting from the medical record, Shreves adds, "UM Conell with copy that video."  Prop. Am. Compl. at 84 ¶ (g).  The Court does not know what the phrase means.

squats, not by jailers' reports about him.  *See* Prop. Am. Compl. at 85–86 ¶¶ (L)–(m), 88 ¶ 294.  These allegations fail to support an inference that Conell's or Harris's statements or reports were "adverse" or retaliatory in nature.  *See Rhodes*, 408 F.3d at 567–68.  A prison guard certainly *could* retaliate against an inmate, for example, by broadcasting information about a sensitive medical condition or by exploiting a physical weakness.  Shreves' allegations fail to support a plausible inference that Conell or Harris retaliated against him for filing grievances or lawsuits by reporting or soliciting information about his performance of weightlifting squats.

The Court realizes that Shreves could be understood to allege that all instances of hostile, unpleasant, or uncomfortable interactions between himself and some officers evidence an ongoing course of retaliatory conduct.  But even if a defendant intends to and does retaliate in one instance, another act is not retaliation unless it is adverse to the inmate, *and* fails to advance a legitimate correctional goal, *and* also causes more-than-minimal harm to the inmate or otherwise chills a reasonable person's exercise of First Amendment rights.  *See Rhodes*, 408 F.3d at 567–68 & n.11.

Shreves should be denied leave to add these allegations.  *See* Prop. Am. Compl. at 83–85 ¶¶ (d)–(j).  The allegations leading up to the proposed amendment, *see id*. at 83 ¶¶ (a)–(c), and the allegations rounding it out, *see id*. at

12

85–86 ¶¶ (k)–(m), do not appear to add anything of substance or use to the case.

To whatever extent these allegations are intended to put the defense on notice of events Shreves considers relevant, *see, e.g.*, Order (Doc. 89) at 4; Order and Findings and Recommendation (Doc. 72) at 5–6, the defense is now on notice. But he should be denied leave to add these allegations to his pleading, as they do not support an additional claim of retaliation.

### E.  Count 8

Count 8 of the original complaint alleges "[c]onspiracy to retaliate and violate Shreves' First Amendment right to file grievances free of retaliation." Prop. Am. Compl. at 90 ¶ H(1).

The allegation of conspiracy does not alter the elements of a retaliation claim.  All liability under 42 U.S.C. § 1983 is personal liability.  One person's intent to retaliate cannot be imputed to another person who takes adverse action against an inmate.  Each person a plaintiff seeks to hold responsible for retaliation must herself harbor a retaliatory motive and meet all the other elements of a retaliation claim, whether or not the plaintiff alleges a conspiracy or a policy, custom, or practice.[5]

---

[5]  In litigation under 42 U.S.C. § 1983, conspiracy is a means to show that a private party acted "under color of state law" and so can be liable for a civil rights violation.  *See, e.g.*, *United Steelworkers v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540–41 (9th Cir. 1989) (en banc).  Policy, custom, or practice is a means of showing that a municipal entity acted in a way that caused or contributed to causing a civil rights violation.  *See, e.g.*, *Monell v. Dep't of Soc. Servs.*, 436 U.S.

## 1. Incident Reports

Shreves proposes to add an allegation that "[t]he incident reports provided in discovery" in this case "are all unsigned, and each of the digital submit[t]ed copies are not in the category submission, only in 'draft' which means still able to edit." He contends that unsigned incident reports "contradict[] the imperat[]ives for supervisory review." *See id.* at 91 ¶ 301 & (a).[6]  The form in which Montana State Prison keeps its incident reports or provides them in discovery cannot plausibly be viewed as an instance of retaliation against Shreves.

To the extent Shreves alleges that the prison does not keep accurate records or cannot adequately monitor officers' conduct because incident reports can be altered at any time, he might state a claim of some kind.  But there is no need to decide what kind, if any, because the subject matter of such a claim is distinct from the subject matter of this litigation.  New subject matter should not be introduced into this case at this point.  Leave to amend the complaint to add this allegation should be denied.

## 2. Defendant Cobben

Shreves also proposes to add allegations against Defendant Cobban, who

---

658, 694–95 (1978).  Neither concept appears relevant in a case like this one, where each defendant is an individual employee of the State and each is sued for actions taken or duties omitted on the job.

[6]  The allegations in ¶ 301 concerning Defendant Wood appear in the original complaint. *See* Compl. (Doc. 2) at 76 ¶ 301.

was not previously named in this count.  He contends she "fabricated a story about Shreves" to delay his chance to facilitate a program called STEPS and then, about a year and a half later, refused to process a grievance against Defendant Fletcher in 2017.  *See* Prop. Am. Compl. at 91–92 ¶ 302.  It is not clear what "story" Shreves has in mind[7] or why he thinks it was "fabricated" as opposed to mistaken, but the alleged fabrication is plainly outside the three-year limitations period.  Nor does the Court perceive in these allegations a plausible claim that Cobban retaliated against Shreves for engaging in some unspecified protected activity (which would support direct personal liability) or did anything with the intention of advancing or condoning retaliation by others (which would support supervisory personal liability).

Shreves also alleges that Cobban made the wrong decision in response to one of his grievances.  *See id*. at 92–93 ¶ 305.  He alleges that she was assigned to investigate many of his claims and did not do a good job because she was trying to "cover for" other defendants, "particularly Harris."  *See id*. at 92 ¶ 304, 93 ¶¶ 306–307.  And he says Cobban failed to disclose, in response to discovery requests in

---

[7] Possibly Shreves is referring to an occasion when Cobban "previously alleged Shreves swore at her, walked away, and needed to be called back when she was serving him a grievance." This might have occurred in January 2016 or December 2015.  *See* Prop. Am. Compl. at 60 ¶¶ 164, 167.  Because these allegations appeared in the original complaint, *see* Compl. (Doc. 2) at 49 ¶¶ 164, 167, conceivably they might relate back to the original complaint's filing date.  But the original complaint also fails to explain why Shreves thinks Cobban lied as opposed to making a mistake.

this action, the fact that she was the person assigned to investigate his grievances. *See id.* at 92 ¶ 303; *see also* Prop. Am. Compl. Exs. 54, 55 (Doc. 82-2) at 1–4 (Warden Guyer to MSOTA Director Johnson, June 13, 2019, and Sept. 5, 2019).

Like Shreves' other allegations against Cobban, these allegations fail to support an inference that she harbored a retaliatory motive against him. They also fail to support an inference that her acts or omissions amount to "adverse action" against him. He does not explain why he accuses her of "covering for" anyone, "particularly Harris." In fact, he specifically alleges that he has only "information and belief" to support what is mere speculation that her alleged errors, omissions, and misjudgments were actually deliberate and purposeful strategy on her part. *See id.* at 93 ¶ 306.

### 3. Conclusion

Leave to amend Count 8 should be denied.

### F. Count 10

Shreves proposes to add two defendants, Demetric Godfrey and Cynthia Wolken, to Count 10 of the original complaint because "they filled the position of Wodnik and Wood." Br. in Supp. of Pl. Mot. to Amend (Doc. 83) at 8. This amendment will be allowed.

### G. Count 11

Count 11 is a new count not included in the original complaint. Like other

16

counts, Count 11 alleges retaliation.  It also includes a common-law tort of

harassment.  But it names a new defendant, Lieutenant Thomas Snowden, and

describes events not included in or connected with the original complaint.

### 1.  Physical Therapy

Shreves notes that "[y]ears" before January 2020, "Snowden had written

reports claiming Shreves working in the kitchen was some sort of security threat or

liability."  Prop. Am. Compl. at 100 ¶ 331.

Shreves alleges that, on September 1, 2017, he was transported out of prison

for a physical therapy appointment.  He says the transport officer "became

concerned when [the therapist] requested the restraints (both arms and legs) be

removed" and contacted the prison to ask what he should do.  Snowden, by

telephone, ordered the officer to refuse to allow the therapist to remove Shreves'

restraints.  Shreves did not receive his therapy that day and filed a grievance the

same day, when he returned to prison.  Shreves notes, and objects, that a grievance

coordinator perceived this issue as one of security rather than physical therapy.

Five days later, Shreves received that therapy session without restraints, but on

September 20, 2017, he was not informed he had another appointment and so

missed it.  Shreves claims "[o]n information and belief" that Snowden was "over

transportation at that time" or at least "one of the officials overseeing outpatient

transportation."  *See* Prop. Am. Compl. at 97–99 ¶¶ 318–322.

On February 7, 2018, Shreves says he was "on his way to Orientation" when Defendant Snowden told someone by phone that Shreves would not attend a medical appointment that day.  Medical providers told Shreves he was ready for another appointment the following week, but Shreves did not have one, "whether it was scheduled or had been cancelled."  Shreves then spoke with Dr. Rees in May 2018, who said he had no problem with the physical therapy appointments.  On January 12, 2019, Shreves filed a grievance requesting the physical therapy sessions he had been told he could have.  *See id.* at 99–100 ¶¶ 324–328, 104–105 ¶¶ 343–347; *see also* Reply (Doc. 91) at 4 ("Shreves believed he would receive the [therapy] sessions . . . after the grievance was granted on 12-22-17.  After waiting a year, Shreves filed a grievance asking for the sessions.") (internal citations omitted).

These allegations fail to state a claim on which relief may be granted.  They do not support a plausible inference that retaliation is an even slightly more likely explanation for Snowden's directive than a security concern, even if Shreves thinks that concern was unnecessary.  Security is undeniably a legitimate correctional goal, *see Pratt*, 65 F.3d at 806, and Shreves provides no reason to suppose Snowden actually and subjectively *did not have any* security concerns.  Shreves' allegations do not support an inference that Snowden acted at all with respect to the missed September 20 appointment, much less that he acted in retaliation,

18

whether for Shreves' grievance about missing his physical therapy on September 1 or for something else.  The allegations fail to support an inference that Snowden cancelled the February 7 appointment because he was retaliating against Shreves rather than because he knew Shreves was on his way somewhere else or he made a mistake or there was some other reason.  The allegations fail to support an inference that Snowden took any action at all regarding the following week.  The attenuated timeline fails to support an inference that Snowden was a moving force in causing Shreves to receive inadequate physical therapy.

### 2.  Computer Search

Shreves also claims Snowden "began searching around the RAC[8] again" in mid-January 2020, "after Shreves filed for an injunction, sanctions, and contempt against Defendant Wendy Zuber."  Snowden saw him using a computer in the RAC kitchen on January 18, 2020.  That evening, two different corrections officers asked Shreves where the computer was.  When Shreves asked if Snowden had sent them, one of them said, "I'm just doing my job."  Shreves was later called down to the command area and "told to sit on the bench," which is typically a sign of impending punishment.  He was asked for the password to the computer, gave it, and returned to his cell.  Shreves filed a grievance for this on January 21, 2020,

---

[8]  The Court assumes "RAC" means the religious activities center but does not know what Shreves means by "again."

"for Snowden alleging first, that the laptop was missing from the RAC" and then claiming "he needed access to it."  *See* Prop. Am. Compl. at 100–101 ¶¶ 331–335, .

These allegations fail to support an inference that Snowden actually was the moving force behind the questions about the computer or that he raised questions because Shreves filed an action against Zuber, or used the computer, or engaged in some other protected activity.  Further, asking a few questions about an inmate's conduct and investigating enough to obtain answers is not plausibly viewed as "adverse action" against the inmate.

### 3.  Visitation Warning

Finally, Shreves says his January 21 grievance was still pending on March 6, 2020, when Snowden ordered an officer to put Shreves' name in the warning log at the visitation area.  Shreves had a visit with his father that day, but apparently he spent a few minutes greeting another inmate's visitor by the vending machines. Shreves says the other inmate's family was upset they had to wait 30 minutes to see their son.  *See* Prop. Am. Compl. at 101–102 ¶¶ 336–338.

These allegations support an inference that there was, in fact, a legitimate correctional reason for the warning to Shreves.  Prison policy requires pre-approval for an inmate to have a visit and does not appear to contemplate that an inmate may speak with anyone other than his own visitor.  *See, e.g.*, Inmate Visiting, Policy No. 3.3.8 at 3 § III(B)(7)(b) (eff. Oct. 15, 2019), *available at* https://cor.mt.

gov/Policy/MSPprocedures (accessed Nov. 9, 2020).  The allegations also fail to

support an inference that Snowden ordered the warning because he was retaliating

against Shreves for submitting the January 21 grievance or for something else.

Shreves' allegations against Snowden fail to support a plausible inference

that Snowden retaliated against him for filing grievances or lawsuits or for using a

computer in the RAC or going to visitation.  For similar reasons, they also fail to

support an inference that Snowden harassed Shreves.[9]

### 4.  Misjoinder

In addition to failing to state a claim, Count 11 is connected to Counts 1

through 10 only by Shreves' legal theory of retaliation.  He does not allege facts

supporting an inference that Snowden discussed and coordinated his actions with

other defendants.  He does not allege facts supporting an inference that Snowden

knew or cared about Shreves' legal actions and grievances against others.  There is

no reason to suppose the evidence and witnesses relevant to prove Snowden's

actions, his knowledge of the lawsuits and grievances, his intent to retaliate for

them, or the supposed lack of justification for his actions would depend on or even

---

[9] "Harassment" does not appear to be recognized as a common-law tort in Montana.  The nearest analogue would be infliction of emotional distress.  Montana recognizes it "only where the distress inflicted is so severe that no reasonable person could be expected to endure it." *Sacco v. High Country Indep. Press, Inc.*, 896 P.2d 411, 426 (Mont. 1995) (internal brackets omitted).  Shreves' allegations against Snowden fail to establish that Snowden meaningfully interfered with Shreves' access to physical therapy, and his other allegations, *see* Prop. Am. Compl. (Doc. 82-1) at 109 ¶ 11, do not approach the high standard of *Sacco*.

involve the other defendants.

"A plaintiff may put in one complaint every claim of any kind against a single defendant, but a complaint may present claim #1 against Defendant A, and claim #2 against Defendant B, only if both claims arise 'out of the same transaction, occurrence, or series of transactions or occurrences.'" *Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 683 (7th Cir. 2012) (quoting Fed. R. Civ. P. 20(a)(1)(A) and (2)(A)).

Multiple unpleasant interactions with correctional officers are not necessarily "the same" transaction of occurrence or a "series of transactions or occurrences." In other words, even if Shreves succeeds in proving each defendant retaliated against him, he will not thereby have proved that each instance of retaliation was connected, mule-train-fashion, to each other instance of retaliation. And, in fact, the law does not require Shreves to prove a mule train. Each defendant is responsible for his or her own mule. Even if Count 11 stated a claim on which relief may be granted, it should not be added to this case.

### 5. Conclusion

Leave to add Count 11 should be denied.

Based on the foregoing, the Court enters the following:

### ORDER

1. Leave to amend or supplement the pleading is GRANTED as follows:

a.   Count 1 as to Prop. Am. Compl. (Doc. 82-1) at 26–31 ¶¶ (a)–(b), (j)–(l), (n), (o)–(p), and (u)–(v), 33–36 ¶¶ 84, 88–93 only;

b.   Count 2;

c.   Count 3; and

d.   Count 10.

2.  Within 14 days of the District Court's ruling on the Recommendations below, Shreves must file an Amended Complaint consistent with this Order and the District Court's Order.

The Court also enters the following:

## RECOMMENDATION

1.  Leave to amend or supplement the pleading should be DENIED as follows:

a.   Count 1 as to Prop. Am. Compl. (Doc. 82-1) at 26–27 ¶ (c), 27 ¶¶ (d)–(g), 28 ¶¶ (h), (i), (m), 29–30 ¶ (q), 30 ¶¶ (r)–(t), 33 ¶¶ 85–87;

b.   Count 7;

c.   Count 8; and

d.   Count 11.

2.  Count 9 should be DISMISSED.

3.  Defendant Kirkegard should be DISMISSED.

## NOTICE OF RIGHT TO OBJECT
## TO FINDINGS & RECOMMENDATION

23

**AND CONSEQUENCES OF FAILURE TO OBJECT**

The parties may object to the Findings and Recommendations within 14 days.  *See* 28 U.S.C. § 636(b)(1).[10]  Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

Shreves must immediately advise the Court of any change in his mailing address.  Failure to do so may result in dismissal of the action without notice to him.

DATED this 19th day of November, 2020.

 */s/ John Johnston*
John Johnston
United States Magistrate Judge

---

[10]  This deadline allows a party to act within 14 days after the Findings and Recommendation is "served."  Federal Rule of Civil Procedure 6(d) allows three additional days after the period would otherwise expire.

24