IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| RICHARD E. SHREVES, | CV 18–97–H–DLC–JTJ |
| Plaintiff, | |
| vs. | ORDER |
| DAVID WILLIAM HARRIS, et al., | |
| Defendants. | |

On November 19, 2020, United States Magistrate Judge John Johnston entered his Order and Findings and Recommendation ("F&R"). (Doc. 99.) Judge Johnston permitted Plaintiff Richard E. Shreves to supplement his Complaint with new allegations but recommended that the Court deny certain others. (*Id.* at 23.) Shreves timely objects and so is entitled to de novo review of those findings to which he specifically objects. 28 U.S.C. § 636(b)(1)(C). This Court reviews for clear error those findings to which no party objects. *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003); *Thomas v. Arn*, 474 U.S. 140, 149 (1985). Clear error exists if the Court is left with a "definite and firm conviction that a mistake has been committed." *United States v. Syrax*, 235 F.3d 422, 427 (9th Cir. 2000) (citations omitted).

**BACKGROUND & LEGAL STANDARD**

Because the facts and legal standards are detailed in Judge Johnston's F&R, the Court will recite only what is necessary to understand its order under the heading of each count.

**DISCUSSION**

## I.     Count I

In Count I of his original Complaint, Shreves alleges that after he grieved a change in the prison's copy policy, various prison officials retaliated against him by restricting his library access, removing legal books and forms, and engaging in other tactics designed to intimidate him.  (Doc. 99 at 5.)

### A. Changing Library Schedule

Shreves now wishes to supplement his Complaint with an allegation that Defendant Pomeroy arbitrarily changed the prison library schedule, and the resulting inconvenience to Shreves necessitated that he request a continuance of a court deadline (which was granted).  (*Id.* at 6.)

Judge Johnston recommended the Court deny Shreves' request to supplement for two reasons.  First, he determined that Shreves failed to plausibly allege that Defendant Pomeroy's actions—which affected all inmates—were done with any design towards Shreves in mind, particularly where there are a myriad of reasons why the prison might need to adjust its library hours.  Second, he

2

determined that Shreves suffered "even less than minimal harm" from these acts because the court granted him an extension.  (*Id.*)

Shreves argues that this recommendation underestimates the apparent animus that motivated Defendant Pomeroy's actions.  Shreves describes a situation of scheduling chaos, where library hours as posted are not honored when inmates show up to for their designated times.  On one occasion, other inmates were allowed library time but Shreves was told that he was not scheduled for that day. (Doc. 102 at 10–12.)

Regardless of Shreves' assertions, Judge Johnston was correct in his assessment that Shreves cannot show he suffered anything more than minimal harm.  *Rhodes v. Robinson*, 408 F.3d 559, 568 n.11 (9th Cir. 2005).  Despite the scheduling inconsistencies, it is not clear that Shreves was specifically turned away where others were not except on one occasion.  Moreover, Shreves obtained an extension of his court deadline, and he was eventually able to access the library with time to research, produce, and file his necessary court documents.  As such, Shreves will not be permitted to supplement his claim to add Defendant Pomeroy as a defendant on Count I.

### B. Missing Mail

Judge Johnston recommended the Court deny Shreves' allegation that mail sent by his father went missing upon finding that Shreves failed to allege which

3

Defendants were responsible for the missing mail and failed to plausibly show how this incident was connected with the broader retaliation scheme.  (Doc. 99 at 6–7.)

Shreves explains that the missing mail was the subject of a hotly-contested discovery dispute and contained essential information regarding former warden Fletcher's firing—which Shreves believes will demonstrate a pattern of Montana State Prison supervisors turning a blind eye to retaliatory actions at the prison. Shreves eventually received this letter, but only after he grieved about it.  (Doc. 102 at 12–13.)

Even so, Shreves still does not explain who he believes withheld his mail. For this reason, the Court will adopt Judge Johnston's recommendation on this point.

### C. Typewriter Repair

The Magistrate next concluded that Shreves should not be allowed to supplement his Complaint with an allegation that various Defendants refused to purchase or repair typewriters because Shreves could not show that the failure to purchase or repair was in retaliation for Shreves' grievance filing.  He also determined that Shreves could not show any harm from these allegations.  (Doc. 99 at 7.)

Shreves disputes that he has not alleged a relationship between filing his lawsuit and the prison's subsequent refusal to repair typewriters or purchase new

ones.  Apparently, after filing his motion to amend, "new typewriters were located for replacements."  As for Judge Johnson's belief that no harm occurred from Defendants' temporary failure to make typewriters more widely available, Shreves asserts that writing court documents by hand when going up against attorneys with computers "is like the Flintstones versus the Jetsons.  It is prejudicial from the start."  (Doc. 102.)

The problem with Shreves' allegation, is that he relies on a temporal relationship between the filing of his lawsuit and the typewriter shortage (which impacted all inmates), but he does not explain the proximity of these events.  (*See* Doc. 82-1 at 27); *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (per curiam) (noting that a retaliation claim based on temporal proximity requires a "very close" relationship in time).  Even his initial Complaint alleges that the prison's supply of typewriters is inadequate to meet the demand, so it appears as if this issue predates his lawsuit.  (Doc. 2 at 25–26.)  This alone is reason to adopt Judge Johnston's recommendation.

### D. Instruction to Trim Down Legal Paperwork

Shreves claims that on the same day he received mail pertaining to his complaints about various prison officers, Lieutenant Thomas—accompanied by Defendant Harris—told Shreves he needed to trim down his legal paperwork because "it was taking up too much room" in his cell.  (Docs. 99 at 7; 82-1 at 28.)

Judge Johnston found Shreves' retaliation theory on these facts "incomprehensible." (Doc. 99 at 7.)

In his objections, Shreves clarifies some details of the encounter and explains that his legal work is protected (Doc. 102 at 15–16), but he still does not plausibly allege that this so-called "threat" was related to any of his protected activities. For example, he does not allege that Thomas knew that Shreves had received legal mail on the same day—and even if he had, it remains unclear why this piece of mail would motivate Thomas to instruct Shreves to get rid of the paperwork cluttering his cell. Shreves simply has not made his retaliation theory transparent in a way that meets the plausibility standard. The Court adopts the recommendation.

### E. Recreation Room

Shreves alleges that Defendant Harris prohibited him and another inmate from doing legal work in the recreation room. Judge Johnston recommended denying Shreves' request to supplement because "these allegations are consistent with Harris not permitting anyone to do legal work in the recreation room and, at best, suggest only minimal harm." (Doc. 99 at 7.)

Shreves argues that Judge Johnston ignored the broader context of this allegation. He contends that Defendant Harris has a history of "telling other

inmates that Shreves is the one to blame for their hardship/correction."  (Doc. 102 at 16.)

Shreves misunderstands the scope of Judge Johnston's recommendation. Even though the Court agrees and will adopt his recommendation to deny supplementation, Shreves will not be precluded from introducing evidence as to Defendant Harris' history of blaming Shreves where it is relevant to his other claims.  Nor is Defendant Harris being dismissed from the suit.  However, this allegation concerning the recreation room simply does not plausibly allege an independent act of retaliation.

### F.  LexisNexis

The Magistrate next determined that supplementation was not appropriate where Shreves alleges that secondary source materials available on LexisNexis went missing from the online platform.  Judge Johnston determined that this allegation did not plausibly alleged that anyone at the prison had "changed the scope of LexisNexis materials available at the prison *because* Shreves filed grievances or lawsuits."  (Doc. 99 at 8 (emphasis added).)

Shreves insists that Defendant Cobban had the power to fix this issue for two months before doing so (Doc. 102 at 17), but Shreves still does not allege that secondary sources were temporarily restricted across the entire prison's account in

retaliation against him specifically.  The Court adopts Judge Johnston's

recommendation here as well.

### G. Orientation Duties

Shreves wishes to supplement his Complaint with an allegation that he was

removed from his orientation duties (welcoming new prisoners by sharing his

experience) as a form of retaliation.  Judge Johnson recommended denying this

request because Shreves failed to attribute this act to anyone in particular and

failed to allege he was removed from duty as retaliation for protected activities.

(Doc. 99 at 8.)

Shreves clarifies that he was removed from the orientation program right

after Defendants received service and a copy of the complaint, and that the

defendants who removed him were "executive and upper management."  (Doc. 102

at 18.)  Although Shreves has now better described the responsible individuals, he

still has not named them, and so the Court will adopt the recommendation to deny

supplementation.

### H. Removal of Civil Rules Handbooks

Judge Johnston determined that Shreves had not stated a claim for retaliation

in his allegation that Defendant Wendy Zuber removed the 2011 through 2014

civil rules handbooks after Shreves had shown an interest in them seven months

prior.  Judge Johnston determined that the seven-month delay undermined the

8

impression that the removal of these books was retaliatory in motive. (Doc. 99 at 8.)

Shreves talks past the Magistrate's concerns by noting that it was "highly unusual" that the 2014 handbook was removed from the library collection but not thrown out. Instead, it was apparently placed on a shelf that was unavailable to prisoners. (Doc. 102 at 18–19.)

"Highly unusual" or not, Shreves has a temporal problem he fails to address. Although he claims that these events occurred while he had a temporary restraining order pending, this does not plausibly demonstrate that these books were removed in retaliation for Shreves' protected activities—at least, not where seven months transpired between Defendant Zuber's awareness of Shreves' interest in the 2014 handbook and it being pulled from the public shelf. Judge Johnston's recommendations are adopted in full as to Count I.

## II.    Count VII

In Count seven of the original complaint, Shreves alleges that numerous Defendants engaged in verbal abuse, threats, and harassment of him which culminated in Defendant Harris allegedly throwing an identification card at his chest. (Doc. 99 at 10.)

Shreves wishes to supplement his complaint which an additional retaliation allegation against Defendants Connell and Harris. Shreves alleges that after

attending Human Rights Bureau hearing, Defendant Connell learned that Shreves suffers from back pain.  Defendant Connell then allegedly leaked this information to a non-defendant prison official, who, in turn, filed an incident report with the medical department expressing concern after he observed Shreves squatting with 300-pound weights.  Defendant Harris apparently told another inmate he wants to "get" Shreves and asked if this inmate had seen Shreves doing dead lifts.  Judge Johnston recommended the Court deny the request to supplement because filing an "incident report with the medical department is not punitive or adverse" and does not indicate any attempt to "sabotage" Shreves' medical care.  (Doc. 99 at 11.)

Shreves' objection on this point is largely incoherent so the Court will not attempt to summarize each claim he makes.  However, it appears Shreves believes that these actions were punitive because he is skeptical that the incident report was sent from a place of benevolence and because, he claims, the medical department didn't need this information.  (Doc. 102 at 19–22.)

There is simply no retaliation claim here.  For starters, nothing came of the incident report.  Shreves' medical care was not hampered because an official expressed concern (whether genuine or not) that he shouldn't be lifting such heavy weights.  Nor has Shreves shown that this report lacked a legitimate penological interest.  Judge Johnston's recommendation is adopted.

## III.   Count VIII

Count 8 of the original complaint alleges a conspiracy to retaliate against Shreves—which Judge Johnston observes does not alter the elements of a traditional retaliation claim.  (Doc. 99 at 13.)

### A. Incident Reports

Shreves wishes to supplement count 8 to add an allegation that the incident reports provided to him in discovery are in "draft" form—which he takes to mean that they can be edited after submission.  (*Id.* at 14.)  Judge Johnston determined that there was no plausible retaliation claim in Shreves' belief that the "form in which Montana State Prison keeps its incident reports" is designed to retaliate against Shreves.  (*Id.*)  To the extent Shreves asserts that the prison's records are not accurate, the Magistrate concluded that this allegation asserts new subject matter into the litigation and should be denied for this reason.

Shreves disagrees with Judge Johnston's assessment that his allegation raises new subject matter.  Be that as it may, his objection does not address the Magistrate's initial concern that Shreves has not alleged that the prison-wide system of keeping incident reports in draft form has anything to do with Shreves— let alone that this decision was made in retaliation against him.  Judge Johnston's recommendation to deny supplementation is adopted.

### B. Defendant Cobban

Shreves seeks to supplement Count 8 by naming Defendant Cobban.

Shreves claims Defendant Cobban fabricated a story about him to keep Shreves out

of the prison's STEPS program and covered for Defendant Harris by failing to find

him in violation of prison policies in response to Shreves' grievances. (Doc. 99 at

14–15.) Judge Johnston found no viable retaliation claim here, first, because the

"fabrication" incident was time-barred, and second, because Shreves' claim that

Defendant Cobban was "covering for Harris" by disagreeing with Shreves does not

amount to adverse action or show retaliatory motive. (*Id.* at 15–16.)

Shreves asserts that Defendant Cobban manipulated prison procedure to

protect Defendant Harris (Doc. 102 at 24), but his allegations against her amount to

nothing more than a difference of opinion and interpretation of prison rules.

Shreves cannot prevail in a retaliation claim by asserting that everyone who

disagrees with him must be guilty of harboring their different position for no

reason other than to retaliate against him. There is no plausible claim to advance

here.

### IV.   Count XI

Count 11 is a newly advanced count that alleges retaliation and common-law

harassment—which Judge Johnston construes as a claim for emotional distress.

### A. Physical Therapy

Shreves alleges that Lieutenant Thomas Snowden prohibited removing Shreves' restraints due to security concerns when Shreves visited an off-site physical therapist. Shreves claims that not being able to move freely caused him to miss his appointment that day and one other time. Shreves also asserts that Snowden caused him to miss a scheduled doctor's appointment. Judge Johnston concluded that these allegations failed to state a retaliation claim because security is a legitimate correctional goal and Shreves provided no reason why Snowden "actually and subjectively did not have any security concerns." (Doc. 99 at 17–18.)

Shreves argues that Judge Johnston's analysis fails to note that each of Snowden's actions happened shortly after a significant litigation event—such as serving another Defendant with papers. He further argues that denial of medical care states an Eighth Amendment claim. (Doc. 102 at 26–27.)

Even if Snowden's actions are temporally connected with protected activity, Shreves still has not explained why he believes Snowden lacked a legitimate penological interest in requiring Shreves to wear restraints for his appointment. Moreover, Shreves did not allege an Eighth Amendment claim at the time he filed his motion to amend, and the Court typically does not consider new legal theories raised for the first time in an objection to an F&R. Nevertheless, even if Shreves

13

had timely alleged an Eighth Amendment claim, the allegations against Snowden are a far cry from the deliberate indifference standard required to state a claim. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976).  These allegations will not advance.

### B. Computer Search

Shreves alleges that Snowden instructed other officers to search a computer used by Shreves in retaliation for filing grievances against other officers.  Judge Johnston recommending denying leave to supplement because "the[] allegations fail to support an inference that Snowden actually was the moving force behind questions about the computer or that he raised questions" because of Shreves' protected conduct.  (Doc. 99 at 19–20.)

Shreves insists that the computer search was unnecessary and was just a ruse to punish him (Doc. 102 at 28), but he does not address Judge Johnston's concern that he failed to show that Snowden was the one who ordered the search.  The Court will adopt Judge Johnston's recommendation.

### C. Visitation Warning

Shreves alleges that Snowden placed his name in a warning log after he socialized with another inmate's visitor in violation of prison policy.  The other inmates' family was upset they had to wait 30 minutes to see their son.  Judge Johnston found no evidence of retaliation here because Shreves' explanation itself

14

provides a legitimate penological interest for Snowden issuing him a warning. (Doc. 99 at 20.)

Shreves argues that Snowden's conduct violated a sign posted in the visitation area (Doc. 102 at 28–29), but regardless of what the sign says, Shreves still has not demonstrated that Snowden lacked a legitimate correctional interest in warning Shreves. The Magistrate's recommendation will be adopted.

## V.   Defendant Kirkegard

Judge Johnston recommends dismissing Defendant Kirkegard. He concluded that Shreves' proposed amended Complaint does not name Kirkegard as a defendant nor does it allege acts taken by him. (Doc. 99 at 2.) Shreves appears to have no issue with the Magistrate's recommendation to dismiss. (Doc. 102 at 7.) Reviewing for clear error and finding none, the Court will dismiss Defendant Kirkegard. Accordingly,

IT IS ORDERED that the Order, Findings and Recommendation (Doc. 99) is ADOPTED in full.

1. Leave to amend or supplement the pleading is DENIED as to the following paragraphs and counts:

    a. Count 1 at 26–27 ¶ (c), 27 ¶¶ (d)–(g), 28 ¶¶ (h), (i), (m), 29–30 ¶ (q), 30 ¶¶ (r)–(t), 33 ¶¶ 85–87;

    b. Count 7;

    c. Count 8; and

      d.  Count 11.

2.  Count 9 is DISMISSED

3.  Defendant Kirkegard is DISMISSED.

DATED this 4th day of February, 2021.


Dana L. Christensen, District Judge
United States District Court