IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| RICHARD E. SHREVES, | CV 18-00097-H-DLC-JTJ |
| Plaintiff, | |
| vs. | ORDER |
| DAVID WILLIAM HARRIS, et al., | |
| Defendants. | |

The following non-dispositive motions are pending before the Court: Plaintiff's Motion to Compel (Doc. 107), Plaintiff's Motion for Sanctions, Hearing, and to Enforce Subpoenas (Doc. 116), Plaintiff's Motion to Modify Scheduling Order (Doc. 121), Plaintiff's Motion to Order Deponents to Attend Depositions in Person (Doc. 123), Defendants' Cross Motion for Protective Order (Doc. 125), Plaintiff's Motion for Order (Doc. 132), Plaintiff's Motion for Leave to File (Doc. 144), Plaintiff's Motion to Compel (Doc. 146), Plaintiff's Motion for Subpoena (Doc. 149), Plaintiff's Motion for Access to Witnesses (Doc. 151) and Plaintiff's Motion to Vacate (Doc. 155). The motions are fully briefed, and the Court is prepared to rule.

 I.  Shreves' Motion to Compel (Doc. 107) and Defendants' Cross Motion for Protective Order (Doc. 125)

Plaintiff's motion seeks to compel responses from all defendants, a hearing, and sanctions under Fed. R. Civ. P. 37. Plaintiff filed copies of Defendants' discovery responses in support of his motion. Plaintiff has a grab bag of dissatisfactions with Defendants' responses, ranging from a lack of signature on one, to questioning claims of lack of knowledge or responsive documents on others, to inadequacy of a privilege log. (Doc. 108 at 7.)

The Court has broad discretion to manage discovery. *Hunt v. County of Orange*, 672 F.3d 606, 616 (9th Cir. 2012). Parties are generally entitled to "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case…" Fed. R. Civ. P. 26(b)(1). Relevance is construed broadly to include any matter that "bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). In assessing proportionality, courts consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Requested information "need not be admissible in evidence to be discoverable[,]" but it needs to otherwise fit these preceding requirements. Fed. R. Civ. P. 26(b)(1).

As a preliminary matter, the Court is disturbed by Plaintiff's rush to file a motion to compel when it appears the conferral stage was still underway. The number of discovery requests propounded by Plaintiff in this matter (over nine hundred Interrogatories, Requests for Production, and Requests for Admission, as stated in Defendants' brief (Doc. 126 at 6)) is astounding, for a case with so few underlying factual allegations. The parties had two extensive phone calls, in which Defendants agreed to supplement some of their answers, and then Plaintiff proceeded with his motion, without waiting to see if the supplementation would ameliorate any of his concerns. Occasionally, Plaintiff's brief mentions the difficulty of covering all of his issues within the brief's word limit, but that is just the purpose of the conferral requirement—the parties should be able to get their issues down to a few, briefable issues.

The Court does, however, agree with Plaintiff's view that an objection, followed by an answer, occasionally confuses the issue. (Doc. 108 at 22.) If, for example, there are no responsive documents, the answer should be that, or it should be clear that no responsive documents have been found, but if they were, the documents would be privileged. There is a difference, of course, between withholding a document based on privilege, and objecting to a request that would only hypothetically call for a privileged document. When the difference is not clear in a response, this whole exercise becomes burdensome. This lack of clarity

contributes to Plaintiff's concerns about the privilege log, discussed further below. Purely hypothetical privileged documents do not need a privilege log.

Plaintiff's motion to compel lists 360 responses that he deems inadequate. (Doc. 108 at 32.) This Court will not specifically recite its analysis of each response, though the parties can be assured that the Court has reviewed them. "[E]ven when the objecting party fails to carry its burden, the Court has an obligation to review the discovery requests to ensure that they are not frivolous." *Gersh v. Anglin*, No. CV 17-50-M-DLC-JCL, 2019 WL 265800, at *3 (D. Mont. Jan. 18, 2019) (internal citations omitted).

   a.  Specific Issues regarding Defendant Fletcher (Doc. 108 at 10.)

Former Warden Fletcher consumes a disproportionate amount of Shreves' attention in his brief and his discovery requests, given the few allegations against Fletcher and his limited time at MSP. The Amended Complaint's main allegations against Fletcher are that he behaved badly in two particularly incidents and repeatedly retaliated against Shreves for his First Amendment activity. (Doc. 145 at 48 – 58.)

As an overarching matter, all issues related to Fletcher's outside of work behavior, any allegations of sexual harassment, and, in general, his job performance are irrelevant to Shreves' claims and not subject to discovery. Plaintiff has asked most defendants questions related to their knowledge of

4

Fletcher's job performance and possible policy or legal violations, and none of that is relevant to Shreves' claims of lack of access to legal materials, harassment, and retaliation. Shreves also submits documents he labels as P-021 through P-074 and claims these documents should have been produced by Defendants in response to his requests. (Doc. 108 at 18 – 20.) He claims these documents demonstrate a pattern of Fletcher's retaliation against various other people. However, again, Fletcher's behavior towards others in other contexts is irrelevant to Shreves' claims. The Court will not compel production of documents that generally seek to portray Fletcher as a bad coworker or warden; the only question here is what was his behavior toward Shreves. (The viability of any supervisory liability claim is discussed below.)

Second, Fletcher's documents are sufficiently signed. Defendant Fletcher has provided answers to interrogatories and requests for admission, the substance of which contradicts what Plaintiff believes to be true. Therefore, Shreves is insistent upon getting proper signatures on these responses in order to hold Fletcher to his oath of honesty. Apparently, Fletcher has been in Tunisia, which Defendants' counsel says makes getting those signatures difficult, because he cannot locate a notary. (Doc. 126 at 24.) Instead, he has filed a verification pursuant to 28 U.S.C. § 1746, which has been provided to Plaintiff. (Doc. 126-6.) This verification is sufficient. This aspect of the motion is denied.

b.  Personnel files and grievances (Doc. 108 at 12.)

According to Shreves, Defendants have not provided personnel files or certain grievances he has requested, relying on various responses such as privilege, lack of knowledge, no responsive documents, and confidential. (Doc. 108 at 13.) Plaintiff asserts that he has not received a comprehensive privilege log, and not one that corresponds with those responses. In particular, Shreves contends that Defendants failed to object properly on the basis of a "qualified privilege for official information," and therefore their responses should be compelled.

As with the Fletcher requests, relevance is an overarching issue with many of these requests. Any claims or grievances against other officers are irrelevant, and whatever information is in their personnel files is irrelevant. The relevant claims and actions are what happened, or didn't, *to Shreves*, and what the supervisors knew about it.

Requests about other lawsuits, other inmates' grievances, other staff problems, etc., are discoverable only to the extent that they could flesh out a case of supervisory liability; that is, if a supervisor should have known from the content of a personnel file that a subordinate was repeatedly committing constitutional violations. "[A] plaintiff may state a claim against a supervisor for deliberate indifference based upon the supervisor's knowledge of and acquiescence in unconstitutional conduct by his or her subordinates." *Starr v. Baca*, 652 F.3d 1202

6

(9th Cir. 2011). This Court previously decided that Shreves' supervisory liability claims could only continue as acquiescence claims: if he could establish a constitutional violation on the part of the direct action defendants, he could attempt to prove that the supervisor defendants had acquiesced in the violations. (Doc. 42 at 18.) For now, Defendants can stand on their objections as to relevance.

Another factor that works against Shreves' irrelevant pursuit of other inmates' grievances is the burden required to locate the documents. Shreves is correct that the subject matter of grievances is logged as they are filed. (Doc. 136 at 7 – 8.) But Defendants assert that that would amount to a search of the logs of 26,182 grievances. (Doc. 126 at 16.) The documents provided by Plaintiff in support of his assertion that the logs help fail to do so. The logs do not appear to give the names of the participants in the actions complained of. "To get his items replaced," e.g., could be a complaint against an officer or something else entirely. (Doc. 136-1 at 4.) It would take reading each grievance to figure it out. Discovery must be proportional to the needs of the case in light of "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Identifying grievances filed

against Defendants by other inmates, in the context of Shreves' Amended

Complaint, is well beyond the proportional needs of this case.

As to personnel files, which the Court holds are generally irrelevant to

Shreves' claims, Defendants contend that no personnel files exist that are

responsive to Plaintiff's requests, except as to Defendant Fletcher. (Doc. 126 at

13.) This ends the inquiry as to all other defendants, as Defendants searched for

documents and found none. (Docs. 126-3 and 126-4.)

As to Fletcher's personnel file, any aspect of it that is irrelevant to Shreves'

direct action claims is not discoverable. However, if there is information in the file

about Fletcher's actions toward Shreves, that information is discoverable. The rest

can be redacted.

Another of Shreves' contentions is that Defendants withheld documents on

the basis of privilege, specifically attorney-client or work product, and then did not

list those documents on their privilege log. (Doc. 108 at 20; doc. 136 at 3.) This is

another example of the situation mentioned above, where the recitation of a

privilege confuses whether the document exists. However, generally, as

Defendants point out, if a document would not otherwise be disclosable for an

independent reason, such as relevance, the fact that it also would be privileged

means it does not have to be included on a privilege log. (Doc. 126 at 27.) If a

document would not have to be turned over in any event, the fact that it was also

be privileged is beside the point. Almost all of the claims of attorney-client or work product privilege identified by Shreves are not the sole basis for non-disclosure, and, as such, these documents need not appear on a privilege log.

However, this is not the case with Defendant Bostwick's responses to Int. 30 and RFP 20, which both invoke the attorney-client privilege and state no other reason for not being disclosed. (Doc. 115 – 1 at 24 and 35.) Based on the breadth of the language in the requests, it is impossible to guess what kind of document might exist that would be subject to the privileges. Counsel for Defendant Bostwick is therefore directed to update the privilege log to identify any documents withheld on this basis, or, if there are none, to supplement the discovery responses to clarify that fact.

c.  PREA

Shreves' Amended Complaint contains no allegations that fall within the ambit of a PREA claim. Any discovery requests related to PREA claims generally are irrelevant. However, Shreves asserts that any PREA investigation related to the library is relevant to the issue of why certain books were removed from the library; that is, if the library says it got rid of some books because of a sexual assault in the library as configured, then Plaintiff is entitled to know about this assault. This is taking the scope of his claims too far. Defendants presumably have great latitude to decide how to configure their library and fit its materials within the space they

have. If an assault was a factor in that analysis, Defendants do not need to provide the documents investigating that assault.  Testimony by the Defendants as to the fact of a PREA-related incident—or even fear of one--is sufficient; viewing any document related to it is unnecessary. (In any event, many PREA investigations result in inconclusive findings. That does not mean that changes in the configuration of the library would be unwarranted.)

d.  Conclusion

Relevance under the Federal Rules of Evidence for admission at trial is not the ultimate standard in discovery, but relevance to one's claims is. The Court has reviewed all of the discovery requests submitted and objected to by Plaintiff, and Defendants' responses. The Court concludes that, in light of the analysis above, Defendants have fulfilled their obligations to respond, with the exception of Defendant Bostwick's responses, and, possibly, any information regarding Shreves contained in Fletchers' personnel file. As such, Defendants are otherwise entitled to a protective order regarding Plaintiff's requests.

Should Plaintiff prevail at summary judgment on claims of constitutional violations by the direct action of any Defendant, the Court will revisit the issue of whether discovery of other inmates' grievances should be allowed to evaluate issues of supervisory liability.

II.    Plaintiff's Motion for Sanctions, Hearing, and to Enforce Subpoenas (Doc. 116)

Plaintiff's motion seeks to enforce the subpoenas served on non-parties Salmonsen, Lakel, and Reich. He contends that the letter he received objecting to the subpoenas arrived outside of the proper time for objecting, and therefore the Court should sanction these parties for their failure to respond on time. Plaintiff essentially asserts bad faith, that somehow the documents were not mailed properly or that the deponents should be punished for their documents taking so long to travel from Helena to Deer Lodge. (Doc. 117 at 8 – 9; doc. 118 at 2 -3.)

Shreves also has various other dissatisfactions with the objections of these non-parties. Many of these relate to the same sorts of assertions he makes about the discovery production of Defendants, and many of his claims fail on the same grounds—lack of relevance, documents unavailable or non-existent, and disagreement with factual assertions. None of this is availing.

Discovery by subpoena duces tecum is limited by the same relevance standards set forth in Fed. R. of Civ. P. 26(b)(1) and by the Court's duty under Fed. R. of Civ. P. 45(d)(1) to ensure that a subpoena does not impose "undue burden or expense on a person subject to the subpoena." *See* Fed. R. Civ. P. 26(b)(2)(C)(i) (the court must limit discovery when it can be obtained from some other source that is more convenient, less burdensome, or less expensive).

First, the objections were timely served. The mailing envelope was postmarked Dec. 16, and the Court will accept that as the date of filing. Plaintiff

has nothing but suspicion about a conspiracy to withhold the documents, but it seems far-fetched to assume the mail room personnel knew the documents were on a fourteen-day clock and that withholding them would cause him that particular injury. The Court will not go that far.

Second, the non-parties object to various requests by calling them duplicative of requests to the Defendants, and claiming that the documents should be requested of the Defendants only, because it is too much of a burden on non-parties. A necessary distinction here is whether a Defendant claimed that the document was not within his or her control, or whether he said a document did not exist. Defendants' responses contain both configurations. If the response is the former, that raises the question of whose control the document might be under. In the Ninth Circuit, "[c]ontrol is defined as the legal right to obtain documents upon demand." *States v. Int'l Union of Petroleum & Indus. Workers, AFL–CIO,* 870 F.2d 1450, 1452 (9th Cir.1989). The requisite relationship is one where a party can order the person or entity in actual possession of the documents to release them. *Id.*

> "A recipient of a document production request " 'cannot furnish only that information within his immediate knowledge or possession; he is under an affirmative duty to seek that information reasonably available to him from his employees, agents, or others subject to his control.' " *Gray v. Faulkner,* 148 F.R.D. 220, 223 (N.D.Ind.1992) (*quoting 10A Federal Procedure,* Law Ed. § 26:377 at 49 (1988))."

*Herring v. Clark*, No. 1:05-CV-00079-LJO, 2011 WL 2433672, at *5 (E.D. Cal. June 14, 2011). In this case, the non-party respondents are in different positions related to documents in the files of MSP. Warden Salmonsen presumably can ask his employees within MSP to provide him with documents from their files. Billie Reich and Larry Lakel do not appear to be in positions of similarly broad authority to do so, though this is a question of fact that the parties have not briefed. ("The determination of control is often fact-specific. Central to each case is the relationship between the party and the person or entity having actual possession of the document." *Estate of Young v. Holmes,* 134 F.R.D. 291, 294 (D.Nev.1991).)

The Court is not inclined to review all of these responses to determine whether the respondent has claimed that a document does not exist, or whether it is beyond his or her control. If the Defendants have already searched for a document, it would be an unnecessary burden to require non-parties to do the same. However, the non-party respondents will review their responses, and to the extent that Defendants have claimed *only* that the documents are not within their control, non-party respondents must determine if they have the authority to order disclosure.

The Court determines there is no basis for contempt or sanctions. The motion is denied, except as explained above regarding control.

III.    Plaintiff's Motion to Modify the Scheduling Order (Doc. 121)

13

Plaintiff moves to alter the scheduling order so that he could serve additional requests following the filing of his Amended Complaint. He also seeks to have his prior Requests for Admission deemed admitted, due to Defendants' failure to timely respond to various requests. The extension will be taken care of in this Court's analysis of Plaintiff's Motion to Vacate (doc. 155) below. Defendants are correct in their response to this motion that Plaintiff was responsible for reviewing and serving his Requests for Admission, following this Court's order. (Doc. 98.) Therefore, the RFAs will not be deemed admitted. The motion is denied.

IV.   Plaintiff's Motion to Order Deponents to Attend Depositions in Person (Doc. 123)

Plaintiff requested the in-person depositions of Defendants Pomeroy, McNabb, and Wendy Zuber, and non-party deponents Salmonsen, Stefalo, and Granvold, all of whom are current MSP employees. The depositions were scheduled for January 28 and 29, 2021. Defendants timely responded that, due to Covid concerns, they opposed the motion. The depositions apparently occurred on those dates, so the motion is moot and, therefore, denied.

V.   Plaintiff's Motion for Defendants' Counsel to Keep their Word and an Immediate Conference (Doc. 132)

This motion is another request related to the depositions scheduled for January 28 and 29, 2021. As those depositions have occurred, the motion is denied as moot.

VI.    Plaintiff's Motion for Leave to File Motion for Reconsideration (Doc. 144)

Plaintiff seeks leave pursuant to L.R. 7.3 to file a motion to reconsider Judge Christensen's February 4, 2021 order (doc. 139), based on information received during the January 2021 depositions. Plaintiff appears to misapprehend the function of the Amended Complaint. The pleading is only intended to notify Defendants of the general thrust of his claims. His additional or different facts, discovered during the depositions, may be admissible during the dispositive motions phase or trial, but he need not amend his Amended Complaint further to allege additional or different facts. The motion is denied.

VII.    Plaintiff's Motion to Compel (Doc. 146)

In this motion, Plaintiff seeks to require Defendants to send to his mother copies of State 6150 and 6151, which are recordings of Plaintiff's call to his father on February 2, 2018. (Doc. 146.) Defendants respond, first, that Plaintiff failed to confer on this motion as required by the Local Rules, and that the Court should deny it on that basis alone. The Court is inclined to do so. Plaintiff has filed many, many motions in this matter, and anytime he could avoid doing so by conference with Defendants, he should do so. In any event, his motion provides no grounds upon which the Court should grant it. He is able to have the disc, which is already under his control, sent to his mother through the MSP mail system. (Doc. 153-1.) The motion is denied.

VIII.   Plaintiff's Motion for Subpoena (Doc. 149)

In Document 149, Plaintiff seeks a subpoena to have non-party Billie Reich testify at any hearing granted by the Court in response to Plaintiff's motion to compel (Doc. 107) discussed above. Because the Court has determined that a hearing is not necessary on the motion, this motion is denied.

IX.    Plaintiff's Motion to Facilitate Access to Witnesses (Doc. 151)

Plaintiff contends that MSP officials and Defendants are thwarting his ability to communicate with other inmates to prepare for this litigation. In particular, he claims MSP personnel have suggested that he depose those inmates, which would be unnecessarily expensive and time-consuming. Defendants object to this motion mostly on security grounds, appending the Affidavit of Billie Reich, who explains the reasons MSP declines to allow certain types of inmate mixing. (Doc. 158.)

Generally speaking, a prison regulation impinging on inmates' constitutional rights "is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley,* 482 U.S. 78, 89 (1987). The courts, especially the federal courts, are poorly positioned to second guess a state prison's penological procedures, and this Court hesitates to wade into those waters. *Lewis v. Casey*, 518 U.S. 343, 361 (1996). The Court is aware, however, that other pro se prisoner litigants have been able to acquire useful declarations from other inmates, so there must be some way

MSP can accommodate Shreves without imposing upon him the expense and complications of depositions. The parties are reminded of the strictures of Fed. R. Civ. P. 56(d); if Shreves is unable to obtain the information he needs in support of dispositive motions, the Court will determine the appropriate remedy at that time. The motion, for now, is denied.

X.    Plaintiff's Motion to Vacate (Doc. 155)

Shreves has filed a motion for service of his Amended Complaint on the newly added defendants and to continue the dispositive motions deadline. (Doc. 155.) Defendants respond that service is not required for the new defendants, as they were substituted in their official capacities for their predecessors. They have already answered the Amended Complaint, and therefore, service is unnecessary. (Doc. 159 at 2.) The Court agrees with defendants, and the motion is denied.

Plaintiff also seeks to vacate the dispositive motions deadline. Defendants oppose an indefinite continuance but do not object to an extension. Because this order may affect the parties' approaches going forward, an extension will be granted, as outlined below.

For the foregoing reasons, this Court enters the following order:

1. Plaintiff's Motion to Compel (Doc. 107) is denied, subject to possible renewal following any dispositive summary judgment in his favor;

2.  Plaintiff's Motion for Sanctions, Hearing, and to Enforce Subpoenas (Doc. 116) is GRANTED in part and DENIED in part, as explained above;

3.  Plaintiff's Motion to Modify Scheduling Order (Doc. 121) is DENIED;

4.  Plaintiff's Motion to Order Deponents to Attend Depositions in Person (Doc. 123) is DENIED;

5.  Defendants' Cross Motion for Protective Order (Doc. 125) is GRANTED in part, as explained above;

6.  Plaintiff's Motion for Order (Doc. 132) is DENIED;

7.  Plaintiff's Motion for Leave to File (Doc. 144) is DENIED;

8.  Plaintiff's Motion to Compel (Doc. 146) is DENIED;

9.  Plaintiff's Motion for Subpoena (Doc. 149) is DENIED;

10. Plaintiff's Motion for Access to Witnesses (Doc. 151) is DENIED, subject to renewal; and

11. Plaintiff's Motion to Vacate (Doc. 155) is DENIED in part and GRANTED in part, as explained above. Dispositive pretrial motions will be filed by **April 26, 2021**. If no dispositive motions are filed, the proposed final pretrial order is due on **May 10, 2021.**

DATED this 1st day of April, 2021.

John Johnston
United States Magistrate Judge