IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| RICHARD E. SHREVES, | CV 18-00097-H-DLC-JTJ |
| Plaintiff, | |
| vs. | ORDER AND FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE |
| DAVID WILLIAM HARRIS, et al., | |
| Defendants. | |

The following motions are pending before the court: summary judgment
motions by Defendants Marisa Bostwick, Michael Zuber, and Wendy Zuber
("Library Defendants") (Doc. 163), Defendants Michael Bury, Christopher
Francom, David William Harris, Tony Matter, Justin Pomeroy, and Daniel
Ramirez ("Corrections Staff") (Doc. 167), and Defendants Kristy Cobban, Chris
Conell, Michael Fletcher, Jeffrey McNabb, Reginald D. Michael, Loraine Wodnik,
and Thomas Wood ("Supervisory Defendants") (Doc. 171); four "cross-motions"
for summary judgment by Plaintiff Richard Shreves (Docs. 192, 201, 204, and
214); Shreves' Motion to Compel (Doc. 175); Defendants' Motion to Stay
Discovery (Doc. 183); Defendants' Motion to Strike Plaintiff's Motions for

Summary Judgment (Doc. 198); Shreves' Motion for Discovery (Doc. 217);

Defendants' Motion to Strike (Doc. 220); and Shreves' Motion to Strike (Doc.

223). The Court heard oral argument on these motions on September 27, 2021. The

Court's analysis is as follows.

## I.   DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

Defendants have filed three separate motions for summary judgment since

the claims on which they appear are factually distinct.

### A. Library Defendants' Motion for Summary Judgment (Doc. 163)

The first four claims of Shreves' Amended Complaint (Doc. 145) relate to

Montana State Prison's ("MSP") Low Side Library and include defendants not

named anywhere else, Wendy Zuber, Marisa Bostwick, and Michael Zuber. In his

first claim, Shreves alleges Defendants Wendy Zuber and Marisa Bostwick

removed and destroyed hundreds of legal books from the library in retaliation for

him filing grievances contesting their choice to discontinue legal callouts, adding

them as defendants in his state court action, filing for a TRO/Preliminary

injunction, and complaining to the Access to Justice Commission about the library.

The second claim is an access to justice claim, in which he alleges that

various suits of his were either impeded or prevented by the status of the library,

the lack of materials, the lack of time, and the lack of word processing capability.

The third claim is that Defendant Zuber removed Christian books from the library on the basis of viewpoint discrimination, interfering with Shreves' religious rights. (The other library defendants are named in this claim as well, but the specific allegations are against her for her "weeding,"[1] and the rest are named as conspirators.)

Shreves' fourth claim is a Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc, et seq., claim based on the same allegations.

The Library Defendants' motion for summary judgment takes several approaches, including a claim for qualified immunity, lack of standing, and lack of constitutional injury to Shreves based on his library claims. (Doc. 164 at 2.)

## 1. Standard for Summary Judgment

Federal Rule of Civil Procedure 56(a) entitles a party to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The movant bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories,

---

[1] "Weeding" is a library term of art that describes the process of culling books from a collection based on condition, relevance, etc. *See* https://www.ala.org/tools/libfactsheets/alalibraryfactsheet15 (American Library Association website visited on October 4, 2021.)

3

and admissions on file, together with the affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party has satisfied its burden, the non-moving party must go beyond the pleadings and designate by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Id.* at 324. In deciding a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party and draws all justifiable inferences in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Betz v. Trainer Wortham & Co., Inc.*, 504 F.3d 1017, 1020-21 (9th Cir. 2007).

## 2. Analysis

Shreves' allegations are that the reduction of the legal books in the library, the removal of Christian books, the reduction and changing of the hours for library, and a copy policy that required inmates to leave their legal papers for copying were all retaliation for his protected First Amendment conduct of filing grievances and a lawsuit. The original lawsuit to which he refers was a state action in Powell County, Montana, but he contends the retaliation continued after this lawsuit was filed. (Doc. 145 at 26.)

"A prisoner suing prison officials under section 1983 for retaliation must allege that he was retaliated against for exercising his constitutional rights and that the retaliatory action does not advance legitimate penological goals, such as preserving institutional order and discipline." *Bruce v. Ylst*, 351 F.3d 1283, 1288 (9th Cir.2003) (citations and internal quotations omitted).  "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005). "Chilling" does not necessarily mean halting.

Retaliation is not established simply by showing adverse activity by a defendant after protected speech; rather, the plaintiff must show a nexus between the two. See *Huskey v. City of San Jose*, 204 F. 3d 893, 899 (9th Cir. 2000). "A plaintiff's belief that a defendant acted from an unlawful motive, without evidence supporting that belief, is no more than speculation or unfounded accusation about whether the defendant really did act from an unlawful motive." *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1028 (9th Cir. 2001).

 Shreves must show that the alleged retaliation was a "substantial" or "motivating" factor in the decision resulting in the adverse action. *See Soranno's*

*Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1315 (9th Cir.1989) (citation omitted).

Shreves also must prove the absence of legitimate penological reasons for the

alleged retaliatory conduct. *See Pratt v. Rowland*, 65 F.3d at 806. The Ninth

Circuit has held that "preserving institutional order, discipline, and security are

legitimate penological goals that, if they provide the motivation for an official act

taken, will defeat a claim of retaliation." *Barnett v. Centoni*, 31 F.3d 813, 816 (9th

Cir. 1994); *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985). Plaintiff bears the

burden of pleading and proving the absence of legitimate correctional goals for

defendant's challenged conduct. *Pratt*, 65 F.3d at 806.

In the First Amendment context, a plaintiff generally raises a genuine issue

of material fact on the question of retaliatory motive when the plaintiff "produces,

in addition to evidence that the defendant knew of the protected speech, at least (1)

evidence of proximity in time between the protected speech and the allegedly

retaliatory decision, (2) evidence that the defendant expressed opposition to the

speech or (3) evidence that the defendant's proffered reason for the adverse action

was false or pretextual." *Pinard v. Clatskanie School Dist. 6J*, 467 F.3d 755, 771 n.

21 (9th Cir.2006) (citing *Keyser v. Sacramento City Unif. Sch. Dist.*, 265 F.3d 741,

751-52 (9th Cir.2001)).

The parties predictably disagree about all five factors of the *Rhodes* test, but

the most compelling factor here is whether the changes (the alleged acts of

retaliation) reasonably advanced legitimate correctional goals and whether there is evidence that the defendant's proffered reason for the adverse action was false or pretextual. Defendants assert as motivations: the books were outdated; the shelves and study carrels blocked the librarian's view of the inmates; the hours kept changing because the library was short staffed; it was a security issue if too many inmates were in the library at one time; copies could only be made when the library staff had time; and the Christian books were removed along with many others in an effort to reduce the collection as a whole. (Doc. 164 at 16 - 19.)

In addressing retaliation claims, courts "should 'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory" to avoid "excessive judicial involvement in day-to-day prison management, which 'often squander[s] judicial resources with little offsetting benefit to anyone.' " *Pratt*, 65 F.3d at 807 (quoting *Sandin v. Conner*, 515 U.S. 472, 482 (1995).) "[F]ederal courts must remember that the duty to protect inmates' constitutional rights does not confer the power to manage prisons or the capacity to second-guess prison administrators, for which we are ill-equipped." *Bruce*, 351 F.3d at 1290.

Shreves does not have a compelling case to rebut the Defendants' position that these changes all had legitimate penological motivations. The Defendants' proffered reasons for the changes, including prison security, staff and inmate

management, and resource allocation are all legitimate grounds on which the prison can make determinations in which the Court will not meddle. Shreves has not convincingly raised an issue of fact that any of these considerations were pretexts—he merely contends, repeatedly and in various contexts, that he would do things differently if it were up to him. That is insufficient under the law.

The Defendants also effectively argue that none of these actions had any adverse effect on Plaintiff—he still managed to file his lawsuits, he still had access to all kinds of Christian materials to practice his religion, he still was able to get things from interlibrary loan or his parents, etc. Defendants assert that these minor obstacles are insufficient to chill a person of ordinary firmness. Nor were these actions, even if they could be considered adverse, directed solely at Shreves. The changes in the library affected all inmates and were generally directed at management of all inmates. Shreves cannot, therefore, establish that they were actions directed at him in retaliation for his own protected conduct.

Shreves' final retaliation claim is against Michael Zuber, for standing outside of Shreves' workplace and otherwise disturbing Shreves. There is simply no factual support for a claim that Michael Zuber acted adversely toward Shreves in order to chill Shreve's First Amendment conduct. *Compare* Doc. 165 at 18 with 194 at 11 (detailing the lack of meaningful interactions between Shreves and M. Zuber). M. Zuber is entitled to summary judgment.

Shreves also alleges that the various library practices impeded his access to the Courts. However, as stated above, he successfully litigated all of the cases that he attempted to litigate in state court, by meeting deadlines, filing briefs, and otherwise actively pursuing his actions. (Doc. 162 at 17.) He made some choices about what litigation to pursue, and he considers the fact that he chose not to pursue some cases because of the time or difficulty of doing so evidence that his access was impeded. But the constitutional guarantee of access to the courts does not cover all potential litigation an inmate may choose to file. The right of access to the courts is narrow, encompassing direct appeals, habeas, and "civil rights actions"—*i.e.,* actions under 42 U.S.C. § 1983 to vindicate "basic constitutional rights." *Lewis v. Casey*, 518 U.S. 343, 354-5 (1996). Supreme Court precedent "...does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id.*, at 355. Shreves has not shown any constitutional injury to his access to courts due to the actions of the Library Defendants.

Shreves' final claim against the Library Defendants is that the reduction of the Christian books in the library interfered with his religious rights, both under the First Amendment and under RLUIPA.  Shreves fails to clear the factual hurdle on either claim to show that MSP has burdened his ability to practice his religion. He has not created an issue for trial that the weeding of the library was motivated by an intention to limit certain viewpoints. He has shown no injury, since he continues to practice his religious continuously, as he stated at the hearing. At oral argument he also suggested that the number of Christian books should somehow reflect the percentage of Christians held at MSP, but that is not part of the constitutional standard. The removal of a superabundance of Christian library books did not burden Shreves' practice of his religion.

The actions of the Library Defendants were motivated by legitimate penological interests and did not unconstitutionally restrict Shreves' access to the courts, impermissibly retaliate against him, or burden his ability to practice his religion. These Defendants are entitled to summary judgment.

As to qualified immunity for these Defendants, to determine if an official is entitled to qualified immunity the court considers two factors:  whether the facts as alleged state a violation of a constitutional right, and whether the right is clearly established, such that a reasonable official would have known that his or her conduct was unlawful. *Saucier v. Katz*, 533 U.S. 194, 200 (2001) (*receded from* by

*Pearson v. Callahan*.) Having determined that no constitutional violation occurred, the Court will not proceed to the second factor.

### B. Corrections Staff's Motion for Summary Judgment (Doc. 167)

Defendants David Harris, Justin Pomeroy, Christopher Francom, Tony Matter, Michael Bury, and Daniel Ramirez have filed a motion for summary judgment on the claims against them. (Doc. 167.) The Court applies the same standards for summary judgment and First Amendment retaliation outlined above. The following retaliation claims are all viewed through the lens of the *Rhodes* test: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005).

As a preliminary matter, Defendants contend that Shreves' continuing avid grievance and litigation practices reflect the fact that he was not chilled by whatever actions Defendants took. (Doc. 168 at 13.) At oral argument, Shreves compellingly pointed out the practical bind that the exhaustion requirements of the Prison Litigation Reform Act ("PLRA") poses. If he is chilled to the point of silence and does not continue to grieve, he gives up any possibility of litigation to enforce his rights. In the alternative, if he continues to grieve, he is perceived as

11

not possibly being chilled. Therefore, the Court will approach cautiously any claim that his continued grievance and litigation activities demonstrate a lack of chilling effect to Defendants' actions.

1. Count 6 Retaliation

    a. Matter

Shreves' allegations against Defendant Matter all relate to Matter failing to call him for various things—for early breakfast, law library hours, and to pick up medical records. (Doc. 145 at 60 – 63.) Shreves cannot point to anything that Matter is retaliating against him for, cannot demonstrate an intention to retaliate, and cannot show that Shreves was either injured or had conduct chilled by Matter's behavior. The main threat Shreves says Matter made was that "there are a lot more things that I could do to you," on January 23, 2016.

Defendants also say the bulk of the claims against Matter are barred by the statute of limitations, since they mostly arose in 2015. (Doc. 168 at 17.) Shreves responds that some of the time should be tolled for his administrative exhaustion, and that the retaliation continued beyond any barred timeframe. (Doc. 199 at 14 – 15.) However, even given tolling, the incidents in which Shreves grieved Matter fall outside the three-year limitation.

Impermissible retaliation "would chill or silence a person of ordinary firmness from future First Amendment activities," and the harm must be "more

than minimal." *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing *Robinson*, 408 F.3d at 568 n.11) Generally speaking, the record is clear that Matter was an irritant to Shreves in various ways over time, but none of these actions appears motivated by a grievance filed against him by Shreves. There were failed callouts before the grievance and after, and the various delays do not amount to any adverse action that would chill a person of "ordinary firmness."  Matter's actions simply do not rise above de minimis inattention, irresponsibility, and disrespect. Shreves' retaliation claim against Matter fails on all prongs of the *Rhodes* test.

   b. Francom

Shreves told Francom and Matter about a loose frying pan in the Religious Activities Center ("RAC"), which apparently caused them to be angry at Shreves' RAC boss Terrie Stefalo and to say she should mind her own business. (Doc. 200 at 9 – 10.) The next day, Francom saw Shreves carrying a bunch of stuff to his job, and Francom searched him and made negative comments about it. There is no question that searching an inmate who is carrying various items has a legitimate penological purpose, nor was there any apparent conflict between Shreves and Francom over the frying pan; their complaint was with Stefalo. Shreves' claim fails on all prongs of the *Rhodes* test, and Francom is entitled to summary judgment.

   c. Bury

Shreves' allegations against Bury are that he delayed processing some of Shreves' outgoing mail, and he failed to notify Shreves immediately when Shreves' father came to visit. Shreves' mail was always eventually processed, and Shreves had not filed any grievances against Bury for which he could be retaliating. (Doc. 169 at 5.) Shreves points only to a grievance *response* that Bury signed. (Doc. 200-16.) Shreves cannot show injury, having had his mail processed and having been able to see all of his visitors. This is a speculative claim that is insufficient to merit a trial. Bury is entitled to summary judgment.

2.  Count 7 Retaliation

a.  Ramirez

Defendant Ramirez was present at "the towel incident." Shreves returned to his unit late, while clean towels were being passed out, and he got in line for a clean towel. However, he did not have his dirty towel to turn in, so Ramirez did not give him a clean one. (Doc. 199 at 23; 169 at 6 – 7.) Apparently, Ramirez said something offensive to Shreves at this point. The towel policy that required an inmate to turn one in to get one in exchange was in response to people misusing towels, destroying them, and otherwise consuming the unit's towels at an unsustainable rate. (Doc. 169 at 7.) There was nothing wrong with asking Shreves to get his dirty towel in accordance with policy, and Shreves had no pending

grievance with Ramirez that would change Ramirez's rude comments into retaliation. Ramirez is entitled to summary judgment.

     b.  Harris

There are three main incidents involving Harris. The first is when Shreves was asked to leave the rec room for violating property policy, which resulted in a screaming match with Harris. (Doc. 145 at 67.) Then Harris searched Shreves' room for excess socks. *Id.* The third extended episode was when Shreves thought he was free to use the phone, but he was not, and Harris yelled at him and told him to go to his cell and lock down. (Doc. 145 at 72.) Shreves returned later that evening to ask to go to religious services and was yelled at again. In order for Shreves to leave his unit he needed his name card, which Harris then threw at him like a playing card, from several feet away. The card hit Shreves in the chest, not causing any discernible injury. (Doc. 145 at 73 - 74.)

The Court must view these incidents through the lens of the *Rhodes* factors. *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005) The first *Rhodes* factor requires the Court to determine if an adverse action occurred. The undisputed evidence establishes that Harris was consistently rude and abrasive with Shreves throughout the time in which they crossed paths. However, verbal abuse by a prison official is not a constitutional violation. *Oltarzewski v. Ruggiero,* 830 F.2d 136, 139 (9th Cir.1987). Further, Shreves cannot establish that Harris' actions were

adverse *to him*; Shreves testified that Harris behaved with everyone in a similarly abrasive fashion, saying "I watched him yell and scream at inmates every day." (Doc. 168-7 at 64; 169 at 13.) Nor are enforcing a rule in the facility, searching a cell, or tossing a card at someone and hitting them in the chest adverse actions that qualify as retaliation for protected conduct. Shreves' claim fails on the adverse action prong.

Second, nothing in the record reflects that these actions by Harris chilled Shreves' First Amendment activity. Even taking Shreves' view that he had to persist in filing grievances and that should not be considered evidence of a lack of chilling effect, the Court takes the objective view that these actions by Harris are not so out of the ordinary course that an ordinary person would be chilled. Shreves clearly was not. (Doc. 168-13; 231-1.) Harris is entitled to summary judgment.

    c.  Pomeroy

Shreves contends that Pomeroy wrongfully allowed other inmates to conduct rule-violating activities in the rec room while disallowing Shreves from doing so. That is not a violation of Shreves' constitutional rights. Pomeroy also ordered a cell search of Shreves' unit that resulted in some contraband being removed from Shreves' cell, as well as those of his unit mates, but Shreves was not otherwise punished for this incident. Shreves claims that he was the only one of his unit who was scheduled for a hearing related to this contraband (as opposed to just given a

warning) but confiscating contraband and enforcing any regulations regarding it serve a legitimate penological purpose and do not amount to retaliation. In both of these incidents, Shreves is bothered by what he sees as unequal enforcement of the regulations, but he cannot point to a constitutional violation in how legitimate regulations were enforced as to him. Shreves was not punished or written up and can show no retaliatory adverse action on the part of Pomeroy. Pomeroy is entitled to summary judgment.

3.  Qualified Immunity

These Defendants did not violate Shreves' constitutional rights and therefore are entitled to qualified immunity.

### C. Supervisory Defendants' Motion for Summary Judgment (Doc. 171)

This motion addresses supervisory liability for all defendants, and retaliation claims as well against Fletcher, Cobban, and Wodnik. "A defendant may be held liable as a supervisor under § 1983 if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011). To impose liability under Section 1983 against a supervisor, a plaintiff must establish the supervisor's prior knowledge of unconstitutional conduct committed by subordinates that would give the supervisor notice of the need for changes.  *Howell v. Earl*, 2014 WL 2594235

(D. Mont. 2014) (*citing Starr*, 652 F.3d at 1208; *Dougherty v. City of Covina*, 654 F.3d 892, 900–01 (9th Cir. 2011)); *see also Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991), *Watkins v. City of Oakland*, 145 F.3d 1087, 1093–94 (9th Cir. 1997), and *Blankenhorn v. City of Orange*, 485 F.3d 463 (9th Cir. 2007).

Section 1983 will not impose liability on supervising officers under a respondeat superior theory of liability. *Monell*, 436 U.S. at 691-94. That is, a defendant cannot be held liable just because they supervise other employees. Instead, supervising officers can be held liable under Section 1983 "only if they play an affirmative part in the alleged deprivation of constitutional rights." *King v. Atiyeh*, 814 F.2d 565, 568 (9th Cir. 1987) *overruled on other grounds by Lacey v. Maricopa County*, 693 F.3d 896 (9th Cir. 2012). A supervisor may be liable: (1) for setting in motion a series of acts by others, or knowingly refusing to terminate a series of acts by others, which they knew or reasonably should have known would cause others to inflict constitutional injury; (2) for culpable action or inaction in training, supervision, or control of subordinates; (3) for acquiescence in the constitutional deprivation by subordinates; or (4) for conduct that shows a reckless or callous indifference to the rights of others. *Larez*, 946 F.2d at 646. This Court previously determined that acquiescence was the only available theory to Shreves. (Doc. 42 at 18; 161 at 7.) In this case, acquiescence requires that the supervisor intended that the unconstitutional retaliation of his or her subordinate occur.

1.  Fletcher

Shreves alleges that Fletcher retaliated against him in violation of his First Amendment rights, and that Fletcher, as warden, acquiesced in the constitutional violations of others.

a.  Personal liability

Shreves' allegation against Fletcher relates to a meeting he held with Shreves and Associate Warden Jim Salmonsen in his office. The meeting followed an incident where Shreves was participating in his STEPS class, which is a self-help or personal development course for which Shreves was a mentor and facilitator. Fletcher saw Shreves either sitting on a table or leaning against one, in front of the group, with a drink in a cup that Fletcher thought was not appropriate. Fletcher entered the room and chastised Shreves about it in front of the group. As a result, Shreves filed an informal grievance against Fletcher, alleging that the reprimand was a result of the fact that Fletcher was retaliating against Shreves for his pending litigation. (Doc. 173 at 5.)

Following this grievance, Fletcher held a meeting in his office with Shreves and Salmonsen, which Fletcher characterizes as an attempt to restart the relationship with Shreves and discuss the events Shreves had grieved. Shreves characterizes it very differently, asserting that Fletcher repeatedly harangued and threatened him, leaving Shreves in tears. *Compare* Doc. 173 at 6 – 8 with Doc. 213

at 7 – 10. The facts of what occurred are disputed, but more importantly, whether there was any threat intended, or how to weigh any threat, is disputed.

Defendants suggest that threats are just words if they are not followed up on. Shreves contends that even supposedly empty threats can be retaliation, because the threat itself causes the potentially chilling harm of fear. Shreves cites *Brodheim v. Cry*, the leading Ninth Circuit case for the proposition that a threat, even without eventual action, can be the basis for a retaliation claim. "[T]he question for the district court to ask is whether the record, taken in the light most favorable to the plaintiff, reveals statements by the defendant that a reasonable factfinder could ... interpret as intimating that some form of punishment or adverse regulatory action would follow." *Brodheim v. Cry*, 584 F.3d 1262, 1270 (9th Cir. 2009) (citing *Okwedy v. Molinari,* 333 F.3d 339, 343 (2d Cir.2003) (per curiam) (internal marks omitted).) ..."[T]he mere threat of harm can be an adverse action...." *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012) (internal citations omitted).

The issue of how much of a threat constitutes retaliation that could chill First Amendment activity has been treated differently in different circuits, with the Ninth and the *Brodheim* case leading the charge for an expansive interpretation. Following *Brodheim*, Shreves' claim against Fletcher related to the incident in the office is not amenable to summary judgment. "Under this standard, the record before the district court was sufficient to establish a genuine issue of material fact

as to whether Cry's warning constituted an adverse action. By its very nature, a statement that "warns" a person to stop doing something carries the implication of some consequence of a failure to heed that warning." *Brodheim*, at 1270. "The power of a threat lies not in any negative actions eventually taken, but in the apprehension it creates in the recipient of the threat. Based on the record before the district court, a genuine issue of material fact exists as to whether Cry's statement intimated that some form of punishment or adverse regulatory action would follow a failure to comply." *Brodheim*, at 1271. These are facts for the determination of a jury.

The next question is whether Fletcher is entitled to qualified immunity in this context, which would arise if any conduct did not violate Shreves' "clearly established ... constitutional rights of which a reasonable person would have known." *Kisela v. Hughes*, — U.S. —, 138 S. Ct. 1148, 1152 (2018) (quoting another source). "The Supreme Court has cautioned that a constitutional right is "clearly established" only if a statute or precedent "squarely governs the specific facts at issue." *Id.* at 1153 (internal quotation marks omitted). *Brodheim* became governing precedent in 2009. If Fletcher's acts violation the standards outlined there, he would not be entitled to qualified immunity, but disputed facts prevent the Court making this determination. In light of *Brodheim*, Fletcher should have known that certain types of threats could amount to unconstitutional retaliation.

To be clear, this potentially retaliatory behavior is related to the incident in Fletcher's office on September 6, 2017, and not to the preceding incident in the STEPS classroom on August 21, 2017. There is no evidence, circumstantial or otherwise, that would connect Fletcher's previous actions to any prior protected speech by Shreves. It is only the meeting that was explicitly to discuss his grievance that gives rise to a potential claim for retaliation.

b.  Supervisory Liability Claim Against Fletcher

The Court having determined that none of Fletcher's subordinates committed constitutional violations against Shreves, it follows that Fletcher cannot be found to have acquiesced in such violations, giving rise to supervisory liability.

2.  Supervisory Liability as to Wood, Connell, McNabb, and Wodnik

As to these supervisory defendants, the Court has concluded that their subordinates did not commit a constitutional violation. *Ipso facto,* they are not liable for acquiescing in constitutional violations.

3.  Kristy Cobban

Shreves alleges both direct and supervisory liability against Cobban. His direct allegations against Cobban are a grab bag of grievances Shreves has about her conduct over years.  He contends that she delayed his appointment as a STEPS facilitator, which is both a moot claim and barred by the statute of limitations. She also did not sufficiently investigate Shreves' various claim against other staff.

Shreves also complains about 2021 changes in the RAC that Cobban supervises that reduced his access to other inmates who practice his religion and to a Pentecostal preacher. These latter claims are new on summary judgment and were not alleged in the Amended Complaint. Therefore, the Court will not address them. All told, Shreves fails to carry his burden on summary judgment regarding Cobban.

### 4.  Michael/Gootkin (Director of DOC)

Ultimate supervisory liability would go against Michael for Fletcher's actions, if it could be established that he knew Fletcher was retaliating against inmates for grievances by threatening them. However, Michael is named only in his official capacity (as a representative of the State of Montana) and therefore, any claim against him could only be prospective. (He in fact is retired, so as the representative of the State, his replacement, Gootkin, would be the proper defendant.) As Fletcher is no longer at MSP, any prospective claim regarding his actions is moot. Summary judgment should be granted to Michael/Gootkin.

## II.   PLAINTIFF RICHARD SHREVES' MOTION TO COMPEL (DOC. 175)

Shreves' motion to compel discovery was previously stayed by this Court's order of May 10, 2021. (Doc. 186.) In light of the issues remaining for trial, as described above, the motion will now be denied as moot. Outstanding discovery requests will be discussed under Shreves' later motion for discovery. (Doc. 217.)

### III.   DEFENDANTS' MOTION TO STAY DISCOVERY (DOC. 183)

Defendants' motion to stay discovery was effectively granted in the Court's prior order on Plaintiff's motion to compel and will therefore be denied as moot.

### IV.   SHREVES' MOTION FOR DISCOVERY (DOC. 217)

Plaintiff relies on this Court's prior determination that if he prevails on claims of direct action by a defendant, the court would revisit the issue of whether discovery of other inmates' grievances should be allowed to determine supervisory liability. Having determined above that only Shreves' claims against Fletcher may proceed to trial, the Court must now determine the scope of any further discovery.

As explained above, Fletcher's supervisor (Michael or Gootkin) is sued only in official capacity, which affords only prospective relief. Since Fletcher and Michael are no longer at MSP, that claim is moot. No further discovery is necessary, though Shreves may advise the Court of any outstanding disputes regarding discovery directly related to Fletcher's own conduct.

### V.   DEFENDANTS' MOTION TO STRIKE PLAINTIFF'S CROSS-MOTIONS FOR SUMMARY JUDGMENT (DOCS. 198 & 220)

Plaintiff responded to each of Defendants' three motions for summary judgment with a response brief and what was labeled a cross-motion for summary judgment, with an independent statement of undisputed facts. Defendants seek to strike these cross-motions as untimely; they were not filed at the time of the dispositive motions deadline. (Docs. 198 & 220.) The Court had granted Plaintiff

additional time to file his "responsive documents," i.e., his response to Defendants' timely motions, but not to file additional motions. (Doc. 186.) The Court repeated this position in granting a further extension. (Doc. 190.) As a matter of standard court practice, Defendants are correct. Any dispositive motions were due on the deadline set by the Court, and filing them as "responses" is improper.

Further, as Defendants' counsel pointed out at the hearing, the standard circumstance for a cross-motion is when both parties agree to the facts and dispute the law. By its very nature, a cross motion that includes a contradictory statement of "undisputed facts" demonstrates the existence of at least some disputes.

Shreve stated at the hearing and in his response brief that he did not understand that he was filing them late. However, he also states that he got the Court's order before he got Defendants' response and so never bothered to read the response. (Doc. 226 at 1.) The order was based in part on the Defendants' objection and made clear that Shreves was only to respond to the *pending* motions. If he had read all of the documents he received, that might have shed light on the language in the order. The second extension he received contained the same language about responding to pending motions—it was not an extension of the filing deadline for dispositive motions.

The Court is sympathetic to Shreves' challenges as a pro se litigant and perceives no improper intent in these late filings. However, upon review of the

documents, it is clear they do not add much to what is already in play. He elaborates various issues, but at most, he did that already in response to Defendants' motions. Defendants' motion to strike will be granted, and these briefs and documents will be construed only as Plaintiff's responses to Defendants' motions.

## VI.   SHREVES' MOTION TO STRIKE FLETCHER DECLARATION, ZUBER AFFIDAVIT, AND LISHMAN AFFIDAVIT (DOC. 223)

This motion finds fault with the content of these three affidavits, based on vagueness, lack of personal knowledge, and reliance on generalities. There is nothing objectionable about them. As Defendants point out, there is no real mechanism in the rules to strike these affidavits. Shreves' criticisms go primarily to the weight to be given the affidavits, and not their admissibility. Vagueness in an affidavit amounts to vagueness in support of whatever claim it is making, which is within the Court's capacity to weigh, without striking the affidavits as a whole or in part.

The only specific substantive arguments that should be addressed relate to the affidavit of Robert Lishman, who is a former Department of Corrections attorney who met with Zuber at the library to discuss whether it was acceptable to cull certain library books. Lishman's affidavit is attached to the Library Defendants' motion for summary judgment. (Doc. 164-25.) Shreve's main concern

here is that Defendants originally objected to discovery requests regarding Lishman based on privilege. Counsel then retracted that claim during discovery but said there were no responsive documents about the meeting at the MSP library. Shreves asked Zuber about this meeting in her deposition, and she answered based on her recollections. She was not prevented from answering any questions based on privilege.

Shreves appears to think that Zuber is relying on advice of counsel as an affirmative defense, but it appears she is merely relying on the fact that she discussed what books should stay or go with counsel to demonstrate that she was doing it for legitimate reasons, in an attempt to reduce the library while still providing inmates all of the legal information they need. The exact content of Lishman's advice is secondary to the fact that she sought it and attempted to comply with it, as explained in her deposition.

Finally, Shreve construes Lishman's affidavit as expert testimony, which it is not. It is the recollection of a witness about what he did and thought based on what he learned about the MSP library. The motion to strike will be denied.

## VII.   PLAINTIFF'S MOTION TO STRIKE NEW ARGUMENTS IN REPLY BRIEF (DOC. 232)

Shreves contends that Defendants improperly raised the PLRA's exhaustion requirement in their reply brief as to Matter and Francom. Defendants properly point out that their discussion of exhaustion is in response to Shreves bringing up

grievances he supposedly filed against Francom and Matter that he contends were the basis for their retaliation. Defendants state that these incidents cannot be litigated because Shreves did not exhaust his remedies regarding them. These arguments are all responsive to the content of Shreves' response brief and are not improper on reply. Shreves' motion will be denied.

## VIII.   CONCLUSION

For the foregoing reasons, the Court enters the following:

## ORDER

1.    Plaintiff Richard Shreves' Motion to Compel (Doc. 175) is DENIED.

2.    Defendants' Motion to Stay Discovery (Doc. 183) is DENIED.

3.    Shreves' Motion for Discovery (Doc. 217) is DENIED.

4.    Defendants' Motion to Strike Plaintiff's Cross-Motions for Summary Judgment (Docs. 198 and 220) is GRANTED. As a result, Shreves' Cross-Motions for Summary Judgment (Docs. 192, 201, 204, and 214) are also DENIED.

5.    Shreves' Motion to Strike Fletcher Declaration, Zuber Affidavit, and Lishman Affidavit (Doc. 223) is DENIED.

6.    Plaintiff's Motion to Strike New Arguments in Reply Brief (Doc. 232) is DENIED.

## RECOMMENDATIONS

1.    Library Defendants' Motion for Summary Judgment (Doc. 163) should be GRANTED.

2.      Correctional Defendants' Motion for Summary Judgment (Doc. 167) should be GRANTED.

3.      Supervisory Defendants' Motion for Summary Judgment (Doc. 171) should be granted as to all Defendants and all claims except as to personal liability for Defendant Fletcher.

4.      By separate order, the Court will issue a schedule that will govern further proceedings in this matter.

### NOTICE OF RIGHT TO OBJECT
### TO FINDINGS & RECOMMENDATION
### AND CONSEQUENCES OF FAILURE TO OBJECT

The parties may object to the Findings and Recommendations within 14 days. *See* 28 U.S.C. § 636(b)(1). Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

Shreves must immediately notify the Court of any change in his mailing address by filing a "Notice of Change of Address."

Dated this 15th day of October, 2021.

John Johnston
United States Magistrate Judge

29