IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| RICHARD E. SHREVES, | CV 18–97–H–DLC |
| Plaintiff, | |
| vs. | ORDER |
| DAVID WILLIAM HARRIS, et al., | |
| Defendants. | |

Before the Court is United States Magistrate Judge John T. Johnston's Findings and Recommendations regarding Defendants' motions for summary judgment (Docs. 163, 167, 171) and rulings on numerous other motions. (Doc. 239.) Judge Johnston recommends that the Court grant in full two of Defendants' motions for summary judgment (Docs. 163, 167) and grant in part the third except as to Defendant Fletcher's personal liability (Doc. 171). (Doc. 239 at 28–29.) Shreves and Defendant Fletcher have filed objections to Judge Johnston's findings and recommendations. (Docs. 240, 243.) For the reasons stated herein, the Court will adopt Judge Johnston's findings and recommendations in full.

## BACKGROUND

Shreves' operative complaint alleges that the defendants have retaliated against him for filing grievances and litigation against them, in violation of his

constitutional rights to free speech and meaningful access to courts. (*See generally* Doc. 145.) Shreves also alleges that the removal of books from the Montana State Prison library unconstitutionally censored publications and restricted his access to published information and violated his right to free exercise of religion and RLUIPA, particularly with respect to the removal of religious books. (*Id.* at 42–47.) Defendants filed three motions for summary judgment, each addressing factually distinct claims. (Docs. 163, 167, 171.) The parties also filed numerous discovery-related motions and motions to strike, which Judge Johnston resolved. (*See generally* Docs. 161, 239.)

## STANDARD OF REVIEW

On review of a magistrate judge's findings and recommendations, a party is only entitled to de novo review of those findings to which he or she specifically objects. 28 U.S.C. § 636(b)(1)(C). In the absence of an objection, this Court reviews findings for clear error. *See Thomas v. Arn*, 474 U.S. 140, 149 (1985). Clear error review is "significantly deferential" and exists when the Court is left with a "definite and firm conviction that a mistake has been committed." *United States v. Syrax*, 235 F.3d 422, 427 (9th Cir. 2000) (citations omitted).

**DISCUSSION**

## I.   Defendants' Motions for Summary Judgment

Federal Rule of Civil Procedure 56(a) entitles a party to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The movant bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party has satisfied its burden, the non-moving party must go beyond the pleadings and designate by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Id.* at 324. In deciding a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party and draws all justifiable inferences in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### A.   Library Defendants (Doc. 163)

The Library Defendants include Marisa Bostwick, Michael Zuber, and Wendy Zuber. (Doc. 239 at 1.) Judge Johnston recommends that the Court grant

3

the Library Defendants' motion for summary judgment as to Shreves' first four

claims (Doc. 163) in full.  (*Id.* at 2–11.)

### 1.    First Amendment Retaliation Claims

"Within the prison context, a viable claim of First Amendment retaliation

entails five basic elements: (1) An assertion that a state actor took some adverse

action against an inmate (2) because of (3) that prisoner's protected conduct, and

that such action (4) chilled the inmate's exercise of his First Amendment rights,

and (5) the action did not reasonably advance a legitimate correctional goal."

*Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005).  In the First

Amendment context, a plaintiff generally raises a genuine issue of material fact on

the question of retaliatory motive when the plaintiff "produces, in addition to

evidence that the defendant knew of the protected speech, at least (1) evidence of

proximity in time between the protected speech and the allegedly retaliatory

decision, (2) evidence that the defendant expressed opposition to the speech or (3)

evidence that the defendant's proffered reason for the adverse action was false or

pretextual."  *Pinard v. Clatskanie Sch. Dist. 6J*, 467 F.3d 755, 771 n.21 (9th Cir.

2006).

Judge Johnston concluded that the alleged acts of retaliation underlying

these claims—reduction of legal books in the library, removal of some Christian

books, reduction and changing of library hours, and a copy policy requiring

inmates to leave their legal papers for copying—reasonably advanced legitimate correctional goals, including prison security, staff and inmate management, and resource allocation, and Shreves did not produce any evidence that those proffered reasons were pretextual.  (*Id.* at 4–8.)  Judge Johnston further concluded that even if those alleged acts of retaliation had an adverse effect on Shreves, "[t]he changes in the library affected all inmates" and thus Shreves could not prove that they were "actions directed at him in retaliation for his own protected conduct."  (*Id.* at 8.)  Finally, Judge Johnston concluded that there was no factual support for Shreves' claim that Michael Zuber acted adversely toward Shreves to chill Shreves' First Amendment conduct.  (*Id.*)

Shreves argues that Judge Johnston's findings "had to give undue credibility to Defendants' facts, despite continued contradictions and waffling from W. Zuber."  (Doc. 243 at 6.)  However, the purported "contradictions and waffling" he cites from his Statement of Disputed Facts reflect an assortment of recollection issues or differing recollections concerning immaterial facts.  His objection does not identify any clearly erroneous finding or issue of material fact.  Defendants correctly argue that, after they made a showing that their changes to the library served legitimate correctional goals, the burden shifted to Shreves to prove the absence of legitimate correctional goals, and he failed to do so.  (Doc. 244 at 3–4.)

Shreves also objects that Judge Johnston failed to analyze allegedly retaliatory actions occurring after December 2016.  (Doc. 243 at 8.)  These actions included refusal to provide legal forms not listed in MSP 3.3.2, library schedule changes and cancellations, the timing of availability of LexisNexis on tablets, a warning of potential future disciplinary action, a drug test occurring six hours after Shreves filed a motion for contempt based on the removal of the e-filing lockbox, and the refusal to provide a computer or word processing software to prepare legal documents.  (Doc. 194 at 30–49.)  However, this objection does not show any error in Judge Johnston's analysis, nor does it establish a material issue of fact as to whether those actions were directed at Shreves (rather than affecting all inmates) or whether the legitimate correctional goals identified by Defendants were pretextual, both of which are required to survive Defendants' motion for summary judgment as to these retaliation claims.  *Rhodes*, 408 F.3d at 567–68; *Pinard*, 467 F.3d at 771 n.21.

The fact issues Shreves identifies as to Defendants' legitimate correctional goals do not create a dispute of *material* fact as to whether the proffered correctional goals are legitimate or pretextual.  First, he argues that Wendy Zuber "would not admit" at her deposition that she made the decision to remove the reporters, but defense counsel stated at the summary judgment hearing that it was her decision.  (Doc. 243 at 8.)  Setting aside that counsel's argument is not

6

testimony, Shreves does not explain why the identity of the decisionmaker is material to the legitimacy of Defendants' proffered correctional goals.  Second, he argues that "[s]ince the Court and Defendants cite cases decided prior to 2010 it is illogical and vague to say the [removed] Reporters were 'outdated.'"  (*Id.* at 9.) Even if Shreves disputes the characterization of these volumes as outdated, he did not dispute that he and other inmates had access to Supreme Court, Ninth Circuit, and Montana cases, including cases decided after 2010, through the library's LexisNexis computers; his objection to the removal of pre-2010 cases from other jurisdictions does not demonstrate that Defendants' proffered security and resource-related goals for that removal were not legitimate, and assessing Defendants' reasoning at this level of granular detail risks involving the Court "in day-to-day prison management[.]"  *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995).

Shreves next objects to the security-based reasons proffered by Defendants for removing the reporters because many of the books were stored on wall shelves, Wendy Zuber "lied in her answers to Shreves' grievances that the Reporters were now housed and available from the highside" when in fact they were destroyed, another employee stated that the shelves did not interfere with supervising inmates, and Shreves' complaints were the reason for the removal.  (Doc. 243 at 9.) However, the Court agrees with Judge Johnston that "Shreves does not have a

compelling case to rebut the Defendants' position that these changes all had legitimate penological motivations." (Doc. 239 at 7.)  Even viewing Shreves' strongest evidence of pretext—another inmate's recollection of overhearing a conversation about removing reporters "due to the number of complaints Shreves and other inmates were presenting" (Doc. 191-2 at 218)—in the most favorable light, his claim relating to the removal of those books does not satisfy the other *Rhodes* factors and thus cannot survive summary judgment, as explained by Judge Johnston.  (Doc. 239 at 8 (finding no adverse effect on Shreves and no retaliation because of Shreves' protected conduct).)

Shreves next objects that Judge Johnston "erroneously made a credibility determination" in finding that the Library Defendants proffered a legitimate correctional goal of staffing allocation in response to Shreves' complaint about the library schedule changing and "ignoring the numerous other reasons for cancellations presented by Shreves." (Doc. 243 at 10.)  However, neither Judge Johnston nor this Court ignored Shreves' proffered rebuttals; rather, Judge Johnston found, and this Court on de novo review agrees, that the facts cited by Shreves do not raise a genuine issue of material fact as to whether the staffing issues cited by Defendants were a legitimate, non-pretextual reason for the various library scheduling issues he cites.  (Doc. 239 at 6–8.)  Moreover, the Court agrees

with Judge Johnston that the Library Defendants' actions were not directed solely at Shreves; rather, they affected all inmates.  (*Id.* at 8.)

Shreves next objects that Defendants did not raise an issue of the number of inmates in the library, and Zuber did not begin failing to call Shreves' unit for library or changing the library schedule, until after Shreves filed grievances.  (Doc. 243 at 10–12.)  Even if this timing were sufficient to create a genuine dispute of material fact concerning whether Defendants' proffered reasons are pretextual, Shreves' claims do not satisfy other *Rhodes* factors as required to survive summary judgment, as explained by Judge Johnston.  (Doc. 239 at 8.)

Shreves next objects that Zuber "deliberately refused to make [Shreves'] copies while making them for other inmates promptly[,]" which he contends was targeted harassment.  (Doc. 243 at 12.)  However, as Defendants note, Shreves acknowledged that other inmates' copies were sometimes delayed (Doc. 194 ¶ 117), and on many of the occasions he cites for the proposition that Zuber "refused to make his copies while making them for other inmates promptly," he received his copies before his library time ended for that day (*id.* ¶¶ 107, 119).  The Court agrees with Judge Johnston that Shreves has not raised a genuine issue of fact concerning whether the Library Defendants' reason for the changed copy policy was pretextual or whether the changed copy policy was an adverse action against him, specifically.  (Doc. 239 at 7–8.)

Shreves also objects to Judge Johnston's findings that none of the Library Defendants' actions had an adverse effect on Shreves because they were insufficient to chill a person of ordinary firmness and because none of them was directed solely at Shreves. (Doc. 243 at 13.) Shreves cites numerous actions by Wendy Zuber and some by Bostwick, including refusing to make copies, "attempt[ing] to mislead Shreves about callouts," Zuber harassing him at the library after he grieved her in October 2015, her alleged noncompliance with a litigation hold, laughing about removing legal books while Shreves was in the library, telling Shreves that inmates did not need particular law books, labeling Shreves a snitch, refusing to retrieve forms for Shreves that were not listed in MSP's policy, denying Shreves additional research time in the library, overbilling Shreves for copies, canceling library when Shreves asked for more time, expelling him from the library early while giving accommodations to other inmates, writing Shreves in the warning log after he called this Court, and refusing to allow Shreves to inspect documents returned to him after he filed a motion for contempt. (Doc. 243 at 14–15.) He claims that these actions led to him reducing his time in the library, and now he has not gone to the library at all since 2020. (*Id.* at 15.) Even viewing Shreves' cited evidence in the light most favorable to him, Judge Johnston correctly concluded that even in aggregate, the actions Shreves complained of would not be sufficient to chill the speech of a person of ordinary firmness, and he

himself was not deterred from filing grievances or litigating his claims. (Doc. 239 at 8.) Rather, his objection identifies his actual injury as his *choice* to spend less time in the library. (Doc. 243 at 15.) *See also Mendocino Env't Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1300 & n.32 (9th Cir. 1999) (holding that proper inquiry in First Amendment retaliation cases is whether an official's acts would chill a person of ordinary firmness from future First Amendment activities).

Finally, Shreves objects to Judge Johnston's findings as to Michael Zuber because Defendants did not provide any information about "his role in the Saturday library restrictions on Shreves and his place in the grievance," Zuber did not investigate Defendants Matter and Francom when Shreves' grievance against them was granted, and he was the shift commander when Shreves was given a urinalysis test approximately 6 hours after Shreves filed a motion for contempt based on the Library Defendants' failure to repair the e-filing lockbox. (Doc. 243 at 16.) His objection concerning Defendants' purported failure to provide information appears to misunderstand the parties' respective burdens at this summary judgment stage. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying" the evidence "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In cases in which the nonmoving party will bear the burden of proof on a

dispositive issue at trial, as Shreves will on this claim, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court— that there is an absence of evidence to support the nonmoving party's case." *Id.* at 324–25.  Accordingly, Defendants have no obligation to present the evidence Shreves describes to prevail on their motion for summary judgment.  And even if Shreves can properly raise a claim concerning the urinalysis (*see* Doc. 244 at 14 (arguing that this claim first arose in Shreves' summary judgment response brief)), Shreves' belief that "the timing [of the urinalysis] was very suspicious" (Doc. 41-3 ¶ 10) is not sufficient to create a genuine issue of material fact concerning whether Michael Zuber acted adversely toward Shreves in order to chill his protected First Amendment conduct as required to proceed to trial on a retaliation claim. Accordingly, for all of these reasons, Shreves' objections concerning the Library Defendants' retaliation claims are overruled, and Judge Johnston's findings and recommendation as to these claims are adopted in full.

## 2.    Access to Courts Claims

Judge Johnston found that Shreves had not shown any constitutional injury to his access to the courts due to the actions of the Library Defendants because Shreves "successfully litigated all of the cases that he attempted to litigate in state court, by meeting deadlines, filing briefs, and otherwise actively pursuing his actions."  (Doc. 239 at 9.)  Judge Johnston rejected Shreves' argument that his

access to the courts was impeded because he chose not to pursue some cases because of the time or difficulty of doing so.  (*Id.*)

Shreves objects to these findings, arguing that if the Court adopts these findings, "it is completely ignoring Defendants utter refusal to take any steps to assist inmates in presenting claims to the court and also ignores state erected barriers to that access once started." (Doc. 243 at 6.)  Shreves also objects that Judge Johnston "failed to address the fact that W. Zuber was reading the legal documents left with her to copy chilling inmate's access to the courts." (*Id.* at 12.) He further objects that Judge Johnston's order "ignores that every aspect of Shreves' ability to access the courts is controlled by Defendants[,]" and their decisions to remove materials and change or reduce library time and the fact that he must use handwriting or typewriting to produce legal papers deprived him of "meaningful" access to the courts.  (*Id.* at 16–17.)  These objections do not resolve the problems with his claim identified by Judge Johnston, however: "Shreves has not shown any constitutional injury to his access to the courts due to the actions of the Library Defendants." (Doc. 239 at 9.)  Shreves has not raised a genuine issue of material fact as to whether the Library Defendants' actions—as opposed to his own litigation choices (Doc. 164-4 at 161:16–18), or the constitutionally sound constraints inherent in imprisonment, *Lewis v. Casey*, 518 U.S. 343, 355 (1996)— caused him to lose a nonfrivolous claim.

13

Shreves argues that items missing from the library's collection made it
impossible to respond to his adversaries' citations in one of his state court matters.
(Doc. 243 at 18.)  While the case he cites for that proposition does support his
argument that his inability to address cases cited by his adversary constitutes a
hindrance to litigation, *Benjamin v. Kerik*, 102 F. Supp. 2d 157, 166 (S.D.N.Y.
2000), *aff'd sub nom. Benjamin v. Fraser*, 264 F.3d 175 (2d Cir. 2001), his
objection again misses the point of Judge Johnston's finding relating to causation
and injury; Shreves' failed to provide evidence that Defendants' actions caused
him to lose a nonfrivolous claim.  (Doc. 239 at 9.)  The issue is not whether
missing library materials *could* hinder Shreves' claims; the issue is whether they
*did*.  Shreves has not made this showing, particularly in light of the undisputed fact
that MSP inmates may request legal materials not available at MSP from the
Montana State Law Library, and such materials will be provided to them.  (Docs.
165 ¶ 12, 194 ¶ 12.)  *See also Lewis*, 518 U.S. at 351 ("[T]he inmate . . . [must]
demonstrate that the alleged shortcomings in the library or legal assistance
program hindered his efforts to pursue a legal claim.").

Shreves' objection that the changes to the library schedule constituted active
interference with his claims before the Montana Medical Legal Panel and medical
license board because he was unable to file a reply brief during the administrative
proceedings, and his potential prosecution of those claims in court because he was

unable to file in court within the 90-day limitations period, similarly miss Judge Johnston's point.  (Doc. 243 at 19–20.)  Shreves bore the burden of producing evidence establishing a genuine issue of material fact concerning whether those claims were nonfrivolous, *Lewis*, 518 U.S. at 353 & n.3, and Judge Johnston correctly concluded that he had not done so.  (Doc. 239 at 9; Doc. 197-2 (order denying medical licensure complaint); Doc. 145 ¶ 95(g) (admitting that MMLP claim was denied).)  *See also* Mont. Code Ann. § 37-1-331 (no judicial review of order of healthcare review team); Mont. Code Ann. § 27-6-602 (providing that MMLP claims are denied if there is no substantial evidence that elements of medical malpractice claim are satisfied).

Finally, Shreves raises several objections relating to injuries to his access to the courts he claims to have sustained while litigating *this* case because he misunderstood the Court's order granting extensions of time for him to respond to Defendants' motions for summary judgment (Doc. 186) as also granting him an extension of time in which to file his own motions for summary judgment, and he argues that if he had been given a computer or tablet to prepare his filings, he could have complied with the Court's original deadlines.  (Doc. 243 at 20–22.)  He thus argues that the Court "should allow the Cross-Motions and require the State to respond, or allow Shreves to amend the complaint to include this missed deadline and the prejudice from it as another claim in this suit."  (*Id.* at 21.)  The Court will

15

not do so.  As Defendants observe, even if Shreves were permitted to raise this claim now, the constitutional right of access to the courts does not require that typewriters be made available to prison inmates, much less modern word processing software.  *Lindquist v. Idaho State Bd. of Corr.*, 776 F.2d 851, 858 (9th Cir. 1985).  "The Constitution does not require the elimination of all . . . technological barriers to litigation."  *Wood v. Housewright*, 900 F.2d 1332, 1335 (9th Cir. 1990) (internal quotation omitted).  Shreves' objections concerning the Library Defendants access to courts claims are overruled, and Judge Johnston's findings and recommendation as to these claims are adopted in full.

### 3.    First Amendment and RLUIPA Religious Rights Claims

Judge Johnston found that Shreves failed to show that the Library Defendants had burdened his ability to practice his religion because he failed to show that the weeding of the library was motivated by an intention to limit certain viewpoints, and he continues to practice his religion continuously.  (Doc. 239 at 10.)  Shreves objects to Judge Johnston's finding that the Library Defendants proffered a legitimate correctional goal—reducing the library collection as a whole—for removing certain Christian books because the defendants failed to provide any standard used to determine if the books would be removed, which he argues could allow a reasonable juror to conclude that the removal was impermissible content regulation.  (Doc. 243 at 12–13.)  However, that objection

16

does not address Judge Johnston's primary reason for rejecting Shreves' religious claims, which is that he has shown no injury because he continues to practice his religion.  (Doc. 239 at 10.)  Shreves' objections concerning the Library Defendants First Amendment and RLUIPA claims are overruled, and Judge Johnston's findings and recommendation as to these claims are adopted in full.

### 4.   Qualified Immunity for Library Defendants

Judge Johnston found that the Library Defendants were entitled to qualified immunity because, for the reasons explained previously, no constitutional violation occurred.  (Doc. 239 at 10–11.)  Although Shreves did not object specifically to the finding of qualified immunity for the Library Defendants, to the extent his objections to Judge Johnston's findings and recommendations concerning the alleged constitutional violations are construed as also objecting to the qualified immunity finding, they are overruled for the reasons explained above, and Judge Johnston's findings and recommendation as to the Library Defendants' qualified immunity are adopted in full.

### B.   Corrections Staff Defendants (Doc. 167)

The Corrections Staff Defendants include Michael Bury, Christopher Francom, David William Harris, Tony Matter, Justin Pomeroy, and Daniel Ramirez.  (Doc. 239 at 1.)

17

### 1.   Defendant Matter

Judge Johnston found that Shreves' retaliation claim against Matter "fails on all prongs of the *Rhodes* test."  (Doc. 239 at 12–13.)  Specifically, Judge Johnston found that "Matter's actions"—his failure to call Shreves for early breakfast, law library hours, and to pick up medical records—"simply do not rise above de minimis inattention, irresponsibility, and disrespect[,]" that Shreves failed to show that any of the failed callouts was motivated by a grievance filed against Matter by Shreves because they occurred before the grievance and after, and that the delays would not amount to any adverse action that would chill a person of ordinary firmness.  (*Id.*)  Judge Johnston also found that the incidents in which Shreves grieved Matter fell outside the three-year statute of limitations "even given tolling" for administrative exhaustion and because the retaliation allegedly continued beyond any barred timeframe.  (*Id.* at 12.)

Shreves objects to Judge Johnston's decision not to apply the continuing violation doctrine because his grievance No. 7185 for Matter's failure to call Shreves for a legal library callout was not served on Shreves until October 16, 2015, and thus should be considered timely; Shreves argues that "Matter's months-long [retaliation] campaign serves to make all the similar acts part of a continuing violation."  (Doc. 243 at 22.)  Judge Johnston correctly found that this "campaign" consisting of two refused infirmary callouts on June 4 and June 12, 2015; one

18

forgotten legal library callout on July 17, 2015, after which Shreves filed a

grievance addressing Matter's missed callouts; and one forgotten legal library

callout on August 20, 2015, after which Shreves filed another grievance, did not

rise above "de minimis inattention, irresponsibility, and disrespect." (Doc. 239 at

12.) Accordingly, regardless whether claims related to these acts are time-barred,

these actions do not constitute retaliation because they would not chill or silence a

person of ordinary firmness. (*Id.* at 12–13.)

Shreves next objects that Judge Johnston "failed to indicate the timing of the

1-23-16 threat and its proximity to the 1-15-16 meeting Shreves had with the

Warden where the Warden was determining if Shreves needed to be transported to

another prison" and argues that "Matter never denied threatening Shreves and had

no other reason to threaten Shreves except for the prior grievances and it served no

purpose." (Doc. 243 at 22–23.) The significance of the January 15 meeting

appears to be that Shreves complained to the warden about "the issues he was

having with Matter and Bury." (Doc. 200 ¶ 16.) The January 23 threat in question

was either "there are lots of things I could do to make your life worse" (Doc. 169

¶ 17) or "Ya know, there are a lot more things that I COULD . . . do to you" (Doc.

200 ¶ 17). Shreves' objections go to whether Matter had a retaliatory intent, but

they do not address Judge Johnston's finding that Matter's conduct would not chill

19

or silence a person of ordinary firmness.  (Doc. 239 at 12–13.)  Indeed, Shreves immediately grieved the purported threat.  (Doc. 200 ¶ 17.)

Finally, Shreves argues that Judge Johnston's recommendation of summary judgment in Defendants' favor on this claim "contradicts finding a disputable fact with Fletcher, though the Court noted it could not even determine Fletcher actually made a threat, while Matter took numerous adverse actions in addition to the threat." (Doc. 243 at 23.)  Again, this objection ignores Judge Johnston's finding that Matter's "threat" would not chill or silence a person of ordinary firmness, which defeats Shreves' claim.  Shreves' objections as to his claim against Defendant Matter are overruled, and Judge Johnston's findings and recommendation as to this claim are adopted in full.

### 2.    Defendant Francom

Judge Johnston found that Shreves' retaliation claim against Defendant Francom failed on all prongs of the *Rhodes* test.  (Doc. 139 at 13.)  Specifically, Judge Johnston found that Francom's action in searching Shreves as he carried "a bunch of stuff" to his job had a legitimate penological purpose, and there was no apparent conflict between Shreves and Francom over the loose frying pan in the Religious Activities Center that Shreves had reported.  (*Id.*)

Shreves objects that Judge Johnston erroneously found that Francom's allegedly retaliatory conduct occurred over the course of only two days, when it

encompassed searching Shreves and refusing to let him return to work and later refusing to process an emergency medical grievance.  (Doc. 243 at 23.)  As to the search, the Court agrees with Defendants that Shreves has not established a genuine issue of material fact concerning whether the search had a legitimate penological purpose, which is fatal to his claim under *Rhodes*.  (Doc. 244 at 17.) Shreves' objection concerning Francom "refusing to process an emergency medical grievance" in July of 2016, more than six months after Shreves' conversation about the loose frying pan, is not only insufficient to create a genuine issue of material fact, but also misstates the record; Shreves asserted that Francom took the emergency grievance to the wrong place according to MSP policy, not that he refused to process it at all (Doc. 200 ¶ 106).  Accordingly, Shreves' objections concerning his retaliation claim against Francom are overruled, and Judge Johnston's findings and recommendation as to this claim are adopted in full.

### 3.   Defendant Bury

Judge Johnston found that Shreves' retaliation claim against Defendant Bury failed because Shreves had not proven injury resulting from Bury's delays in processing some of Shreves' outgoing mail or his failure to notify Shreves immediately when Shreves' father arrived to visit, because Shreves' mail was processed and he was able to see all of his visitors.  (Doc. 239 at 14.)  Judge Johnston also found that Shreves had not shown that Bury had a retaliatory motive

21

because Shreves had not filed any grievances against Bury, but instead identified only a grievance *response* Bury had signed.  (*Id.*)

Shreves objects that Judge Johnston misidentified the grievance response signed by Bury, which he asserts was actually "a mailing form Bury took custody of but it was not mailed for 13 days."  (Doc. 243 at 23.)  He further argues that the order "fails to consider the adverse comments when Shreves sought a form to grieve Bury about the visit."  (*Id.*)  This comment was in response to Shreves requesting an informal grievance form: "Make sure you spell my name right B-U-R-Y!"  (Doc. 200 ¶ 20.)  Shreves' objections do not address Judge Johnston's finding that Shreves had not suffered more than de minimis harm as a result of Bury's conduct, and that finding suffices to defeat his claim against Bury. Shreves' objections as to his claim against Bury are overruled, and Judge Johnston's findings and recommendation as to this claim are adopted in full.

### 4.   Defendant Ramirez

Judge Johnston found that Shreves had no pending grievance with Ramirez at the time of the "towel incident," in which Ramirez refused to give Shreves a clean towel because Shreves did not return his dirty towel in accordance with MSP's towel policy, and Ramirez said something offensive to Shreves.  (Doc. 239 at 14–15.)  Judge Johnston further found that "[t]here was nothing wrong with asking Shreves to get his dirty towel in accordance with policy[.]"  (*Id.* at 14.)

Shreves objects that Judge Johnston did not mention "adverse comments to Shreves about the grievances and labeled Shreves a 'snitch.'" (Doc. 243 at 24.) Defendants correctly note that Shreves did not exhaust these claims. (Doc. 244 at 19, Doc. 231-1). Accordingly, Shreves' objection regarding his claim against Ramirez is overruled, and Judge Johnston's findings and recommendation as to this claim are adopted in full.

### 5.    Defendant Harris

Judge Johnston found that Defendant Harris's verbal abuse toward Shreves did not rise to the level of a constitutional violation, and Shreves could not prove that Harris's conduct was adverse toward him because Shreves testified that Harris was abrasive toward many other inmates as well. (Doc. 239 at 15–16.) Judge Johnston also found that there was no evidence that any actions by Harris chilled Shreves' First Amendment activity, but even accepting Shreves' argument that he had to persist in filing grievances to exhaust his claims, Harris's actions were "not so out of the ordinary course that an ordinary person would be chilled" from an objective standpoint. (*Id.* at 16.)

Shreves raises several objections to these findings: (1) Harris's yelling of profanities constituted mistreatment under MSP Policy; (2) the finding that Harris was consistently rude and abrasive with Shreves ignored Shreves' testimony that he had no problem with Harris until after he filed informal grievances, and Shreves

presented evidence that Harris targeted others after protected conduct; (3) the findings "failed to consider all the threats, profanities, and physical contact all took place to punish Shreves for grievances"; (4) provoking an inmate into a physical altercation has no legitimate correctional goal; (5) Shreves' request to go into solitary confinement "is evidence of the chill"; (6) Shreves did not need to prove that he was actually chilled to prevail on his claims; and (7) the findings contradict Judge Johnston's decision to allow Shreves' claim against Fletcher to proceed when Harris "did threaten and strike Shreves." (Doc. 243 at 24–26.) The Court agrees with Shreves that Harris mistreated him, but agrees with Judge Johnston that this mistreatment did not rise to the level of an adverse action as required to survive summary judgment on a retaliation claim. *Gronquist v. Cunningham*, 747 F. App'x 532, 534 (9th Cir. 2018) (citing *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987)). Shreves' objections also do not address Judge Johnston's finding that Harris's conduct would not chill an ordinary person, which is an independent basis for granting summary judgment on this claim. Accordingly, Shreves' objections as to his retaliation claim against Harris are overruled, and Judge Johnston's findings and recommendation as to this claim are adopted in full.

Shreves argues that the Court should allow his battery claim against Harris relating to Harris throwing an ID card at Shreves to proceed because Defendants "failed to brief this claim for dismissal," other Defendants were named in their

24

official capacity, and "[t]his claim raises the issues of injunctive relief to correct

officer behavior before they decide to assault an inmate." (Doc. 243 at 26–27.)

While the Court has discretion to maintain supplemental jurisdiction over state-law

claims even where related federal claims are dismissed, the Court must consider

the factors of judicial economy, convenience, fairness, and comity when deciding

whether to exercise that discretion. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S.

343, 350 n.7 (1988). The Court finds that all of these factors weigh against

exercising supplemental jurisdiction because this claim would be the sole basis for

maintaining Harris as a defendant in this federal action, Shreves produced no

evidence that he suffered any physical injury as a result of the alleged battery (Doc.

169 ¶ 38, Doc. 200 ¶ 38), and Defendants correctly note that this claim could be

resolved in state court in Powell County, much closer to Shreves and Harris than

Missoula (Doc. 244 at 22). Accordingly, the Court will dismiss this battery claim

without prejudice.

### 6.     Defendant Pomeroy

Judge Johnston found that Defendant Pomeroy's arguably unequal

enforcement of prison regulations against Shreves as compared to other inmates

did not amount to a constitutional violation "in how legitimate regulations were

enforced as to him" and noted that Shreves was not punished or written up. (Doc.

239 at 16–17.) Shreves did not raise any objections specific to Judge Johnston's

findings concerning Pomeroy, and, finding no clear error in those findings and recommendation, the Court adopts them in full.

### 7.    Qualified Immunity for Corrections Staff Defendants

Judge Johnston found that the Corrections Staff Defendants were entitled to qualified immunity because, for the reasons explained previously, no constitutional violation occurred.  (Doc. 239 at 17.)  Although Shreves did not object specifically to the finding of qualified immunity for the Corrections Staff Defendants, to the extent his objections to Judge Johnston's findings and recommendations concerning the alleged constitutional violations are construed as also objecting to the qualified immunity finding, they are overruled for the reasons explained above, and Judge Johnston's findings and recommendation as to the Corrections Staff Defendants' qualified immunity are adopted in full.

### C.    Supervisory Defendants (Doc. 171)

The Supervisory Defendants include Kristy Cobban, Chris Conell, Michael Fletcher, Jeffrey McNabb, Reginald D. Michael, Loraine Wodnik, and Thomas Wood, and their motion for summary judgment also addresses supervisory liability for all defendants.  (Doc. 239 at 1, 17.)

"A defendant may be held liable as a supervisor under § 1983 'if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the

constitutional violation.'"  *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011)

(quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)).  Judge Johnston had

previously determined that an acquiescence theory of liability was the only

available theory to Shreves.  (Doc. 239 at 18.)

## 1.  Defendant Fletcher

Shreves alleges that Defendant Fletcher retaliated against him in violation of

his First Amendment rights and that Fletcher, as warden, acquiesced in the

constitutional violations of others.  (Doc. 239 at 19.)

### a.  Personal Liability

Judge Johnston found that there were disputed issues of material fact

concerning what occurred in Fletcher's office when he, Shreves, and Associate

Warden Jim Salmonsen met on September 6, 2017 after Shreves filed an informal

grievance against Fletcher, and whether any threat was intended by Fletcher's

statements to Shreves.  (Doc. 239 at 19–22.)  Judge Johnston concluded that these

issues of material fact precluded granting summary judgment or qualified

immunity to Fletcher on this claim.  (*Id.*)  Judge Johnston otherwise found,

however, that there was no evidence to support a claim that Fletcher's reprimand to

Shreves concerning his behavior on August 21, 2017 was connected to any prior

protected speech by Shreves.  (*Id.* at 22.)

Shreves objects to Judge Johnston's finding concerning the August 21 reprimand, arguing that on August 8, 2017, Fletcher threatened another inmate, and Shreves reported the threat to Associate Warden Wilson.  (Doc. 243 at 27.) Defendants correctly note that Shreves has changed the basis for the alleged retaliation, which he originally claimed was pending litigation (Doc. 172-7).  There is no evidence in the record that Shreves reported Fletcher's threat to another inmate, and his alternative basis for retaliation—reporting an excessive force claim about Fletcher's subordinates—occurred many months before the August 21 reprimand and before Fletcher began working at MSP.  (Doc. 172-1.) Accordingly, Shreves' objection is overruled.

Defendant Fletcher objects to Judge Johnston's finding that there is a genuine issue of disputed material fact concerning whether there was any threat intended and how to weigh such a threat, arguing that this retaliation claim "should have failed on (1) adverse action, because Shreves' belief he was threatened was not objectively reasonable, on (2) retaliatory intent, because Fletcher did not intend to retaliate, (3) on legitimate penological purpose, because explaining the rules is part of assuring inmate compliance with them, and (4) on qualified immunity, because a reasonable official in Fletcher's position could not know that meeting with an inmate to discuss concerns from his grievance could be construed as a retaliatory threat."  (Doc. 240 at 2–3.)

28

As to the first argument, Fletcher argues that Judge Johnston did not identify an explicit threat from Fletcher, and his words could not objectively be construed as an implied threat because there is no evidence that Fletcher made statements that a reasonable factfinder could interpret as intimating that some form of punishment or adverse regulatory action would follow.  (*Id.* at 4, 7.)  Rather, Fletcher argues that during the meeting, he disputed Shreves' characterization of his actions, explained his reasons for correcting Shreves in front of the STEPS class, told Shreves he was out of touch with reality, and described the privileges Shreves could lose if he was disciplined, but Fletcher did not ask Shreves to withdraw his grievance or mention Shreves' use of the grievance system.  (*Id.* at 7–8.)  Although the Court understands the analogy Fletcher draws between Ninth Circuit case law considering whether to excuse a prisoner's failure to administratively exhaust a claim based on threats of retaliation and Shreves' retaliation claim, the Court finds this case law inapposite.  In particular, the court of appeals' reasoning for emphasizing whether the alleged threats related to the prisoner utilizing the grievance system is that a failure to exhaust must be justified by the grievance system being "effectively unavailable."  *McBride v. Lopez*, 807 F.3d 982, 988 (9th Cir. 2015).  No such justification is required in the context of a straightforward retaliation claim, which instead requires the prisoner to show adverse action because of the prisoner's protected conduct, and "the mere *threat* of harm can be

29

an adverse action." *Brodheim v. Cry*, 584 F.3d 1262, 1270 (9th Cir. 2009). The Court agrees with Judge Johnston that the record before the Court, taken in the light most favorable to Shreves, could allow a reasonable factfinder to interpret Fletcher's conduct and statements during the September 6, 2017 meeting "as intimating that some form of punishment or adverse regulatory action would follow." *Id.* at 1271. Unlike Shreves' other retaliation claims, there are material factual disputes concerning what occurred during the meeting—particularly, Fletcher's references to removing Shreves as a STEPS facilitator or from the GUIDE Program (Doc. 172-1 ¶¶ 24–26; Doc. 213 ¶¶ 33. 37); references to protective custody or Pre-Hearing Confinement (Doc. 172-1 ¶¶ 24, 26, 34–36; Doc. 213 ¶ 34–35, 37), which Defendants define as "short-term, non-punitive housing status that is used to safely and securely control high-risk or *at-risk* offenders" (*id.* ¶ 36 (emphasis added)); and whether Fletcher referred to an inmate whom Fletcher had taken . . . to the hole personally" a few months before the meeting and later "had . . . shipped to supermax" as "Shreves' partner" (Doc. 213 ¶ 26)—that go to the issue of whether Fletcher's conduct and/or statements were threats sufficient to constitute adverse action under the *Brodheim* standard.

As to the second argument, Fletcher argues that Judge Johnston erred by not addressing whether there was any evidence to show that Fletcher subjectively intended to retaliate against Shreves. (Doc. 240 at 10–11.) Fletcher argues that

"[l]ooking at Fletcher's stated purpose and the objective evidence surrounding the meeting, . . . there is no evidence from which a jury could conclude that Fletcher intended to inhibit Shreves' speech." (*Id.* at 11.)  The Court disagrees.  Viewing the evidence in the light most favorable to Shreves, a reasonable jury could conclude based on Fletcher's conduct in holding a meeting with Shreves to discuss his grievance, reading through Shreves' grievance line by line (Doc. 173 ¶ 24), and the evidence described above that Fletcher intended to retaliate for the grievance.

As to the third argument, Fletcher argues that his conversation with Shreves had a legitimate penological purpose in addressing concerns about Shreves' behavior and why it was inappropriate.  (Doc. 240 at 11.)  The evidence described above precludes the Court from determining as a matter of law whether Fletcher's conduct "reasonably advance[d]" this goal, as required to grant summary judgment in his favor.  *Brodheim*, 584 F.3d at 1272.  In particular, applying the factors outlined in *Turner v. Safley*, 482 U.S. 78 (1987), the existing disputes of material fact concerning Fletcher's conduct during the meeting affect the Court's assessment of the absence of ready alternatives available to the prison for achieving the governmental objectives.  *Brodheim*, 584 F.3d at 1272.  Viewing the evidence in the light most favorable to Shreves as the non-movant, a reasonable factfinder could conclude that Fletcher was threatening Shreves with punishment in response to the grievance, and there plainly exist ready alternatives other than

31

threats of protective custody or prison transfer to address concerns about an inmate's behavior, especially when the behavior in question ceased weeks prior to the meeting.

As to the fourth argument, Fletcher argues that Judge Johnston erred by finding that Fletcher violated a "clearly established" right "by calling Shreves to his office and discussing his concerns with Shreves' behavior." (Doc. 240 at 12–16.) The standard for qualified immunity provides that "[i]f the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment is appropriate." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). The Supreme Court's case law "'does not require a case directly on point' for a right to be clearly established," but "'existing precedent must have placed the statutory or constitutional question beyond debate.'" *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)). Fletcher argues that "neither Shreves nor the Magistrate Judge identified any binding precedent from either the Supreme Court or Ninth Circuit that a warden cannot question an inmate's claims in a grievance, let alone that by doing so he was threatening that inmate against further use of the grievance process[,]" so an official in Fletcher's position could not have known that his behavior could be construed as unlawful retaliation. (Doc. 240 at 15.) However, the Court agrees with Judge Johnston that the same disputed issues of fact that preclude summary judgment on the merits of

32

this retaliation claim also preclude summary judgment on the issue of qualified immunity.  (Doc. 239 at 21.)  *Brodheim*, decided well before Fletcher's conduct, clearly establishes that an officer can unconstitutionally retaliate against an inmate's grievance conduct by impliedly threatening punishment or adverse regulatory action.  584 F.3d at 1269–74.  Viewing the facts in the light most favorable to Shreves as the non-movant, a reasonable jury could conclude that Fletcher was not merely "question[ing] an inmate's claims in a grievance" (Doc. 240 at 15), but rather was threatening to remove Shreves from his programming positions, place him in protective custody, or transfer him to another facility in response to his grievance.  Accordingly, the Court agrees that summary judgment is inappropriate on Shreves' retaliation claim against Fletcher in his personal capacity, and the Court will adopt Judge Johnston's findings and recommendations on this claim in full.

### b.    Supervisory Liability

Judge Johnston concluded that Fletcher could not be found to have acquiesced in any constitutional violations against Shreves because Fletcher's subordinates did not commit any constitutional violations against Shreves.  (Doc. 239 at 22.)  Shreves does not specifically object to this finding, but to the extent his objections to Judge Johnston's findings and recommendations concerning the underlying alleged constitutional violations are construed as also objecting to this

supervisory liability finding, they are overruled for the reasons explained above, and Judge Johnston's findings and recommendation as to Shreves' claims against Fletcher in his supervisory capacity are adopted in full.

### 2.    Supervisory Liability as to Defendants Wood, Conell, McNabb, and Wodnik

As with Fletcher, Judge Johnston concluded that because Defendants Wood, Conell, McNabb, and Wodnik's subordinates did not commit any constitutional violations against Shreves, these defendants could not be held liable for acquiescing in any constitutional violations.  (Doc. 239 at 22.)

Shreves objects to this finding as to Wodnik based on Judge Johnston's findings as to Fletcher because "Fletcher was a direct report to Wodnik," and Shreves argues that "Wodnik would be liable under the acquiescence theory." (Doc. 243 at 28.)  Defendants do not dispute that Wodnik supervised Fletcher during the time of the events in Shreves' complaint (Doc. 244 at 23–24), but rather argue that Shreves failed to present evidence establishing a genuine dispute of material fact as to whether "an immediate supervisor knew about the subordinate violating another's federal constitutional right to free speech, and acquiesce[d] in that violation."  *OSU Student All. v. Ray*, 699 F.3d 1053, 1075 (9th Cir. 2012). Shreves' objection cited documentation indicating that an MSP employee had reported concerns about Fletcher's supervision of employees and their treatment of

another inmate, specifically during an inmate extraction, to Wodnik before the September 6, 2017 meeting, but the vast majority of complaints about Fletcher's job performance and outside-of-work conduct were transmitted *after* the meeting with Shreves.  (*See generally* Doc. 115.)  This evidence is not sufficient to establish a genuine dispute of material fact as to whether Wodnik knew about Fletcher's alleged violation of Shreves' First Amendment rights and acquiesced in it.  Accordingly, Shreves' objection regarding his claim against Wodnik is overruled, and Judge Johnston's findings and recommendation as to this claim are adopted in full.  Shreves did not raise any objections specific to Judge Johnston's findings concerning Wood, Conell, and McNabb, and, finding no clear error in those findings and recommendation, the Court adopts them in full.

### 3.   Defendant Cobban

Judge Johnston found that Shreves' retaliation claim concerning Defendant Cobban's delaying his appointment as a STEPS facilitator was both moot and barred by the statute of limitations.  (Doc. 239 at 22.)  Judge Johnston further found that Shreves' claims that Cobban did not sufficiently investigate his claims against other staff and made changes in 2021 to the Religious Activity Center were "new on summary judgment and were not alleged in the Amended Complaint[,]" so the Court would not address them.  (*Id.* at 22–23.)

Shreves objects that Judge Johnston "fails to list any fact" establishing that his claims against Cobban are time-barred and "fails to consider the claim that Cobban willfully and deliberately conspired with Fletcher and participated in the conduct against Shreves." (Doc. 243 at 28.) However, Judge Johnston also found that his claim relating to his appointment as a STEPS facilitator was moot, and Shreves did not object to that finding. (Doc. 239 at 22.) Moreover, even viewing Shreves' claims against Cobban in the generous light required for pro se plaintiffs, the facts he cites in support of his objection amount to his disagreement or dissatisfaction with how she responded to his grievances. (*See* Doc. 213 at 23–28.) These facts do not create a genuine dispute of material fact as to whether Cobban violated Shreves' constitutional rights.

Shreves also objects that he should have been granted leave to amend his complaint to add his claims related to the 2021 changes to the RAC because the Court "should determine it is the same sort [of conduct] (retaliation)." (Doc. 243 at 28.) Because Shreves has failed to establish a genuine dispute of material fact as to whether Cobban unconstitutionally retaliated against his protected conduct, the Court will deny leave to amend. Accordingly, Shreves' objection regarding his claims against Cobban are overruled, and Judge Johnston's findings and recommendation as to these claims are adopted in full.

36

####     4.     Defendant Michael/Gootkin

Judge Johnston found that Defendant Michael, the Director of DOC, was named only in his official capacity, and thus any claim against him relating to supervisory liability for Fletcher's conduct would be only prospective.  (Doc. 239 at 23.)  Because Fletcher was no longer employed by MSP, Judge Johnston concluded that any claim against Defendant Michael, or his successor, Defendant Gootkin, is moot.  (*Id.*)  Shreves objects, but his sole argument is that "if any claim on the defendants proceeds the Court should find Gootkin remains as a defendant." Shreves did not raise any objections specific to Judge Johnston's mootness finding, and, finding no clear error in that finding and recommendation, the Court adopts them in full.

## II.     Non-Dispositive Motions

Shreves raises several objections to Judge Johnston's rulings on non-dispositive motions.  (Doc. 162; Doc. 243 at 29–30.)  The Court may reconsider those rulings only "where it has been shown that the magistrate judge's order is clearly erroneous of contrary to law."  28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a).  The Court has carefully reviewed Shreves' objections to these non-dipositive rulings (Doc. 162; Doc. 243 at 29–30) and finds no clear error or legal error in Judge Johnston's thoughtful and reasonable structuring of discovery and

resolution of discovery disputes and evidentiary motions (Doc. 161; Doc. 239 at 23–27).

**A.    Shreves' Objections to Order on Nondispositive Motions (Doc. 162)**

Shreves raised several objections to Judge Johnston's order (Doc. 161) resolving several non-dispositive motions.  (Doc. 162.)

First, Shreves objects to Judge Johnston's ruling that issues related to Fletcher's outside-of-work behavior, allegations of sexual harassment, and general job performance other than Fletcher's behavior toward Shreves were irrelevant to Shreves' claims (Doc. 161 at 4–5), arguing that these documents are relevant to his supervisory liability claims relating to Fletcher's conduct.  (Doc. 162 at 4.)[1] However, Judge Johnston ruled that Defendants could stand on their relevance objections *unless* Shreves "could establish a constitutional violation on the part of the direct action defendants."  (Doc. 161 at 7.)  The Court finds no clear error or error of law in Judge Johnston's decision to structure the case in this manner, which provides a reasonable approach to balancing the discovery to which Shreves is entitled under Rule 26 and the burdens placed on Defendants in locating relevant documents.  (*See* Doc. 161 at 7–8.)  Accordingly, this objection and Shreves'

---

[1] Shreves also argues that the order "completely disregarded Plaintiff's argument that Defendants failed to invoke the privilege, so it was waived," (Doc. 162 at 4), but Judge Johnston need not have ruled on the privilege issue if the documents sought were not relevant.

objection that this discovery structure prevented him from moving for summary

judgment on the supervisory liability claims ahead of the dispositive motions

deadline (Doc. 162 at 5–7) are overruled.

Second, Shreves raises several "pending discovery disputes." (Doc. 162 at

7–9.) These issues were not ruled on in Judge Johnston's order (Doc. 161) and

thus are not proper bases for objection. *Paterson-Leitch Co. v. Massachusetts*

*Mun. Wholesale Elec. Co.*, 840 F.2d 985, 990–91 (1st Cir. 1988).

Third, Shreves raised various objections to Judge Johnston's order on his

motion for sanctions, hearing, and to enforce subpoenas (Doc. 116), arguing that

the Court should order non-parties to "provide everything they have related to the

requests." (Doc. 162 at 9–12.) The Court finds no clear error or error of law in

Judge Johnston's decision to order non-parties to determine whether they have

authority to order disclosure of responsive documents to the extent Defendants

claimed that documents were not within their control, which appropriately

balanced Shreves' entitlement to discoverable information with the burdens

imposed on the producing parties. (Doc. 161 at 13.)

Fourth, Shreves objected to Judge Johnston's order on his motion to

facilitate access to witnesses (Doc. 151), arguing that the order—which reminded

the parties of the strictures of Rule 56(d) and observing that "there must be some

way MSP can accommodate Shreves without imposing upon him the expense and

complications of depositions" (Doc. 161 at 16–17)—failed to guarantee that Shreves would have declarations he believed were important for motions for summary judgment. (Doc. 162 at 12.) The Court finds no clear error or error of law in Judge Johnston's approach of declining to order particular relief at that time and reminding Shreves of his option to pursue relief under Rule 56(d), if needed, at the appropriate time.

Fifth, Shreves objects to Judge Johnston's ruling on his motion to deem his requests for admission admitted, arguing that Shreves misunderstood a prior court order to have deemed Shreves' requests for admission served. (Doc. 162 at 12–13.) The order in question expressly instructed Shreves to "review and revise all of his requests to account for the Court's allowance of only some of his proposed new allegations." (Doc. 98 at 2.) Although Shreves is proceeding pro se, his assumption that the Court thereby served his requests for admission was unreasonable, and the Court will not disturb Judge Johnston's order on that basis.

Sixth and finally, Shreves objected to Judge Johnston's decision to extend rather than vacate the summary judgment deadline. (Doc. 162 at 13.) Although the issue is now moot, the Court again finds no clear error or error of law in Judge Johnston's decision not to continue the motions deadline indefinitely. (Doc. 161 at 17.)

40

Accordingly, all of Shreves objections (Doc. 162) to Judge Johnston's order on nondispositive motions (Doc. 161) are overruled.

### B.      Motion to Compel (Doc. 243 at 29)

Because the Court does not reject any of Judge Johnston's recommendations to grant summary judgment in Defendants' favor, this objection is moot.

### C.      Motion to Strike Cross-Motions for Summary Judgment (Doc. 243 at 29)

Shreves objects to Judge Johnston's decision to grant Defendants' motion to strike Shreves' cross-motions for summary judgment, arguing that he "explained his confusion about the different dates in the April 1 Order . . . as well as the prison's obstacles and limits on that access leading to the late filing." (Doc. 243 at 29.)  The Court finds no clear error or error of law in Judge Johnston's decision, particularly because Judge Johnston and this Court thoroughly reviewed Shreves' filings, construing them as responses to Defendants' motions (Doc. 239 at 26), and for the reasons explained above in discussing Shreves' claims on the merits, Shreves was not entitled to summary judgment in his favor on any claims.

### D.      Motion to Strike Affidavits (Doc. 243 at 29)

Shreves objects to Judge Johnston's conclusion that Robert Lishman's affidavit was not expert testimony.  (Doc. 243 at 29–30.)  Judge Johnston found that his affidavit "is the recollection of a witness about what he did and thought

based on what he learned about the MSP library." (Doc. 239 at 27.) The Court finds no clear error or legal error in Judge Johnston's conclusion, and the Court does not rely on Robert Lishman's opinions regarding legal or constitutional sufficiency in this decision in any event.

Shreves also objects that Lishman's affidavit should be ignored "and Defendants sanctioned" for objecting to discovery requests regarding Lishman on the basis of privilege until the end of discovery. (Doc. 243 at 30.) The Court finds no clear error or error of law in Judge Johnston's rejection of those arguments because Defendants ultimately responded that there were no responsive documents, and Shreves was able to question Wendy Zuber about her meeting with Lishman during her deposition. (Doc. 239 at 26–27.)

Accordingly, all of Shreves' objections to Judge Johnston's non-dispositive orders within his findings and recommendations on Defendants' motions for summary judgment are overruled.

## CONCLUSION

IT IS ORDERED that Shreves' objections (Docs. 162, 243) are OVERRULED.

IT IS FURTHER ORDERED that Fletcher's objections (Doc. 240) are OVERRULED.

IT IS FURTHER ORDERED that Judge Johnston's Findings and Recommendations (Doc. 239) are ADOPTED IN FULL.

IT IS FURTHER ORDERED that the Library Defendants' Motion for Summary Judgment (Doc. 163) is GRANTED.

IT IS FURTHER ORDERED that the Corrections Staff Defendants' Motion for Summary Judgment (Doc. 167) is GRANTED.

IT IS FURTHER ORDERED that the Supervisory Defendants' Motion for Summary Judgment (Doc. 171) is GRANTED IN PART as to all Defendants and all claims except to the extent the motion is DENIED IN PART as to Shreves' personal liability claims against Defendant Fletcher.

IT IS FURTHER ORDERED that Shreves' battery claim against Defendant Harris is DISMISSED without prejudice.

IT IS FURTHER ORDERED that Shreves' Motion for Production of Transcript (Doc. 241) is DENIED as moot.

DATED this 26th day of September, 2022.

Dana L. Christensen, District Judge
United States District Court